**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, GREATER WACO CHAMBER OF COMMERCE, LONGVIEW CHAMBER OF COMMERCE, NATIONAL ASSOCIATION OF CHEMICAL DISTRIBUTORS D/B/A ALLIANCE FOR CHEMICAL DISTRIBUTION, ASSOCIATED BUILDERS AND CONTRACTORS, INC., ASSOCIATED GENERAL CONTRACTORS OF AMERICA, INTERNATIONAL FRANCHISE ASSOCIATION INC., INTERNATIONAL WAREHOUSE LOGISTICS ASSOCIATION, NATIONAL ASSOCIATION OF MANUFACTURERS, NATIONAL ASSOCIATION OF WHOLESALER-DISTRIBUTORS, NATIONAL FEDERATION OF INDEPENDENT BUSINESS, INC., NATIONAL RETAIL FEDERATION, | Civil Action No. 24-271 |
| | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| *Plaintiffs,* | |
| *v.* | |
| OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, UNITED STATES DEPARTMENT OF LABOR, JULIE A. SU, in her official capacity as Acting Secretary of Labor, and DOUGLAS L. PARKER, in his official capacity as Assistant Secretary of Labor for Occupational Safety and Health, | |
| *Defendants.* | |

Plaintiffs Chamber of Commerce of the United States of America, Greater Waco Chamber of Commerce, Longview Chamber of Commerce, National Association of Chemical Distributors d/b/a Alliance for Chemical Distribution, Associated Builders and Contractors, Inc., Associated General Contractors of America, International Franchise Association Inc., International Warehouse Logistics Association, the National Association of Manufacturers, National Association of Wholesaler-Distributors, National Federation of Independent Business, Inc., and National Retail Federation, by and through their undersigned attorneys, allege as follows:

**INTRODUCTION**

1. Plaintiffs bring this action challenging a new Occupational Safety and Health Administration (OSHA) regulation expanding the rights of third parties—including an unlimited number of union organizers, community activists, environmental groups, plaintiffs' attorneys, and even competitors—to access employer worksites during OSHA inspections.

2. In the Occupational Safety and Health (OSH) Act, Congress created a limited right for "a" single "authorized employee representative" to accompany an OSHA inspector during a walkaround inspection of an employer's workplace. 29 U.S.C. § 657(e). But if there is no "authorized employee representative," Congress directed the inspector to "consult with a reasonable number of employees concerning matters of health and safety in the workplace." *Id.* A separate provision of the OSH Act also authorizes OSHA to pay for "experts and consultants" to assist an inspector

in carrying out his duties. *Id.* § 656(c)(2). Nothing in the OSH Act, however, authorizes a parade of non-employee third parties to trample through an employer's property, and creating such a right of access raises serious constitutional concerns under the Fifth Amendment's Takings Clause.

3.      OSHA has for half a century limited the walkaround right to an employer's employee. In certain circumstances, OSHA has also permitted the inspector to bring along experts and consultants, "such as an industrial hygienist or a safety engineer" if "reasonably necessary to the conduct of an effective and thorough physical inspection." 29 C.F.R. § 1903.8(c).

4.      On April 1, 2024, OSHA amended this regulation to go far beyond what Congress intended, dramatically expanding employees' rights to designate *non-employee* third-party representatives during walkaround inspections. *Worker Walkaround Representative Designation Process*, 89 Fed. Reg. 22,558 (Apr. 1, 2024) (Walkaround Rule or Rule).

5.      The new Rule purports to authorize any two or more employees in any workplace to designate an indeterminate number of third-party representatives to accompany OSHA inspectors on walkaround inspections. An OSHA inspector can unlock this unlimited right of access simply by finding that any number of third-party representatives will "make a positive contribution" to an inspection, eviscerating the current rule's requirement that any experts and consultants be "reasonably necessary to the conduct of an effective and thorough physical inspection." 89 Fed. Reg. at 22,575.

6.    In keeping with President Biden's promise "to be the most pro-union President leading the most pro-union administration in American history,"[1] the new Walkaround Rule aims to politicize health and safety inspections by authorizing union organizers to access non-union workplaces. But that is not all it does. The Rule also will give plaintiffs' attorneys a front-row seat on inspections to ferret out potential opportunities for litigation against employers. Indeed, any number of other third parties could access an employer's worksite based on nothing more than the say-so of an OSHA inspector under the new Rule's vague "positive contribution" standard and unlimited list of "illustrative but not exhaustive" qualifying skills (from "communications skills" to "cultural competence" to "prior relationships with workers"). *Id.* at 22,564, 22,569–70, 22,575.

7.    This is not the first time OSHA has unlawfully tried to expand third-party access to employer worksites. OSHA's new Rule seeks to accomplish what the U.S. District Court for the Northern District of Texas said the agency could not do without notice and comment during the Obama administration. *NFIB v. Dougherty*, No. 3:16-CV-2568-D, 2017 WL 1194666 (N.D. Tex. Feb. 3, 2017). In response to a request from a union organizer asking whether the current regulation authorized him to represent employees working in a facility his union did not represent on a walkaround, OSHA said yes. And the agency then began permitting union organizers

---

[1] *Remarks by President Biden in Honor of Labor Unions* (Sept. 8, 2021), https://perma.cc/9L9X-7KDD.

to accompany inspections of non-union workplaces pursuant to a "Standard Interpretation Letter," commonly referred to as the "Sallman Letter." But the court concluded that the Sallman Letter "flatly contradicts a prior legislative rule" because the current walkaround regulation in 29 C.F.R. § 1903.8(c) does not permit employees to designate non-employee third-party representatives. *Id.* at *11.

8.      Although OSHA has now addressed the notice-and-comment problem, the Walkaround Rule exceeds OSHA's statutory authority, effects takings of employers' property rights protected by the Fifth Amendment, and was promulgated in violation of the Administrative Procedure Act (APA) and the Regulatory Flexibility Act (RFA).

9.      *First*, the Walkaround Rule exceeds OSHA's statutory authority. The Rule upends the entire scheme in 29 U.S.C. § 657(e)—and conflicts with the National Labor Relations Act (NLRA)—by permitting union organizers to represent employees in non-union workplaces. It would also allow other third parties to usurp the union's exclusive right to represent employees on health and safety matters in unionized workplaces, as well as employees' right to consult with OSHA inspectors in non-union workplaces. Further, the Rule permits an unlimited number of third-party representatives to participate in walkaround inspections, even though Congress authorized only a *single* authorized employee representative to do so. Accordingly, the Rule eviscerates the OSH Act's careful delineation of who may participate in walkaround inspections, abrogates employer and employee rights under the NLRA, usurps unionized employees' exclusive designated representative, and nullifies the

4

inspector's statutory duty to consult with a reasonable number of employees in non-union workplaces.

10.    *Second*, the Walkaround Rule effects a vast number of Fifth Amendment takings in an identifiable class of cases—exposing the Treasury to innumerable claims for just compensation—by "grant[ing] union organizers" and others "a right to physically enter and occupy the [employers'] land" during inspections. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149 (2021). Just like the state regulation at issue in *Cedar Point Nursery*, the Walkaround Rule effects a "per se taking," *id.*, unconstitutionally "intrud[ing] on one of the most fundamental elements of property ownership—the right to exclude," *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021). But Congress never provided OSHA with authority to appropriate employers' private property for the enjoyment of private parties on such a massive scale—and certainly not the clear authority needed given the grave constitutional concerns raised by the Rule. At a minimum, this serious constitutional problem warrants interpreting § 657(e) in a way that avoids this (at best) constitutionally dubious result.

11.    *Third*, the Walkaround Rule violates the APA, because OSHA: (i) failed to acknowledge or explain this vast expansion of its 50-year old walkaround rule, erroneously casting the new Rule as a clarification of longstanding policy rather than acknowledging its expanded scope and conflict with existing regulations, (ii) conducted a flawed cost-benefit analysis that relies on an unsupported assumption that the Rule would not impose *any* (or at most de minimis) costs on

5

employers, (iii) failed to consider important aspects of the problem (such as how to protect confidential business information and determine the maximum allowable number of authorized employee representatives) or respond to significant public comments regarding those aspects, and (iv) neglected obvious alternatives to the approach it chose.  In its haste to deliver on the President's pro-union agenda, OSHA repeatedly violated the APA's command that agencies "engage in reasoned decisionmaking."  *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1904–05 (2020).

12.    *Fourth*, OSHA refused to prepare the regulatory flexibility analyses required by the Regulatory Flexibility Act (RFA), given that the Rule will have a "significant economic impact on a substantial number of small entities."  5 U.S.C. § 605(b); *see id.* §§ 603, 604.  The Rule's intrusion on the property rights of each small business subject to the OSH Act is one such significant economic impact.  Another is the substantial costs that all employers will incur in preparing for and managing the visits of an unlimited numbers of third parties who are not necessarily experts in workplace health and safety matters.  Here again, the agency's haste to politicize workplace health and safety inspections violated a core tenet of agency rulemaking.

13.    Plaintiffs and their members do not oppose regulations that uphold employers' health-and-safety obligations; nor do they object to reasonable inspections of their worksites by OSHA inspectors.  But the Walkaround Rule tramples on protected property rights in ways that also harm employers' and employees' interests

6

in effective workplace inspections and lawful collective bargaining in unionized workplaces.

14.     The Court should declare the Rule unlawful, vacate the Rule, and enjoin OSHA from enforcing its unlawful interpretation of 29 U.S.C. § 657(e).

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this case under 28 U.S.C. § 1331 because Plaintiffs' claims arise under the APA, RFA, and United States Constitution. 5 U.S.C. § 702.  The Walkaround Rule is a "regulation" reviewable in this Court rather than a "standard" reviewable in a Court of Appeals under 29 U.S.C. § 655(f). *See* 89 Fed. Reg. at 22,560–61; *La. Chem. Ass'n v. Bingham*, 657 F.2d 777, 783 (5th Cir. 1981).

16.     This Court has the authority to grant declaratory and equitable relief under the Declaratory Judgment Act, the APA, and this Court's inherent equitable powers.  *See* 28 U.S.C. §§ 2201, 2202; 5 U.S.C. §§ 555, 611, 702–704, 705, 706.

17.     Venue is proper in this district under 28 U.S.C. § 1391(e)(1)(C) and 5 U.S.C. § 703.  For the same reason, venue is proper in this Division.  *See* 28 U.S.C. § 124(a)(1).  Plaintiff Greater Waco Chamber of Commerce resides in Waco, Texas within this District.  Plaintiffs have members with worksites in this District subject to the Walkaround Rule.

## STANDING

18.     Plaintiffs have associational standing to bring this suit on behalf of their various members.

19.     To begin, Plaintiffs' members are directly and adversely affected by the Walkaround Rule and thus have standing to sue in their own right.  Specifically, Plaintiffs' members are employers subject to—and the direct objects of—the Walkaround Rule.  Their members operate both unionized and nonunion worksites. The Rule "will apply to inspections at approximately 7.9 million establishments," 89 Fed. Reg. at 22,594, including worksites owned and operated by Plaintiffs' employer members.  Indeed, OSHA inspects tens of thousands of employer worksites each year. *Id.* at 22,595 n.4 (citing "about 34,000 inspections" in FY23).  Plaintiffs' members will thus be subject to OSHA walkaround inspections under the Rule.

20.     Plaintiffs' members have in the past been the subject of OSHA walkaround inspections, including inspections involving third-party representatives.

21.     For example, in October 2013, an OSHA inspector appeared at the non-union Texas worksite of NFIB and NAM's Texas-based member, Professional Janitorial Services, Inc. (PJS), accompanied by three nonemployee representatives from the Service Employees International Union.  PJS objected to the onsite presence of these Union members, but was required to allow their presence onto the employer's property.  The Union representatives did not appear to have any specialized training or knowledge of industrial hygiene or safety engineering.

22.     That same day the OSHA inspector appeared at PJS's second non-union Texas workplace, accompanied by the same three Union representatives.

23.     In November 2013, the same OSHA inspector, again accompanied by the same three Union representatives, inspected PJS's third non-union Texas worksite.

8

24.   In February 2014, the OSHA inspector inspected PJS's fourth non-union Texas worksite, this time accompanied by two different Union representatives who, like their colleagues, did not appear to have any specialized training or knowledge of industrial hygiene or safety engineering.

25.   For none of the foregoing inspections was any effort made to explain how or why the presence of the Union representatives was necessary to facilitate a thorough workplace inspection.

26.   On account of these and other prior walkaround inspections involving third parties, Plaintiffs' members have an actual and well-grounded fear that they will be required, against their will, to allow third-party representatives onto their worksites under the new Rule.

27.   The Walkaround Rule harms Plaintiffs' members because it strips each and every employer of the "right to exclude" third parties from their worksites. *Cedar Point Nursery*, 594 U.S. at 149. The Rule "appropriates a right to invade" employers' property by "grant[ing]" to third parties—who have no formal relationship with the government, and over whom the government claims no responsibility—"a right to physically enter and occupy" employer worksites during OSHA walkaround inspections. *Id.*

28.   The Rule also harms Plaintiffs' members because it forces them to choose between ceding this right of access to third parties or facing sanctions—including contempt of court—if they refuse to allow third-party access to their worksites during OSHA walkaround inspections. OSHA inspectors may arrive at

9

worksites with pre-inspection warrants—court orders—authorizing an inspection with a third-party representative.  29 C.F.R. § 1903.4(b).  Plaintiffs' members would be left to choose between consenting to the inspection or risking a contempt citation.  Plaintiffs' members object to third parties accessing their worksites, but they fear incurring sanctions if they do not acquiesce in allowing third-party access to their worksites during OSHA inspections.

29.     The Rule further harms Plaintiffs' members because they need to start preparing now for this expanded right of third-party access.  For starters, OSHA admits that, at a minimum, the Walkaround Rule will impose costs of "approximately $5 per establishment" to become familiar with it.  88 Fed. Reg. at 22,594, 22,597–98.  Plaintiffs' members have incurred or will imminently incur these costs.

30.     In addition, Plaintiffs' members will imminently incur substantial costs as they modify their access policies and practices to account for the risks associated with greatly expanded third-party access, especially when it comes to construction sites and manufacturing facilities.  For example, Plaintiffs' members will need to be prepared to provide these non-employees with training and supply them with personal protective equipment (PPE).  Without PPE, visitors may be exposed to potential hazards such as falling objects, moving machinery, or hazardous materials.  Plaintiffs' members also will need to engage counsel to understand and mitigate potential legal risks associated with opening their doors to these non-employee third parties who are not experts in workplace safety (*e.g.*, mitigating the potential disclosure of trade secrets, confidential business information, or proprietary practices

to non-employee third parties, understanding the duty of care owed to these visitors, mitigating potential labor disputes, assessing litigation risks associated with inspections that include plaintiffs' attorneys, and reevaluating insurance coverage needs in light of expanded third-party access). And Plaintiffs' members also will need to update handbooks, policies, and other practices and processes to account for expanded third-party access to their worksites.

31. The expanded walkaround rights created by the Walkaround Rule will impose other costs on Plaintiffs' members. For example, at expansive or remote worksites where transportation is required to effectively conduct an inspection, Plaintiffs' members may need to provide that transportation to more individuals than they otherwise would without the Rule.

32. Implementing the above-referenced procedures to comply with the Walkaround Rule on a multi-employer job site in particular will lead to increased administrative burdens and costs. For example, construction projects typically involve multiple entities working together, each with its own set of employees and responsibilities.

33. If the Rule is later vacated, Plaintiffs' members will be unable to recover these costs from the government because of its sovereign immunity.

34. These injuries to Plaintiffs' members are fairly traceable to OSHA's promulgation of the Walkaround Rule. But for the new Rule, Plaintiffs' members would not incur any of these additional costs. Plaintiffs' members would also retain the right to exclude third parties from their worksites during OSHA inspections

11

without incurring the risk of sanctions for excluding employee representatives designated under the new Rule.

35.    The Court can redress these injuries by vacating the Rule and enjoining OSHA from enforcing its unlawful interpretation of the statute.  This relief would restore employers' right to exclude third parties from their worksites and spare Plaintiffs' members from incurring the costs of having to prepare for expanded third-party access.  Declaratory relief would also terminate the controversy between the parties over the lawfulness of the Walkaround Rule because OSHA presumably would comply with a declaratory judgment that the Rule is unlawful.

36.    The Walkaround Rule also conflicts with each Plaintiff's policy objectives, and challenging the Rule is germane to each Plaintiff's purpose.  Each Plaintiff opposes unlawful federal regulations that negatively impact the property rights of their members—all or nearly all of which are employers subject to the Walkaround Rule.  Plaintiffs have advocated on workplace safety and health policies and specifically opposed OSHA's expansion of the Walkaround Rule.  Challenging the Walkaround Rule is germane to each Plaintiff's purpose of protecting their members' property rights and sparing their employer members from unlawful walkaround inspections in this District and throughout the country.

37.    Neither the claims asserted nor the relief requested requires Plaintiffs' individual members to participate in this suit because Plaintiffs are only seeking declaratory and injunctive relief.

12

## PARTIES

38.    Plaintiff Chamber of Commerce of the United States of America ("U.S. Chamber") is the world's largest business federation, with approximately 300,000 members, including members in the Western District of Texas.  All or nearly all of its members are employers subject to the Walkaround Rule, its members have been subject to OSHA inspections in the past, and it has members with worksites in Texas subject to the Rule.  Among other things, the U.S. Chamber represents the interests of its member-employers in workplace health and safety, employment, and labor-relations matters—including matters arising under the OSH Act and NLRA—as part of its overall mission to advocate for policies designed to help businesses create jobs and grow the national economy.  In advancing its mission, the Chamber seeks to preserve the property rights of employers, protect the appropriate scope of workplace health-and-safety inspections, and combat unlawful and arbitrary agency action.

39.    Plaintiff Greater Waco Chamber of Commerce works with a wide array of partners to help existing Greater Waco-area business overcome challenges that prevent them from growing, thriving and maintaining operations in the area. It also actively promotes policies that are conducive to the further development of the region by informing, educating, engaging, and advocating for the Greater Waco business community regarding relevant public policy. This includes supporting pro-business laws that keep costs low for employers, prevent regulatory uncertainty by providing needed clarity and predictability, and promote job growth and innovation. All or nearly all of its members are employers subject to the Walkaround Rule, its members

13

have been subject to OSHA inspections in the past, and it has members with worksites in Texas subject to the Rule.  In the past five years, OSHA has conducted inspections of employers in Waco, Texas, including Greater Waco Chamber of Commerce member SJS Partnership d/b/a WRS Group Ltd.

40.    Plaintiff Longview Chamber of Commerce is the leading advocacy organization in Gregg County, Texas representing the interests of business.  All or nearly all of its members are employers subject to the Walkaround Rule, its members have been subject to OSHA inspections in the past, and it has members with worksites in Texas subject to the Rule.  Its members include over 1,000 businesses and professional organizations in Gregg County and 11 adjacent counties (the Longview Trade Area).  Its mission is to engage in and promote projects that have a positive economic impact on the Longview Trade Area, serving its members and their 50,000+ employees, as well as to oppose federal regulations that "would increase the already-considerable burden on employers regarding occupational safety and health administration (OSHA) requirements."  *See* Longview Chamber of Commerce, *Policy Statements*, https://longviewchamber.com/policy-statement/.  In the past five years, OSHA has conducted inspections of employers in Longview, Texas, including Longview Chamber of Commerce member LeBus International Inc.

41.    Plaintiff National Association of Chemical Distributors d/b/a Alliance for Chemical Distribution (ACD) is a trade association of more than 400 chemical distribution industry members that provides the education, connection, standards, and advocacy needed to responsibly move the essential products our world depends

14

on.  As leaders in the $27 billion chemical distribution industry, ACD member companies commit to the highest standards in quality, safety, sustainability, and performance through ACD Responsible Distribution™.  All or nearly all of its members are employers subject to the Walkaround Rule, its members have been subject to OSHA inspections in the past, and it has members with worksites in Texas subject to the Rule.

42.    Plaintiff Associated Builders and Contractors (ABC) is a national construction industry trade association representing more than 23,000 members. Founded on the merit shop philosophy, ABC and its 68 Chapters help members develop people, win work and deliver that work safely, ethically and profitably for the betterment of the communities in which ABC and its members work.  ABC's membership represents all specialties within the U.S. construction industry and is comprised primarily of firms that perform work in the industrial and commercial sectors.  All or nearly all of its members are employers subject to the Walkaround Rule, its members have been subject to OSHA inspections in the past, and it has members with worksites in Texas subject to the Rule.

43.    Plaintiff Associated General Contractors of America (AGC) is the nation's largest and most diverse trade association in the commercial construction industry, now representing more than 28,000 member companies, that include general contractors, specialty contractors, and service providers and suppliers to the industry through a nationwide network of chapters in all 50 states (including 11 chapters in Texas), the District of Columbia, and Puerto Rico.  AGC represents both

15

union- and open-shop employers engaged in building, heavy, civil, industrial, utility, and other construction for both public and private property owners and developers. AGC's mission is to serve our nation's construction professionals, and therefore the public interest, by promoting the skill, integrity, and responsibility of those who build America. All or nearly all of its members are employers subject to the Walkaround Rule, its members have been subject to OSHA inspections in the past, and it has members with worksites in Texas subject to the Rule.

44.    Plaintiff International Franchise Association Inc. (IFA) is the world's oldest and largest organization representing the franchising industry. Since 1960, it has educated franchisors and franchisees on beneficial methods and business practices to improve franchising. It also advocates on behalf of franchisors and franchisees. Through its educational, public-policy, and government-relations programs, it furthers the interests of the more than 733,000 franchise establishments which span over 300 different industries, support nearly 7.6 million jobs, and contribute more than $674 billion to the U.S. economy. Its members operate in all 50 states, including Texas. All or nearly all of its members are employers subject to the Walkaround Rule, its members have been subject to OSHA inspections in the past, and it has members with worksites in Texas subject to the Rule.

45.    Plaintiff International Warehouse Logistics Association (IWLA) represents third-party logistics providers (3PLs) throughout North America. These companies are dedicated to the safe, reliable, and efficient flow of goods through the supply chain. The association's more than 500 members are responsible for the safe

16

transport, handling, storage, and distribution of billions of dollars in goods and materials every year in every sector of the economy: manufacturers, wholesalers, distributors, and retailers. They handle all kinds of products, ranging from food to pharmaceuticals, consumer goods to chemicals, utilizing 600 million square feet in nearly 1,500 locations across 47 states. All or nearly all of its members are employers subject to the Walkaround Rule, its members have been subject to OSHA inspections in the past, and it has members with worksites in Texas subject to the Rule.

46.    Plaintiff the National Association of Manufacturers (NAM) is the largest manufacturing trade association in the United States, representing small and large manufacturers in all 50 states and in every industrial sector. Manufacturing employs nearly 13 million men and women, contributes $2.89 trillion to the U.S. economy annually, has the largest economic impact of any major sector, and accounts for over half of all private-sector research and development in the nation. The NAM is the voice of the manufacturing community and the leading advocate for a policy agenda that helps manufacturers compete in the global economy and create jobs across the United States. All or nearly all of the NAM's members are employers subject to the Walkaround Rule, its members have been subject to OSHA inspections in the past, and it has members with worksites in Texas subject to the Rule.

47.    Plaintiff National Association of Wholesaler-Distributors (NAW) is an employer and a non-profit, non-stock, incorporated trade association that represents the wholesale distribution industry—the essential link in the supply chain between manufacturers and retailers as well as commercial, institutional, and governmental

17

end users.  NAW is made up of direct member companies and a federation of 59 national, regional, and state associations across 19 commodity lines of trade which together include approximately 35,000 companies operating nearly 150,000 locations throughout the nation, including companies in Texas who are directly impacted by the OSHA Walkaround Rule.  The overwhelming majority of wholesaler-distributors are small-to-medium-size, closely held businesses.  As an industry, wholesale distribution generates more than $8 trillion in annual sales volume providing stable and well-paying jobs to more than 6 million workers.  All or nearly all of its members are employers subject to the Walkaround Rule, its members have been subject to OSHA inspections in the past, and it has members with worksites in Texas subject to the Rule.

48.     Plaintiff National Federation of Independent Business, Inc. (NFIB) is the nation's leading small business association, representing members in all 50 states and Washington, D.C.  Its membership spans the spectrum of business operations, ranging from sole proprietor enterprises to firms with hundreds of employees.  Founded in 1943 as a nonprofit, nonpartisan organization, NFIB's mission is to promote and protect the right of its members to own, operate, and grow their businesses.  All or nearly all of its members are employers subject to the Walkaround Rule, its members have been subject to OSHA inspections in the past, and it has members with worksites in Texas subject to the Rule.

49.     Plaintiff National Retail Federation (NRF) is the world's largest retail trade association—representing discount and department stores, home goods and

18

specialty stores, Main Street merchants, grocers, wholesalers, chain restaurants, and Internet retailers from the United States and more than 45 countries. For over a century, NRF has been a voice for every retailer and every retail job, educating, inspiring, and communicating the powerful impact retail has on local communities and global economies. All or nearly all of its members are employers subject to the Walkaround Rule, its members have been subject to OSHA inspections in the past, and it has members with worksites in Texas subject to the Rule.

50.     OSHA is the federal agency within the Department of Labor responsible for the enforcement of the OSH Act and its implementing rules and regulations, including the Walkaround Rule. OSHA is subject to the APA. 5 U.S.C. § 551(1).

51.     The Department of Labor is the federal department responsible for the enforcement of the OSH Act and its implementing rules and regulations, including the Walkaround Rule. The Department is subject to the APA. 5 U.S.C. § 551(1).

52.     Defendant Julie A. Su is the Acting Secretary of Labor with responsibility for enforcement of the OSH Act. She is sued in her official capacity only.

53.     Defendant Douglas L. Parker is the Deputy Assistant Secretary of Labor for Occupational Safety and Health. Mr. Parker is the lead federal official responsible for promulgation and enforcement of the Walkaround Rule, which is the subject of this action. He is sued in his official capacity only.

## STATEMENT OF FACTS

### I.   OSHA's Health and Safety Mandate

54.   Enacted in 1970, the OSH Act is the principal federal law regulating health-and-safety matters in American workplaces.  29 U.S.C. § 651 *et seq.*

55.   Among other authorities, the OSH Act provides the Secretary of Labor with the authority to issue health and safety standards for American workplaces.  29 U.S.C. § 655.  The Secretary of Labor has since delegated the OSH Act's standard-setting and enforcement authorities to OSHA.  *See* Sec'y of Labor Order No. 1-2012, 77 Fed. Reg. 3,912-01 (Jan. 25, 2012).

56.   Each "employer" "shall comply with" OSHA's health and safety standards.  29 U.S.C. § 655(a)(2).  The Act broadly defines "employer" to mean "a person engaged in a business affecting commerce who has employees."  *Id.* § 652(5). All or nearly all of Plaintiffs' members are employers within the meaning of the OSH Act subject to OSHA's health and safety standards.

### II.   The OSH Act's Limited Walkaround Right

57.   The OSH Act also provides OSHA with the authority to enforce workplace health and safety standards through investigation and inspection of employer workplaces.  *Id.* § 657(a).

58.   OSHA inspections are frequent and burdensome.  Any of the agency's nearly 2,000 inspectors may enter workplaces without notice "during regular working hours and at other reasonable times" to conduct inspections and question employers and employees.  *Id.*; *see* 29 C.F.R. § 1903.3.  If an employer objects, the inspector may

20

seek "compulsory process" (typically in the form of an inspection warrant) in court. 29 C.F.R. § 1903.4; *see Marshall v. Barlow's Inc.*, 436 U.S. 307, 325 (1978) (holding OSHA inspection scheme unconstitutional insofar as it purports to authorize inspections of certain business premises without a warrant or its equivalent). OSHA may also obtain a pre-inspection warrant if "circumstances exist which make such preinspection process desirable or necessary." 29 C.F.R. § 1903.4(b). If an employer still refuses to grant access, a court may impose sanctions for contempt of court. Based on the inspection, an inspector may issue citations, 29 U.S.C. § 658, seek injunctive relief against employers, *id.* § 662, and impose civil and criminal penalties, *id.* §§ 659, 666.

59.    "In Fiscal Year 2023, OSHA conducted about 34,000 inspections of the more than 8 million employers covered by the OSH Act." 89 Fed. Reg. 22,595 n.4. And in the one-year period between 2022-2023, the agency imposed over $261 million in penalties. U.S. Dep't of Lab., OSHA, *Industry Profile for an OSHA Standard Results ALL*, https://perma.cc/YR2Z-A8AU.

60.    Although OSHA's inspectors have authority to conduct inspections of an employer's worksite, the Act imposes substantial limits on the ability of third parties to accompany the inspectors onto the employer's property. Accordingly, the OSH Act provides a limited walkaround right:

> Subject to regulations issued by the Secretary, a representative of the employer and *a representative authorized by his employees* shall be given an opportunity to accompany the Secretary or his authorized representative during the physical inspection of any workplace under subsection (a) for the purpose of aiding such inspection. Where there is

21

no *authorized employee representative*, the Secretary or his authorized representative shall consult with a reasonable number of employees concerning matters of health and safety in the workplace.

*Id.* § 657(e) (emphases added).

61. The statute sets out a dual structure for employee representation during inspections in two different classes of workplaces: (i) a workplace with "a representative authorized by … employees," and (ii) a workplace without an "authorized employee representative." *Id.* Those two classes of workplaces correspond to unionized and non-union workplaces.

62. The statute also limits the number of representatives that an inspector may allow to accompany the inspection: one for the employer and one "authorized by his employees." *Id.* And where there is "no authorized employee representative," the inspector has a duty to "consult with a reasonable number of employees." *Id.* Nothing in § 657(e), however, authorizes the OSHA inspector to appoint a third-party to accompany him in the latter scenario.

63. The limited nature of the walkaround right is confirmed by the statute's provision for protecting confidential information viewed during walkaround inspections. It protects "[a]ll information reported to or otherwise obtained by *the Secretary or his representative* in connection with any inspection or proceeding under this chapter which contains or which might reveal a trade secret" by mandating that such information "shall be considered confidential." *Id.* § 664. The statute contains a limited exception for "disclos[ure] to other officers or employees concerned with carrying out this chapter." *Id.* But Congress made no mention of protecting against

22

the disclosure of trade secrets to third parties who access the worksite during an inspection because Congress never anticipated OSHA would allow such access.

64.    The walkaround right's limited nature reflects Congress's explicit intention (codified in the subparagraph immediately above the walkaround right) to impose "a minimum burden upon employers, especially those operating small businesses." *Id.* § 657(d).

65.    Congress enacted § 657(e) against the backdrop of the NLRA, which establishes that a labor union is the "exclusive" authorized representative of employees regarding all "terms and conditions of employment," including health and safety matters, when a collective bargaining agreement is in place. *Id.* § 159(a). Only "the majority of the employees in a unit" may designate an authorized employee representative. *Id.* The NLRA also prohibits employers from refusing to bargain with the authorized employee representative, *id.* § 158(a)(5), and protects employers from being compelled to bargain with more than one authorized employee representative, *id.* § 158(b)(4)(C). OSHA acknowledges that the NLRA and OSH Act "overlap" and "intersect[]." 89 Fed. Reg. at 22,583.

66.    Accordingly, OSHA has long understood the phrase "authorized employee representative" to mean "an authorized collective bargaining agent of employees" pursuant to the NLRA. 29 C.F.R. § 1904.35(b)(2)(i) (promulgated 2001); *accord* 29 C.F.R. § 2200.1(g) (Occupational Safety and Health Review Commission regulation stating that "Authorized employee representative means a labor organization that has a collective bargaining relationship with the cited employer and

23

that represents affected employees who are members of the collective bargaining unit.").

67.    Elsewhere in the OSH Act, Congress authorized OSHA to pay for "experts and consultants or organizations thereof" to aid the inspector directly, 29 U.S.C. § 656(c)(2), and to use the services and personnel of other agencies—both federal and state—in carrying out its mandate, *id.* §§ 656(c)(1).  OSHA's inspection regulations contemplate incurring "costs" to "use" outside "experts" to aid inspections. 29 C.F.R. § 1903.4(b).  And OSHA's own Field Operations Manual (FOM) states that "Expert Assistance," when needed, should be arranged "preferably from *within* OSHA."  Ch. 3, Sec. II.G. 3-5 (emphasis added); *see also id.* Sec. II.I.5.a. 3-21 ("If an interpreter is needed, [inspectors] should contact the General Services Administration (GSA) tele-interpreter.").

### III.    OSHA's Longstanding Walkaround Regulation

68.    Soon after the OSH Act's passage, OSHA promulgated regulations implementing § 657(e).  36 Fed. Reg. 17,850 (Sept. 4, 1971) (codified at 29 C.F.R. § 1903).  Those regulations have been in effect for over 50 years.

69.    In particular, OSHA promulgated the current walkaround regulation, which provides that "[a] representative of the employer and a representative authorized by his employees shall be given an opportunity to accompany the [OSHA inspector] during the physical inspection of any workplace for the purpose of aiding such inspection."  29 C.F.R. § 1903.8(a).

24

70.    In addition, "[t]he representative(s) authorized by employees shall be an employee(s) of the employer." *Id.* § 1903.8(c).  In other words, the current regulation does not allow employees to designate nonemployee third-party representatives.

71.    The current regulation likewise allows OSHA inspectors, in limited circumstances, to be accompanied by experts and consultants if OSHA concludes they are reasonably necessary to assist the inspector in conducting his inspection. Accordingly, "if in the judgment of the [OSHA inspector], good cause has been shown why accompaniment by a third party who is not an employee of the employer (such as an industrial hygienist or a safety engineer) is reasonably necessary to the conduct of an effective and thorough physical inspection of the workplace, such third party may accompany the [OSHA inspector] during the inspection." *Id.*

## IV.    OSHA's Prior Attempt to Expand Walkaround Rights

72.    In response to "an inquiry from a union official regarding whether a worker at a [non-union workplace] could authorize a person affiliated with a union or community organization to act as his representative," in 2013 OSHA issued the Sallman Letter concluding "that the worker could authorize a person affiliated with a union or community organization to act as his representative" during an OSHA inspection. *NFIB*, 2017 WL 1194666, at *2.

73.    Pursuant to the Sallman Letter, OSHA then began permitting union organizers to accompany inspections of non-union workplaces. *See, e.g.*, *id.* (citing allegations of multiple inspections "accompanied by non-employee representatives of

25

the Service Employees International Union, a large labor union that represents janitors and other tradesmen").

74.    In 2017, the U.S. District Court for the Northern District of Texas concluded that OSHA's attempt to expand walkaround rights through informal guidance was "invalid" because OSHA amended "a prior legislative rule" without complying with the APA's notice-and-comment rulemaking requirement. *Id.* at *11. In reaching this conclusion, the court held that the current regulation, 29 C.F.R. § 1903.8(c), does not permit employees to designate non-employee third-party representatives to participate in walkaround inspections. *Id.*

## V.    OSHA's New Walkaround Rule

75.    In response to the court's decision, OSHA decided to revisit the existing rule last summer by proposing the expansion of walkaround rights that it had attempted ten years earlier. *Worker Walkaround Representative Designation Process*, 88 Fed. Reg. 59,825–26 (Aug. 30, 2023) (Proposed Rule).

76.    OSHA issued the Rule replacing § 1903.8(c) on April 1, 2024.  89 Fed. Reg. at 22,558.  Its effective date is May 31, 2024. *Id.*

77.    In a significant expansion from the prior regulation, which only permitted *employees* to serve as authorized employee representatives, the Walkaround Rule states "that the representative(s) authorized by employees may be an employee of the employer *or a third party*." *Id.* (emphasis added).

78.    OSHA also created a new, lower standard for allowing non-employee third-party representatives.  The OSHA inspector may allow non-employee third

26

parties to serve as authorized employee representatives if the inspector determines, in his sole discretion, that the third-party representative "will make a positive contribution to aid a thorough and effective inspection." *Id.* at 22,575. Although the Rule states the standard differently at different times (*e.g.*, describing the standard as "good cause has been shown why their participation is reasonably necessary to the conduct of an effective and thorough physical inspection of the workplace," *id.* at 22,558), the "positive contribution" standard will be the operative standard. *Id.* at 22,575 ("Third-party representatives are reasonably necessary if they will make a positive contribution to aid a thorough and effective inspection.").

79. In yet another change, under the Walkaround Rule's new standard, non-employee third-party representatives need not have any technical expertise (such as industrial hygiene or safety engineering). Instead, an OSHA inspector need only deem them capable of making a positive contribution "*including but not limited to* because of their relevant knowledge, skills, or experience with hazards or conditions in the workplace or similar workplaces, or language or communication skills" for the inspector to determine that they should be granted access to an employer's property during an inspection. *Id.* at 22,601 (emphasis added).

80. Under the Rule, the inspector has the sole discretion "to resolve any disputes as to who the authorized representatives are" based on that vague standard. *Id.* at 22,559. The inspector also has the discretion to go beyond the non-exhaustive description of skills set forth in the Rule.

27

81. These changes to § 1903.8(c) are intended to accomplish the policy change that the 2013 Sallman Letter failed to achieve: empower inspectors to give non-employee third parties—especially union organizers—access to employer workplaces. Indeed, the preamble to the Proposed Rule specifically identified "[w]orker advocacy organizations, labor organization representatives, consultants, or attorneys" as the kinds of third parties the Rule intends to grant access to workplaces without the employer's consent. 88 Fed. Reg. at 59,830.

82. In addition to increasing the *kinds* of third parties who are granted access to workplaces without the employer's consent, the Walkaround Rule also intends to increase their *number*. *Id.* at 59,829 (predicting "a multitude of third parties who might serve as representatives authorized by employees for purposes of the OSHA walkaround inspection"); *see id.* at 59,831 (noting agency's purported "authority to be accompanied by other types of third parties"); 89 Fed. Reg. at 22,570 (noting that "there may be other types of knowledge or skills" beyond those identified in the Rule that could justify accompanying a walkaround). The Rule contains no upper limit to the number of third parties who could access the employer's property during an OSHA inspection. *E.g.*, 89 Fed. Reg. at 22,569 (noting the "wide variety of third parties" who could accompany any given inspection).

83. OSHA never acknowledged the Walkaround Rule's significant departures from the current regulation by characterizing its sea change as merely "clarify[ing]" the existing regulation and "align[ing]" it "with OSHA's longstanding interpretation" of the OSH Act. *Id.* at 22,559. As OSHA put it, "this rule is a

28

clarification of OSHA's longstanding practice with which employers are already familiar." *Id.* at 22,594.  It also failed to grapple with its longstanding and contrary interpretation of the phrase "authorized employee representative" in 29 C.F.R. § 1904.35(b)(2)(i) and its sister agency's (the Occupational Safety and Health Review Commission's) longstanding and contrary interpretation of that phrase in 29 C.F.R. § 2200.1(g).   Nor did OSHA identify any problem with the current regulation justifying its change in policy, such as ineffective workplace inspections or inadequate protections for employee rights.

84.   Based on the premise that the Rule is merely a clarification of longstanding policy, OSHA also "concluded that this rule will not increase employers' costs or compliance burdens," *id.* at 22,559, except to begrudgingly acknowledge a one-time $5 familiarization cost to read the regulation, *id.* at 22,594.  The agency also disregarded evidence of costs in the record.  For example, the Rule says "[t]he record is replete with examples" of third-parties accompanying inspectors, but made no effort to analyze the actual costs associated with those examples.  *Id.* at 22,570. Commenters also explained in detail the costs that employers, especially small employers, would face if the agency moved forward with the proposed rule. Nevertheless, OSHA certified that "the final rule will not have a significant impact on a substantial number of small entities" under the RFA.  *Id.* at 22,597.

## CLAIMS FOR RELIEF

85.     The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.

86.     The APA further provides that "final agency action for which there is no other adequate remedy in a court" is "subject to judicial review."  5 U.S.C. § 704.

87.     Under the APA, courts "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "unsupported by substantial evidence."  5 U.S.C. § 706(2)(A), (C), (E).

88.     The APA further authorizes a reviewing court to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings."  5 U.S.C. § 705.

89.     OSHA's promulgation of the Walkaround Rule is final agency action because it is the consummation of the agency's decisionmaking process to amend 29 C.F.R. § 1903.8(c) and determines the rights and obligations of Plaintiffs' members during OSHA walkaround inspections.  In particular, the Rule confers upon non-employee third-parties a right of access to employer worksites during OSHA walkaround inspections, and it determines the obligation of Plaintiffs' members to allow those third parties to access their worksites.

30

### Count I—Violation of Administrative Procedure Act
### Agency Action In Excess of Statutory Authority

90.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs as though set forth fully herein.

91.    The Walkaround Rule exceeds OSHA's statutory authority by expanding the rights of non-employee third parties to access employer worksites during OSHA inspections beyond what Congress permitted in 29 U.S.C. § 657(e).

92.    In non-union workplaces, where a majority of employees have not designated an authorized employee representative pursuant to the NLRA, *id.* § 159, Congress did not authorize any third-party representatives to access employer worksites during OSHA inspections, *id.* § 657(e), nor did Congress envision third parties being exposed to confidential business information during OSHA inspections, *id.* § 664.    Instead, Congress decided that the inspector "shall consult with a reasonable number of employees."    *Id.* § 657(e).    The Walkaround Rule vitiates Congress's choice by authorizing the OSHA inspector, in his sole discretion based on a vague "positive contribution" standard, to designate union organizers and other third parties to serve as authorized employee representatives during OSHA inspections of non-union workplaces, despite these persons not being designated by a majority of employees pursuant to the NLRA's process for determining authorized employee representatives.

93.    The Walkaround Rule further exceeds OSHA's statutory authority by allowing the OSHA inspector to authorize an unlimited number of third parties to

31

serve as representatives for purposes of an OSHA walkaround inspection, because Congress only permitted OSHA to authorize "a" single "representative authorized by … employees." 29 U.S.C. § 657(e). Congress knows how to authorize more than one representative to participate in a government inspection of private property. *See* 30 U.S.C. § 813(f) ("To the extent that the Secretary or authorized representative of the Secretary determines that more than one representative from each party would further aid the inspection, he can permit each party to have an equal number of such additional representatives."). The absence of similar language in 29 U.S.C. § 657(e) confirms that Congress did not authorize more than one employee representative to participate in an OSHA walkaround inspection.

94. The Walkaround Rule also vitiates Congress's choice of who may represent employees during walkaround inspections of unionized workplaces. In unionized workplaces, Congress decided that the union selected pursuant to the NLRA would serve as the employees' exclusive authorized representative for health and safety matters. Indeed, OSHA has long understood the statutory phrase "authorized employee representative" in § 657(e) to mean "an authorized collective bargaining agent of employees" pursuant to the NLRA. 29 C.F.R. § 1904.35(b)(2)(i); *accord* 29 C.F.R. § 2200.1(g) (Occupational Safety and Health Commission regulation saying the same). But the Walkaround Rule disregards Congress's choice by allowing OSHA inspectors to authorize other third parties to represent employees during OSHA inspections of union workplaces, despite those third parties not being

designated as the exclusive authorized representative of those employees by a majority of the employees under the NLRA.

95.     Congress spoke directly to the question of third-party access to employer worksites during OSHA inspections by authorizing OSHA to pay for "experts and consultants or organizations thereof" or to engage with other federal agencies when necessary to aid in an inspection.  29 U.S.C. §§ 656(c), 673(d).

96.     The Rule thus conflicts with the NLRA by end-running that statute's "exclusive," reticulated scheme for designating employee representatives with respect to all "terms and conditions of employment," including health and safety matters.  29 U.S.C. § 159(a).  It also contradicts Congress's direction that inspections be conducted "with a minimum burden upon employers, especially those operating small businesses."  29 U.S.C. § 657(d).

97.     OSHA's interpretation of 29 U.S.C. § 657(e) in the Walkaround Rule would render the statute unconstitutional for the reasons explained in Count II, yet Congress provided no clear authorization in § 657 for OSHA to invade property rights protected by the Fifth Amendment's Takings Clause.   Nor could such an interpretation be justified under the Fourth Amendment to the extent it compels employers to grant access to a parade of union organizers, community activists, plaintiffs' attorneys, environmental groups, and other third parties unnecessary to aid in the inspection.

### Count II—Takings in Violation of Fifth Amendment
### Declaratory Judgment

98.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs as though set forth fully herein.

99.    The Fifth Amendment requires the Federal Government to pay just compensation when it takes private property.  U.S. Const. amend. V.  The Takings Clause protects property owners from both "permanent" and "temporary" takings of their property.  *Cedar Point Nursery*, 594 U.S. at 153.

100.    Plaintiffs' members hold legally protected interests in real property—their worksites.  Their "right to exclude" third parties from accessing their worksites is "one of the most fundamental elements of property ownership."  *Ala. Ass'n of Realtors*, 141 S. Ct. at 2489.

101.    The Walkaround Rule effects a *per se* taking of Plaintiffs' members' property rights in an identifiable class of cases by granting third parties—including union organizers, community activists, environmental groups, plaintiffs' attorneys, competitors, and other third parties—"a right to physically enter and occupy [employers'] land" during OSHA inspections, which "appropriates for the enjoyment of third parties the owners' right to exclude."  *Cedar Point Nursery*, 594 U.S. at 149. The Walkaround Rule effects takings of private property whenever third parties serve as employee representatives on OSHA walkaround inspections of employer worksites.

34

102.    The Declaratory Judgment Act "allows individuals threatened with a taking to seek a declaration of the constitutionality of the disputed governmental action before potentially uncompensable damages are sustained." *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 71 n.15 (1978); *In re Chateaugay Grp.*, 53 F.3d 478, 493 (2d Cir. 1995) (exercising jurisdiction over takings claim because the plaintiff "s[ought] only declaratory relief on its takings claim").

103.    Declaratory relief is appropriate here because it would be "utterly pointless" for Plaintiffs' members to seek just compensation in the Court of Federal Claims each and every time a non-employee third party accesses an employer's worksite during an OSHA inspection. *Eastern Enters. v. Apfel*, 524 U.S. 498, 521 (1998) (plurality op.).  OSHA conducts tens of thousands of inspections each year, and a suit for each inspection conducted with a third-party representative would expose the United States to innumerable claims for just compensation.  There is also no guarantee that Plaintiffs' members will be able to obtain just compensation in the Court of Federal Claims because "a viable takings claim against the United States" requires that "the government action in issue must be duly authorized by Congress," *Darby Dev. Co., Inc. v. United States*, 160 Fed. Cl. 45, 51 (2022), *appeal pending*, No. 22-1929 (Fed. Cir.), but OSHA "lacked the requisite congressional authority to issue the" Walkaround Rule, *id*. at 52.  Declaratory relief would finally settle the controversy between the parties, resolve an issue of great public importance, promote the convenience of the parties, and be judicially manageable given the degree of adverseness between the parties.

104.    Accordingly, the Court should declare that the Walkaround Rule will effect takings of private property for which the Constitution requires just compensation.

### Count III—Violation of Administrative Procedure Act
### Arbitrary and Capricious Agency Action

105.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs as though set forth fully herein.

106.    The Walkaround Rule is arbitrary and capricious because OSHA failed to acknowledge or explain the significant departures from its 50-year old walkaround rule.    OSHA incorrectly characterizes the new Rule as a clarification of its longstanding policy, 89 Fed. Reg. at 22,559, rather than a change of course.  The Rule is not a clarification but a wholesale change of longstanding policy: OSHA now explicitly permits employees to designate non-employee third-party representatives, allows an unlimited number of such representatives, employs a flexible new "positive contribution" standard for OSHA inspectors to authorize such representatives, and abandons the technical-expertise limit on third parties who accompany OSHA inspectors in favor of a non-exhaustive list.  Nor did OSHA provide a good reason for changing course, identifying no evidence of a problem with the current regulation.

107.    OSHA also failed to adequately grapple with its own regulations defining "authorized employee representative" to mean "an authorized collective bargaining agent of employees" pursuant to the NLRA.  29 C.F.R. § 1904.35(b)(2)(i);

*accord* 29 C.F.R. § 2200.1(g) (Occupational Safety and Health Review Commission regulation).

108.    In addition, OSHA relied on an unsupported assumption that the Rule would not impose any (or at most de minimis) costs on employers, failed to consider important aspects of the problem (such as how to protect confidential business information and how to determine the maximum number of authorized third-party employee representatives during a walkaround inspection) or respond to significant public comments, and neglected obvious alternatives to the approach it chose, choosing instead to punt complex policy choices to OSHA inspectors to make on a case-by-case ad hoc basis.

### Count IV—Violation of Regulatory Flexibility Act
### Failure to Complete Regulatory Flexibility Analyses

109.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs as though set forth fully herein.

110.    The Regulatory Flexibility Act (RFA) requires OSHA, in promulgating rules subject to the APA's notice-and-comment requirement, to coordinate with the Small Business Administration and Office of Information and Regulatory Affairs to "convene a review panel," 5 U.S.C. § 609(b), "prepare and make available for public comment an initial regulatory flexibility analysis," *id.* § 603(a), and then "prepare a final regulatory flexibility analysis," *id.* § 604(a), unless the agency determines that the rule will not have "have a significant economic impact on a substantial number of small entities," *id.* § 605(b). A "small entity that is adversely affected or aggrieved

37

by final agency action is entitled to judicial review of agency compliance with the requirements of" the RFA. *Id*. § 611(a)(1).

111.    Plaintiffs have standing to challenge OSHA's compliance with the RFA because they have members who are small entities aggrieved by the Walkaround Rule and any number of them would have standing to seek review in their own right under 5 U.S.C. § 611.    The small-entity interests Plaintiffs seek to protect are germane to their organizational purposes, and the participation of individual members is not necessary to the claim asserted or relief requested.    *See Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006).

112.    For example, according to the latest available Census Bureau data (2017 Census of Construction), out of 547,496 construction firms that operated for the entire year, 519,442 or 94.9% had revenue of less than $10 million, while 537,273 or 98.1% had revenue of less than $25 million.[2]

113.    OSHA failed to convene a review panel, prepare an initial regulatory flexibility analysis when it issued the Proposed Rule, or prepare a final regulatory flexibility analysis before promulgating the Walkaround Rule in violation of 5 U.S.C. § 603(a), § 604(a), and § 609(b).

114.    OSHA was required to comply with RFA procedures because the Walkaround Rule will have a "significant economic impact on a substantial number

---

[2] U.S. Census Bureau, *Economic Census, Selected Sectors: Sales, Value of Shipments, or Revenue of Firms for the US* (2017), https://perma.cc/W5B7-ZCP3.

of small entities," both in terms of intrusion upon their property right to exclude third parties from their property and in terms of costs.  5 U.S.C. § 605(b).

115.  The RFA's requirements carry even greater significance in the walkaround context, because Congress specifically instructed that OSHA's inspection and information-gathering regime must be implemented "with a minimum burden upon employers, especially those operating small businesses."  29 U.S.C. § 657(d).

116.  Because the agency improperly assumed that the Walkaround Rule would impose "no new costs" on any employer, 88 Fed. Reg. 59,831, OSHA refused to convene a review panel or prepare an initial regulatory flexibility analysis when it proposed the Rule, as required by the RFA.  Therefore, Plaintiffs and their members had no opportunity to review or provide comments on that analysis.

117.  And when it finalized the Walkaround Rule, OSHA doubled down on that faulty assumption, refusing to prepare a final regulatory flexibility analysis because it continues to erroneously believe the Rule imposes no (or de minimis) costs on any employer.  89 Fed. Reg. at 22,597.

118.  Because the Walkaround Rule was promulgated "without observance of procedure required by" the RFA, and because OSHA's refusal to provide an initial regulatory flexibility analysis denied the public of "an opportunity" to review and comment on that analysis, the Court should "hold unlawful and set aside" the Rule.  5 U.S.C. §§ 553, 706.  At a minimum, the Court should remand the Rule to the agency and defer enforcement of the Rule against small entities until OSHA complies with the RFA.  5 U.S.C. § 611.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for the following relief:

a.      Declare that the Walkaround Rule violates the APA and RFA;

b.      Declare that 29 U.S.C. § 657(e) does not permit non-employee third parties to participate in walkaround inspections of non-union worksites, non-union representatives to participate in walkaround inspections of union worksites, or more than one authorized employee representative to participate in a walkaround inspection of an employer's worksite;

c.      Declare that the Walkaround Rule effects takings of private property requiring just compensation under the Fifth Amendment;

d.      Vacate the Walkaround Rule;

e.      Enjoin Defendants from enforcing any interpretation of 29 U.S.C. § 657(e) or 29 C.F.R. § 1903.8 that would permit non-employee third parties to participate in walkaround inspections of non-union worksites, non-union representatives to participate in walkaround inspections of union worksites, or more than one authorized employee representative to participate in a walkaround inspection of an employer's worksite;

f.      Postpone enforcement of the Walkaround Rule under 5 U.S.C. § 705 during the pendency of this action;

g.      Award all costs and attorneys' fees pursuant to any applicable statute or authority; and

h.      Grant any other relief this Court deems just and proper.

Dated: May 21, 2024

Respectfully submitted,

Jonathan D. Guynn
(Texas Bar No. 24120232)
JONES DAY
2727 North Harwood Street
Dallas, TX 75201
Telephone: (214) 969-3793

Noel J. Francisco
  (D.C. Bar No. 286666)
  (*pro hac vice* to be filed)
Brett A. Shumate
  (D.C. Bar No. 974673)
  (*pro hac vice* to be filed)
Jacqueline M. Holmes
  (D.C. Bar No. 450357)
  (*pro hac vice* to be filed)
Charles E.T. Roberts
  (W.D. Tex. Bar No. 326539)
  (D.C. Bar No. 1780573)
Louis J. Capozzi III
  (D.C. Bar No. 90018764)
  (*pro hac vice* to be filed)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939

*Counsel for Plaintiffs*

*Counsel for Plaintiffs*

Jordan L. Von Bokern
  (D.C. Bar No. 1032962)
  (*pro hac vice* to be filed)
Maria C. Monaghan
  (D.C. Bar No. 90002227)
  (*pro hac vice* to be filed)
U.S. Chamber Litigation Center
1615 H Street, N.W.
Washington, D.C. 20062
Telephone: (202) 463-5337

*Counsel for the Chamber of Commerce of the United States of America*

41