# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA,
GREATER WACO CHAMBER OF
COMMERCE, LONGVIEW CHAMBER
OF COMMERCE, NATIONAL
ASSOCIATION OF CHEMICAL
DISTRIBUTORS D/B/A ALLIANCE FOR
CHEMICAL DISTRIBUTION,
ASSOCIATED BUILDERS AND
CONTRACTORS, INC., ASSOCIATED
GENERAL CONTRACTORS OF
AMERICA, INTERNATIONAL
FRANCHISE ASSOCIATION INC.,
INTERNATIONAL WAREHOUSE
LOGISTICS ASSOCIATION,
NATIONAL ASSOCIATION OF
MANUFACTURERS, NATIONAL
ASSOCIATION OF WHOLESALER-
DISTRIBUTORS, NATIONAL
FEDERATION OF INDEPENDENT
BUSINESS, INC., NATIONAL RETAIL
FEDERATION,

        *Plaintiffs*,

*v.*

OCCUPATIONAL SAFETY AND
HEALTH ADMINISTRATION, UNITED
STATES DEPARTMENT OF LABOR,
JULIE A. SU, in her official capacity as
Acting Secretary of Labor, and
DOUGLAS L. PARKER, in his official
capacity as Assistant Secretary of Labor
for Occupational Safety and Health,

        *Defendants*.

No. 6:24-cv-00271-ADA-DTG

**PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN
SUPPORT**

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ..................................................................................................... 1

BACKGROUND ........................................................................................................ 3

   A.   The Occupational Safety And Health Act ..................................................... 3

   B.   OSHA's Longstanding Walkaround Regulation .......................................... 4

   C.   OSHA's New Walkaround Rule .................................................................... 5

LEGAL STANDARDS .............................................................................................. 7

ARGUMENT .............................................................................................................. 8

I.     The Walkaround Rule Exceeds OSHA's Statutory Authority............................ 8

   A.  Congress Did Not Authorize Third-Party Access
      To Non-Union Workplaces................................................................................ 8

   B.  Congress Did Not Authorize Non-Union Third Parties
      To Represent Unionized Employees During OSHA Inspections. ................... 13

   C.  Congress Did Not Authorize An Unlimited Number
      Of Employee Representatives. ......................................................................... 16

II.    The Walkaround Rule Effects Takings Of Private Property. ............................ 18

   A.  The Takings Clause Protects Employers' Right
      To Exclude Third Parties From Private Property. ........................................... 19

   B.  Under *Cedar Point*, OSHA's Rule Effects Takings........................................ 20

   C.  The Court Should Interpret The Walkaround Statute Narrowly
      To Avoid This Serious Fifth Amendment Problem. ........................................ 23

III.   The Walkaround Rule Is Arbitrary And Capricious. ....................................... 24

   A.  OSHA Failed To Acknowledge Its Policy Change.......................................... 24

   B.  OSHA Failed To Consider Important Aspects Of The Problem....................... 26

   C.  OSHA Failed To Consider Obvious Alternatives............................................. 27

   D.  OSHA Failed To Consider Costs. .................................................................... 27

CONCLUSION......................................................................................................... 30

CERTIFICATE OF SERVICE

i

## TABLE OF AUTHORITIES

**Page**

CASES

*Ala. Ass'n of Realtors v. HHS*,
594 U.S. 758 (2021) ................................................................................................ 19, 23, 24

*Anderson v. U.S. Dep't of Lab.*,
422 F.3d 1155 (10th Cir. 2005) ................................................................................ 9

*Asarco, Inc. v. NLRB*,
86 F.3d 1401 (5th Cir. 1996) .................................................................................... 4, 14

*Banuelos v. Barr*,
953 F.3d 1176 (10th Cir. 2020) ................................................................................ 16

*Bell Atlantic Tel. Cos. v. FCC*,
24 F.3d 1441 (D.C. Cir. 1994) .................................................................................. 23

*Cargill v. Garland*,
57 F.4th 447 (5th Cir. 2023),
*aff'd*, No. 22-976, 2024 WL 2981505 (U.S. June 14, 2024) .................................... 30

*Cedar Point Nursery v. Hassid*,
594 U.S. 139 (2021) ............................................................. 2, 19, 20, 21, 22, 23, 24

*Corbin v. Safeway Stores, Inc.*,
648 S.W.2d 292 (Tex. 1983) ..................................................................................... 29

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
140 S. Ct. 1891 (2020) ............................................................................................. 27

*Dolan v. City of Tigard*,
512 U.S. 374 (1994) .................................................................................................. 20

*Duke Power Co. v. Carolina Env't Study Grp.*,
438 U.S. 59 (1978) .................................................................................................... 30

*E. Enters. v. Apfel*,
524 U.S. 498 (1998) .................................................................................................. 30

*Encino Motorcars, LLC v. Navarro,*
    579 U.S. 211 (2016) ............................................................................ 8, 24

*FCC v. Fox Television Stations, Inc.,*
    556 U.S. 502 (2009) ................................................................................. 25

*FTC v. Bunte Bros., Inc.,*
    312 U.S. 349 (1941) ................................................................................. 13

*Horne v. Dep't of Agric.,*
    576 U.S. 350 (2015) ................................................................................. 23

*Janus v. AFSCME, Council 31,*
    585 U.S. 878 (2018) ................................................................................. 10

*Libr. of Cong. v. FLRA,*
    699 F.2d 1280 (D.C. Cir. 1983) ................................................................. 4

*Marshall v. Barlow's Inc.,*
    436 U.S. 307 (1978) ................................................................................. 21

*Medo Photo Supply Corp. v. NLRB,*
    321 U.S. 678 (1944) ................................................................................. 14

*Mexican Gulf Fishing Co. v. U.S. Dep't of Com.,*
    60 F.4th 956 (5th Cir. 2023) .................................................................... 23

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ......................................................................... 8, 26, 28

*NFIB v. Dougherty,*
    No. 3:16-CV-2568-D, 2017 WL 1194666 (N.D. Tex. Feb. 3, 2017) ................... 5, 20

*NFIB v. Perez,*
    No. 5:16-CV-0066-C, 2016 WL 3766121 (N.D. Tex. June 27, 2016) ..................... 30

*NLRB v. Loc. Union No. 103, Int'l Ass'n of Bridge, Structural &*
    *Ornamental Iron Workers, AFL-CIO,*
    434 U.S. 335 (1978) ................................................................................. 15

*NLRB v. Town & Country Elec., Inc.,*
    516 U.S. 85 (1995) ................................................................................... 24

iii

*Nollan v. Cal. Coastal Comm'n*,
   483 U.S. 825 (1987) ................................................................................................ 20

*Ohio v. EPA*,
   No. 23A340 (U.S. June 27, 2024) ....................................................................... 8, 27

*Russello v. United States*,
   464 U.S. 16 (1983) ............................................................................................ 11, 18

*Sanofi Aventis U.S. LLC v. HHS*,
   58 F.4th 696 (3d Cir. 2023) ................................................................................... 30

*Teamsters Nat. United Parcel Serv. Negotiating Comm. v. NLRB*,
   17 F.3d 1518 (D.C. Cir. 1994) ............................................................................... 15

*United States v. Clouston*,
   623 F.2d 485 (4th Cir. 1980) ................................................................................. 22

*United States v. Moss*,
   872 F.3d 304 (5th Cir. 2017) ................................................................................. 12

*United States v. Riverside Bayview Homes, Inc.*,
   474 U.S. 121 (1985) ............................................................................................... 23

*United States v. Security Indus. Bank*,
   459 U.S. 70 (1982) ................................................................................................. 23

*United States v. Stauffer Chemical Co.*,
   684 F.2d 1174 (6th Cir. 1982) ................................................................................. 9

*Wallace Corp. v. NLRB*,
   323 U.S. 248 (1944) ............................................................................................... 14

*Washington Cnty. v. Gunther*,
   452 U.S. 161 (1981) ................................................................................................. 9

*West Virginia v. EPA*,
   597 U.S. 697 (2022) ............................................................................................... 15

## Constitutions and Statutes

5 U.S.C.

§ 603 .................................................................................................. 29

§ 604 .................................................................................................. 29

§ 605 .................................................................................................. 29

§ 611 .................................................................................................. 29

§ 706 .................................................................................................... 7

29 U.S.C.

§ 159 ................................................................................ 1, 4, 10, 12, 14

§ 655 .................................................................................................... 3

§ 656 ............................................................................... 4, 12, 18, 27

§ 657 ............................................................................................ *Passim*

§ 664 ............................................................................................ 4, 12

§ 725 .................................................................................................. 18

§ 796d ................................................................................................ 18

§ 3102 ................................................................................................ 18

30 U.S.C. § 813 .................................................................................. 18

U.S. Const., amend. V ...................................................................... 19

## Other Authorities

29 C.F.R. § 1903.8 ................................................................... 4, 5, 6, 25

29 C.F.R. § 1904.35 ............................................................... 5, 7, 13, 25

29 C.F.R. § 1910.132 .......................................................................... 29

29 C.F.R. § 2200.1 .............................................................................. 25

*American Heritage Dictionary of the English Language*
    (New College ed. 1976) ................................................................ 16

*Black's Law Dictionary* (4th rev. ed. 1968) ................................... 9, 16

Bryan A. Garner, *Garner's Modern English Usage* (4th ed. 2016) ............ 16

Comments of Employers Walkaround Representative Rulemaking
    Coalition, OSHA-2023-0008-1976 (Nov. 13, 2023) ....................... 29

Fed. R. Civ. P. 56 .................................................................................. 1, 7

*Occupational Injury and Illness Recording and Reporting Requirements*,
   66 Fed. Reg. 5916 (Jan. 19, 2001) .................................................... 13, 25

OSHA Field Operations Manual (FOM) ...................................... 27, 28, 29

OSHA, Sallman Letter Rescission (Apr. 25, 2017) ................................. 5, 13

Random House College Dictionary (Rev. ed. 1980) ................................... 16

*Worker Walkaround Representative Designation Process*,
   88 Fed. Reg. 59,825 (Aug. 30, 2023) ........................................... *Passim*

*Worker Walkaround Representative Designation Process*,
   89 Fed. Reg. 22,558 (Apr. 1, 2024) .............................................. *Passim*

Pursuant to Federal Rule of Civil Procedure 56, and the parties' agreement (ECF 23), Plaintiffs respectfully move for summary judgment.

## INTRODUCTION

The Occupational Safety and Health Administration's (OSHA) new Walkaround Rule authorizes an unlimited number of third parties to access employer worksites during OSHA inspections. For employers in Waco and around the country, this means that when an OSHA inspector knocks on the door, employers must allow third parties—including plaintiffs' attorneys, environmental activists, and even competitors—to wander through the workplace looking for potential issues. And at non-union worksites, employers must throw their doors open to union organizers, too, without any election by a majority of employees.

Congress did not permit any of this. The Occupational Safety and Health (OSH) Act creates a limited walkaround right for "a representative of the employer and a representative authorized by his employees." 29 U.S.C. § 657(e). That provision relies on the existing federal statutory scheme for employees to authorize a representative with respect to health and safety matters: the National Labor Relations Act (NLRA). There, Congress provided unions selected by a "majority" of employees the "exclusive" role of representing employees, *id.* § 159(a)—in other words, any "employee representative" must be "authorized" pursuant to that statute, *id.* § 657(e)). Allowing union organizers at non-unionized workplaces, or other third parties at unionized or non-unionized workplaces, to serve as unelected employee representatives would conflict with the exclusive representation scheme of the NLRA.

1

And for non-unionized workplaces—those "[w]here there is no authorized employee representative," *id.*—the Rule further conflicts with the OSH Act, which does not empower the OSHA inspector to initiate an alternative representation process. Instead, Congress specifically provided that OSHA inspectors in those workplaces "shall consult with a reasonable number of employees." *Id.* Moreover, Congress only allowed "a" single employee "representative" to join an inspection—not an unlimited number of third-party representative*s.* And the OSH Act gives OSHA ample authority to supplement its inspectors' expertise, permitting the Agency to hire its own "experts and consultants" or engage other federal or state agencies; but it does not permit OSHA to authorize a parade of third-party representatives onto employers' properties. *Id.* § 657(c).

The Walkaround Rule also creates a serious constitutional problem. In conferring third-party access to private property, the Walkaround Rule effects takings without just compensation. *Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021). The Court can avoid this Fifth Amendment concern by narrowly construing OSHA's statutory authority to implement § 657(e).

Finally, the Rule suffers from several fatal flaws under the Administrative Procedure Act (APA) and Regulatory Flexibility Act (RFA). For example, OSHA failed to: (i) acknowledge its departure from longstanding policy limiting third-party access, (ii) consider important aspects of the problem, such as the disclosure of confidential business information, (iii) consider obvious alternatives, such as using OSHA's authority to engage federal, state, or outside experts, and (iv) consider costs.

In the end, the Walkaround Rule is OSHA's attempt to deliver on President Biden's campaign pledge to be the most pro-union president in history. But in prioritizing a win for the unions over adherence to the agency's authority, OSHA exceeded its authority, exposed the U.S. Treasury to takings liability, and acted arbitrarily and capriciously. The Court should set aside the Walkaround Rule, enjoin OSHA from enforcing it, and declare that the Rule effects takings.

## BACKGROUND

### A.    The Occupational Safety And Health Act

The OSH Act authorizes OSHA to issue safety and health standards for workplaces. 29 U.S.C. § 655. The statute also permits OSHA to conduct physical inspections of workplaces to enforce its standards. *Id.* § 657(a). During these walkaround inspections—which OSHA's nearly 2,000 inspectors perform frequently and typically without advance notice—an employer representative and an employee representative may accompany the OSHA inspector. *Id.* § 657(e).

Congress provided for different employee walkaround rights depending on the type of workplace. In a unionized workplace with "a representative authorized by [the employer's] employees," Congress permitted a union representative to "accompany" the OSHA inspector. *Id.* But in a non-union workplace "[w]here there is no authorized employee representative," Congress specified that OSHA's inspector "shall consult with a reasonable number of employees." *Id.*

In addition to establishing limited walkaround rights, Congress addressed how OSHA could obtain additional expertise during inspections when necessary. Congress

specifically authorized OSHA to pay for "experts and consultants" and engage with other agencies (federal or state) to carry out its mandate. *Id.* § 656(c). And to address the risk of confidential business information being disclosed, Congress protected from disclosure "[a]ll information reported to or otherwise obtained by the Secretary or his representative in connection with any inspection," with a narrow exception for *the company's* "officers and employees." *Id.* § 664.

Congress enacted these provisions in 1971 against the backdrop of—and in the same Title as—the NLRA of 1935. Under the NLRA, a "majority" of employees must vote to establish a union; and once they do, the union is the "exclusive" authorized representative of employees regarding all "terms and conditions of employment," including health and safety matters. *Id.* § 159(a); *Asarco, Inc. v. NLRB*, 86 F.3d 1401, 1412 (5th Cir. 1996) (explaining that where there is a duly authorized union, that entity has "the responsibility of attending OSHA inspections"); *Libr. of Cong. v. FLRA*, 699 F.2d 1280, 1286 (D.C. Cir. 1983) ("[F]ew policies and practices could be considered more central to an employee's working conditions than those relating to job safety."). Congress also gave the National Labor Relations Board (NLRB) an exclusive role in the process of certifying employee representatives. 29 U.S.C. § 159(b)-(e).

## B.  OSHA's Longstanding Walkaround Regulation

OSHA promulgated regulations implementing § 657(e) soon after the OSH Act's passage. 29 C.F.R. § 1903.8. Throughout its history, the walkaround regulation has provided that "[t]he representative(s) authorized by employees shall be an

employee(s) of the employer." *Id.* § 1903.8(c). It also allows inspectors, in limited circumstances, to bring along experts or consultants—"such as an industrial hygienist or a safety engineer"—if they are reasonably necessary to assist the inspector. *Id.* And OSHA regulations have long defined the phrase "authorized employee representative" in § 657(e) to mean "an authorized collective bargaining agent of employees" under the NLRA. 29 C.F.R. § 1904.35(b)(2)(i) (2001).

In 2013, OSHA attempted to amend the walkaround regulation through informal guidance. *See NFIB v. Dougherty*, No. 3:16-CV-2568-D, 2017 WL 1194666 (N.D. Tex. Feb. 3, 2017). That guidance, known as the Sallman Letter, stated that an employee "could authorize a person affiliated with a union or community organization to act as his representative" during an inspection of a non-union workplace. *Id.* at *2. OSHA soon began acting on that guidance, permitting union organizers to accompany multiple inspections of non-union workplaces. *Id.* The U.S. District Court for the Northern District of Texas, however, determined that the guidance was an "invalid" attempt to expand walkaround rights by amending "a prior legislative rule" without APA notice-and-comment rulemaking. *Id.* at *11. OSHA later withdrew the Sallman letter in light of "the express guidance in the statute and the applicable regulation." OSHA, Sallman Letter Rescission (Apr. 25, 2017), https://perma.cc/NC9Y-5QDT.

### C.     OSHA's New Walkaround Rule

Last summer, OSHA proposed a new rule to expand walkaround rights in a manner similar to the Sallman letter. *Worker Walkaround Representative Designation Process*, 88 Fed. Reg. 59,825-26 (Aug. 30, 2023) (Proposed Rule). It

finalized the Walkaround Rule on April 1, 2024. *Worker Walkaround Representative Designation Process*, 89 Fed. Reg. 22,558 (effective May 31, 2024).

The Walkaround Rule replaces § 1903.8(c), stating that authorized employee representatives "may be … a third party." *Id.* The Rule also lowers the standard for allowing third-party representatives to accompany an OSHA inspector by requiring only that the inspector determine the individual will make "a positive contribution." *Id.* at 22,575. And it leaves inspectors without any meaningful guidance on what that standard means. The Rule also eliminates the longstanding requirement for persons accompanying an inspection to have technical expertise (such as in industrial hygiene or safety engineering). Instead, any "relevant knowledge, skills, or experience with hazards or conditions in the workplace or similar workplaces, or language or communication skills" can qualify a third party to join an inspection. *Id.* at 22,601. OSHA specifically identifies "[w]orker advocacy organizations, labor organization representatives, [ ] attorneys," and "worker justice coalition[s]" as potential walkaround candidates under the new rule. *Id.* at 22,596; 88 Fed. Reg. at 59,830.

In addition to increasing the *kinds* of third parties who can accompany inspections, the Rule also increases their *number*. 88 Fed. Reg. at 59,829 (predicting "a multitude of third parties who might" accompany); 89 Fed. Reg. at 22,569 ("wide variety of third parties"). The Rule provides that "more than one employee" may authorize a representative. 89 Fed. Reg. at 22,590. And it places no upper limit on the number of representatives. So in a workplace with hundreds of employees, potentially hundreds of representatives could be authorized to walk around.

Despite these significant changes, OSHA did not acknowledge the Rule's dramatic departures from the current regulation, casting the new Rule as a mere "clarification of OSHA's longstanding practice." 89 Fed. Reg. at 22,594. Nor did OSHA reconcile the conflict between the Walkaround Rule and its longstanding interpretation of the same phrase "authorized employee representative" in 29 C.F.R. § 1904.35(b)(2)(i). OSHA also never considered relying on its separate authority under § 657(c) to hire "experts and consultants" or engage other agencies to supplement its expertise instead of expanding employee walkaround rights. And based on its conclusion "that this rule will not increase employers' costs or compliance burdens," except perhaps a one-time $5 familiarization cost to read the regulation, 89 Fed. Reg. at 22,559, 22,594, OSHA refused to consider the impact of the Walkaround Rule on small businesses, *id*. at 22,593.

On May 20, a coalition of business associations filed this suit because the Rule imposes significant burdens on their members, as explained in the declarations filed with this Motion. *See* Appendix, attached.

## LEGAL STANDARDS

Summary judgment is warranted when "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). Under the APA, a court must "set aside" agency action that is "arbitrary, capricious," or "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2). An agency decision is "arbitrary and capricious if the agency has … entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the

agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise," or neglects to address obvious "alternative way[s] of achieving" its objectives. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 48 (1983); *see also Ohio v. EPA*, No. 23A340, slip op. 11-12 (U.S. June 27, 2024). So too if the agency fails to acknowledge or reasonably explain a policy change. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016).

## ARGUMENT

## I.     The Walkaround Rule Exceeds OSHA's Statutory Authority.

The Rule's unlimited expansion of employee representative walkaround rights during OSHA inspections exceeds OSHA's authority under 29 U.S.C. § 657(e) in three ways. *First*, the Rule grants third parties access to non-union workplaces. *Second*, the Rule authorizes non-union third parties to access unionized workplaces. *Third*, the Rule permits an unlimited number of employee representatives in any workplace. Congress did not authorize this parade through employers' property or stampede over the rights of employers, employees, and appropriately designated unions.

### A.     Congress Did Not Authorize Third-Party Access To Non-Union Workplaces.

The Rule's first overstep is permitting a "wide variety of third parties," including union organizers and the like, to access non-union workplaces during OSHA inspections. 89 Fed. Reg. at 22,569. The statute specifically addresses who may accompany inspections: "a representative of the employer and a representative *authorized* by his employees." 29 U.S.C. § 657(e) (emphasis added). But if there is no "*authorized* employee representative," the inspector is limited to "consult[ing] with a

reasonable number of *employees*," *id.* (emphasis added)*,* who, by virtue of their employment, already can access the workplace. In short, because Congress required the OSHA inspector to "consult with a reasonable number of employees" during inspections of non-union workplaces, *id.*, the inspector has no authority to authorize non-employee, third-party access to these workplaces. Text, structure, context, and the agency's longstanding view confirm this interpretation of § 657(e).

**1.** To start, the text is clear. Section 657(e) uses the word "authorized" to describe the employee's representative. The plain meaning of the word "authorized" means to be formally empowered by a delegation of authority. *See* AUTHORIZE, *Black's Law Dictionary* (4th rev. ed. 1968) ("To empower; to give a right or authority to act. To clothe with authority, warrant, or legal power.... The word indicates merely possessed of authority; that is, possessed of legal or rightful power....").

As the Supreme Court has explained, to "authorize" "'indicates endowing formally with a power or right to act'" and "ordinarily denotes affirmative enabling action." *Washington Cnty. v. Gunther*, 452 U.S. 161, 169 & n.9 (1981) (quoting Webster's Third New International Dictionary 147 (1976)). And courts of appeals have interpreted phrases similar to "authorized employee representative" to require some "legal authority, rather than merely a simple request by employees to represent them." *Anderson v. U.S. Dep't of Lab.*, 422 F.3d 1155, 1178-79 (10th Cir. 2005); *see United States v. Stauffer Chemical Co.*, 684 F.2d 1174, 1190-91 (6th Cir. 1982).

Here, the legal mechanism that Congress established for employees to formally delegate their collective power to an "authorized" representative is the NLRA's

"exclusive" process for designating a labor union. 29 U.S.C. § 159(a). In the context of unionized workplaces, therefore, an "authorized" employee representative means the union chosen as the employees' "exclusive representative" pursuant to the NLRA. *Janus v. AFSCME, Council 31*, 585 U.S. 878, 899 (2018).

But Congress did not ignore the possibility that employees might not have designated an "authorized" representative. "Where there is no authorized employee representative, the Secretary or his authorized representative shall consult with a reasonable number of employees concerning matters of health and safety in the workplace." 29 U.S.C. § 657(e). In non-union workplaces, therefore, this "reasonable number" of existing "employees" effectively functions as the employees' representative. Nothing in the statute, however, authorizes the OSHA inspector to bring non-employee, third-party representatives onto the property of a non-unionized employer during an inspection.

**2.** Statutory context confirms this understanding, as demonstrated by Congress's use of the word "authorized" elsewhere in § 657. For example, Congress used "authorized" when describing its delegation of authority to the Secretary to conduct inspections, *id.* § 657(a), and when referring to the Secretary's "authorized representative," *id.* § 657(e). These uses of "authorized" conform to its plain meaning by describing formal delegations of authority—both from Congress to the Secretary, and from the Secretary to his representative. Similarly, there must be a formal delegation of authority for employees to designate an "authorized" representative. Such a formal delegation must occur pursuant to the NLRA. *Id.* § 159(a).

It is further confirmed by examining when Congress did *not* use the word "authorized"—as, for example, when referring to the *employer's* representative in § 657(e). *Russello v. United States*, 464 U.S. 16, 23 (1983) ("where Congress includes particular language in one section of a statute but omits it in another … it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion"). That makes sense because employers do not have formally authorized representatives—anyone who represents the employer can participate in a walkaround inspection. But for employees, Congress required that the employee representative be "*authorized*" pursuant to a legal delegation of authority—which, in this context, is the NLRA's exclusive process for designating a union.

Congress also knows how to drop the "authorized" modifier when it intends to communicate a broader meaning of "employee representative." For example, § 657(c)(3) provides a right for "employees or their representatives"—whether authorized or not—to access certain records about workplace accidents. And § 657(f) permits "[a]ny employees or representative of employees" (as opposed to "*authorized* representative of employees*") to request an inspection. The broader meaning of "employee representative" makes sense for those less intrusive provisions. But when it comes to authorizing someone to access an employer's private property during an inspection, Congress limited the walkaround right to the NLRA-authorized employee representative, if there is one, and provided a concomitant duty for the inspector to consult with a reasonable number of existing employees if not.

**3.** Closely related statutory provisions further support this interpretation of § 657(e). *First*, Congress authorized OSHA to "employ" and pay for "experts and consultants or organizations thereof" to aid the inspector directly, 29 U.S.C. § 656(c)(2), and to use the services and personnel of other agencies—both federal and state—in carrying out inspections, *id.* § 656(c)(1). That is the way Congress contemplated the agency would fill any gaps in its expertise during inspections—not through any third-party representative.

*Second*, Congress did not authorize third parties to access confidential business information during OSHA inspections. "All information" obtained during an OSHA inspection is confidential with a narrow exception for disclosure "to other officers or employees concerned with carrying out this chapter." 29 U.S.C. § 664. If Congress had intended to allow third parties to accompany OSHA inspections, it surely would have addressed their exposure to confidential business information.

*Third*, the NLRA compels this interpretation to avoid a conflict with the OSH Act. *United States v. Moss*, 872 F.3d 304, 310 (5th Cir. 2017) (statutes *in pari materia* "must be construed together"). The Rule topples the NLRA's "exclusive" mechanism for designating employee representatives by permitting OSHA to authorize representatives on an essentially standardless basis. 29 U.S.C. § 159(a). And it further conflicts with § 159(a) by allowing one or two employees to do what the NLRA requires a "majority" of employees to do. *Id.* The only way to avoid this conflict with the NLRA is to interpret § 657(e) as not permitting third parties to represent non-union employees during OSHA inspections.

**4.** Finally, OSHA's longstanding position confirms this interpretation of § 657(e). *See FTC v. Bunte Bros., Inc.*, 312 U.S. 349, 352 (1941) (explaining how "established practice may shed light on the extent of power conveyed by general statutory language"). In a 2001 regulation implementing § 657, OSHA defined "authorized employee representative" to mean "an authorized collective bargaining agent of employees" pursuant to the NLRA. 29 C.F.R. § 1904.35(b)(2)(i); 66 Fed. Reg. 5916, 6132 (Jan. 19, 2001). That regulation also distinguishes between an "authorized employee representative" and a "personal representative," who may be "[a]ny person" designated in writing. *Id.* § 1904.35(b)(2)(v)(A)-(B). The Walkaround Rule thus conflicts with OSHA's longstanding interpretation of the same phrase in § 1904.35(b)(2)(i). And although the agency attempted to reinterpret the term in the 2013 Sallman Letter, the agency later withdrew that guidance in light of the "express guidance in the statute and applicable regulation." Sallman Letter Rescission, *supra*.

For all of these reasons, the Rule exceeds OSHA's authority by allowing third parties who have not been designated under the NLRA to access non-union workplaces during OSHA inspections.

## B.   Congress Did Not Authorize Non-Union Third Parties To Represent Unionized Employees During OSHA Inspections.

For similar reasons, the Rule also exceeds OSHA's authority by permitting non-union third parties to represent employees during inspections of unionized workplaces. Here again, the same tools of construction demonstrate why the agency's new interpretation of § 657(e) is wrong. But allowing non-union representatives to access unionized workplaces during OSHA inspections creates distinct problems.

13

*First*, OSHA's interpretation of § 657(e) creates a more pronounced conflict with the NLRA in the context of unionized workplaces. In a workplace where "the majority of employees" have designated an "exclusive representative[ ] of all the employees," 29 U.S.C. § 159(e), the union has "the responsibility of attending OSHA inspections," *Asarco, Inc.*, 86 F.3d at 1412. Indeed, the union "has become the agent of all the employees," *Wallace Corp. v. NLRB*, 323 U.S. 248, 255 (1944), so employees may not represent themselves or designate an alternative representative, *Medo Photo Supply Corp. v. NLRB*, 321 U.S. 678, 684 (1944) ("negative duty to treat with no other" than designated union). But the Rule tramples on both the employees' choice and the union's exclusive responsibility to represent employees during inspections of unionized workplaces by allowing non-union representatives to step into the union's shoes during the inspection simply because a couple employees select them. Although OSHA "*anticipates* that third-party recognized bargaining agents in a unionized workplace would *generally*" be chosen to accompany the OSHA inspector, 89 Fed. Reg. at 22,575 (emphasis added), the Rule permits any one or two employees—not a majority—to designate a non-union representative, *id.* at 22,583, 22,590.

*Second*, the Rule assigns to OSHA inspectors—rather than the NLRB—the role of deciding which employee representatives qualify as "authorized." OSHA has historically required inspectors to allow "the highest ranking union official or union employee representative" to "designate who will participate in the walkaround." 89 Fed. Reg. at 22,575, 22,583; *see id.* at 22,590. Not so under the Rule, which allows employees to designate attorneys, activists, former employees, and others to step into

14

(or on) the union's shoes during an OSHA inspection. *Id.* at 22,583 (allowing for an "additional employee representative (regardless of whether such representative is affiliated with a union)"). Instead of allowing the NLRB to certify which employee representatives have been authorized, OSHA has assigned that role to OSHA inspectors on a case-by-case basis. *Id.* at 22,559.

*Third*, the new Rule puts unionized employers to a Hobson's choice: comply with the Rule and face potential unfair labor practice charges under the NLRA for recognizing the OSHA-designated (as opposed to NLRA-authorized) representative, or reject the OSHA-designated representative and face compulsory process and potential contempt for denying access. It may be an unfair labor practice for an employer to engage with a representative who lacks majority support among employees. *See NLRB v. Loc. Union No. 103, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, AFL-CIO*, 434 U.S. 335, 344 (1978); *Teamsters Nat. United Parcel Serv. Negotiating Comm. v. NLRB*, 17 F.3d 1518, 1523 (D.C. Cir. 1994). And yet employers face this risk of NLRA liability if they comply with the Rule and allow non-union representatives access to unionized workplaces. In response, OSHA says that questions about the scope of the NLRA are "beyond the scope of this rulemaking and OSHA's authority." 89 Fed. Reg. at 22,583. That's exactly the point: by intruding into an area where it "has no comparative expertise," OSHA has strayed outside its statutory authority. *West Virginia v. EPA*, 597 U.S. 697, 729 (2022).

For these additional reasons, the Rule exceeds OSHA's authority by allowing non-union representatives to access unionized workplaces during OSHA inspections.

**C.    Congress Did Not Authorize An Unlimited Number Of Employee Representatives.**

Regardless of the type of workplace, the Rule further exceeds OSHA's statutory authority by allowing an unlimited number of employee representatives to access employers' property. 89 Fed. Reg. at 22,569. Congress limited both employers and employees to a single representative—not an unlimited number.

The text of § 657(e) makes clear that Congress limited walkaround rights to "*a representative of the employer and*," where there is one, "*a* representative authorized by his employees." 29 U.S.C. § 657(e). The singular language here is intentional. "A" is an "[i]ndefinite article" "[u]sed before nouns and noun phrases that denote a single, but unspecified, person or thing." *American Heritage Dictionary of the English Language* 1 (New College ed. 1976); *see* The Random House College Dictionary 1 (Rev. ed. 1980) (defining "a" as "any one of some class or group"); Bryan A. Garner, *Garner's Modern English Usage* 991 (4th ed. 2016) (The indefinite article a "limit[s] ... or make[s] ... more or less definite" the corresponding noun). And although "a" sometimes can signify the plural depending on its "context," A, *Black's Law Dictionary*, *supra*, "in most contexts, the singular article 'a' refers to only one item." *Banuelos v. Barr*, 953 F.3d 1176, 1181 (10th Cir. 2020).

Here, Congress left no doubt that it intended the word "representative" to have a singular meaning by using the indefinite article twice in the same sentence. Once to refer to the employer's "representative," and again to describe the employee's "representative." Congress's specification for only "a" single employee "representative" mirrors the single employer representative permitted. That mirror

reflects Congress's intent for parity—each party (employer and employee) gets one representative on a walkaround inspection (if employees have an authorized representative). But that parity is shattered if the employees can designate multiple representatives.

By contrast, Congress used the plural elsewhere in § 657(e) when it was referring to more than one person: "reasonable number of employees." Congress could have used similar plural language in identifying the authorized representatives—for example, it could have said "a reasonable number of employee representatives." The omission of that language confirms that Congress intended to use the singular: an OSHA inspector may only permit a single employee representative to accompany an inspection.

Elsewhere within § 657, multiple provisions confirm that "a representative authorized by … employees" is singular. When Congress meant to address multiple or potentially multiple representatives, it used different language. In § 657(c)(3), for example, Congress specified that certain "regulations shall provide employee*s* or their representative*s* with an opportunity to observe [certain monitoring or measuring], and to have access to the records thereof." Similarly, in § 657(f)(1), Congress provided that "*Any* employees or representative of employees … may request an inspection" if certain conditions are satisfied.

And these are not the only ways Congress could have indicated that it intended to authorize multiple employee representatives. In a neighboring provision, Congress authorized "one or more representatives" of certain groups *three times*. 29 U.S.C.

§ 656(b). Nearby in the same Title, Congress similarly authorized "at least one representative," "at least 1 representative," and "1 or more representatives" for various other purposes. 29 U.S.C. §§ 725, 796d, 3102. But in § 657(e), Congress specified only "*a* representative authorized by … employees." That difference in language must be given effect. *See Russello*, 464 U.S. at 23.

Finally, Congress knows how to authorize more than one employee representative specifically during a workplace inspection. In the Mine Act, Congress authorized a mine inspector to select "more than one representative from each party" (employer and employee) or "additional representatives" if it "would further aid the inspection," so long as each party has "an equal number" in total. 30 U.S.C. § 813(f). The absence of similar language in § 657(e) confirms that Congress did not authorize more than one employee representative to accompany an OSHA inspector.

## II.    The Walkaround Rule Effects Takings Of Private Property.

The Rule suffers from yet another fundamental defect: it violates the Takings Clause of the Fifth Amendment by giving third parties—including union organizers and plaintiffs' attorneys—access to employers' property without just compensation. In *Cedar Point*, the Supreme Court held that a practically identical law violated the Takings Clause. Because *Cedar Point* is indistinguishable, this Court should declare that the Rule effects takings under the Fifth Amendment. The Court can avoid this serious constitutional problem by narrowly construing OSHA's statutory authority.

**A.      The Takings Clause Protects Employers' Right To Exclude Third Parties From Private Property.**

The Takings Clause provides: "[N]or shall private property be taken for public use, without just compensation." U.S. Const., amend. V. A fundamental part of that guarantee is the "right to exclude" others from one's property. *Cedar Point*, 594 U.S. at 149. As the Supreme Court has repeatedly explained, "the right to exclude is 'universally held to be a fundamental element of the property right,' and is 'one of the most essential sticks in the bundle of rights that are commonly characterized as property.'" *Id.* at 150 (quoting *Kaiser Aetna v. United States*, 444 U.S. 164, 176, 179-80 (1979)); *Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758, 765 (2021) (describing "the right to exclude" as "one of the most fundamental elements of property ownership").

The Court applied that rule in *Cedar Point*, holding that California took private property when it forced landowners to grant union organizers access to their property. 594 U.S. at 152 (mandating third-party access "appropriate[d] a right to physically invade the [owners'] property"). Such third-party access rules, the Court held, are "*per se* physical taking[s]" that require compensation. *Id.*

The Court recognized two relevant exceptions to that rule. *First*, "government searches that are consistent with the Fourth Amendment ... cannot be said to take any property right from landowners." *Id.* at 161. The Government's power to access private property in those situations is "consistent with longstanding background restrictions on property rights." *Id.* at 160.

*Second*, the Court sanctioned "government health and safety inspections" that satisfy the "constitutional conditions framework." *Id.* at 161. Under that framework,

the Government can condition the grant of a "permit, license, or registration on allowing access for reasonable health and safety inspections," *id.* at 161-62, so long as the inspections have an "essential nexus" to the benefit and are "rough[ly] proportiona[l]" to it. *Dolan v. City of Tigard*, 512 U.S. 374, 391 (1994); *see also Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 834-37 (1987). However, the Court held in *Cedar Point* that mandating property access for union officials was "not germane to any benefit provided ... or risk posed to the public." 594 U.S. at 162.

### B.  Under *Cedar Point*, OSHA's Rule Effects Takings.

*Cedar Point* applies straightforwardly to this case. Like California's union access requirement, the Rule grants third parties—including union representatives, community organizers, and plaintiffs' attorneys—"a right to physically enter and occupy [employers'] land" during OSHA inspections. *Id.* at 149. The Rule therefore "appropriates for the enjoyment of third parties the owners' right to exclude." *Id.*

For Plaintiffs' members, the right to exclude these would-be trespassers is no mere academic matter. Consider OSHA's stated intent to force non-unionized businesses to admit third-party union officials. 89 Fed. Reg. at 22,564-65, 22,569 (favorably citing argument by unions for admitting their officials into non-unionized workplaces). Such third-party access "gives union leaders an opportunity to proselytize employees during safety walkarounds." *NFIB*, 2017 WL 1194666, at *2. Indeed, OSHA has admitted that it envisions the Rule enabling third-party union representatives to "serve as a buffer between the employer and [its] employees." 89 Fed. Reg. at 22,566, 22,570. Or consider OSHA's admission that it will welcome third-

20

party community organizers and their attorneys onto Plaintiffs' property. *Id.* at 22,563, 22,566, 22,569 (endorsing union argument in favor of admitting "worker centers, unions, community organizations, and attorneys"). Those organizers and attorneys could easily use access to manufacture civil litigation against employers. And OSHA expressly declined to impose any "limitations to the sharing of information" obtained by such third parties during inspections, *id.* at 22,577, jeopardizing employers' trade secrets and other confidential business information and leaving Plaintiffs' members vulnerable to civil lawsuits arising from the third-party participation in inspections. Given a choice, Plaintiffs and their members would exclude such outsiders, but the Rule forces their admittance. The Rule therefore "appropriates for the enjoyment of third parties the owners' right to exclude" and effects takings under the Fifth Amendment. *Cedar Point*, 594 U.S. at 149.

*Cedar Point*'s governmental access exception cannot save the Rule. The Court recognized that, as a matter of history and tradition, *government* agents have been allowed to access property in certain circumstances, such as when they have a search warrant that complies with the Fourth Amendment. *Id.* at 161. Consistent with that recognition, Plaintiffs do not contest that OSHA employees and contractors can access their properties to conduct administrative inspections—so long as they comply with the Constitution and applicable federal laws. *See id.*; *Marshall v. Barlow's Inc.*, 436 U.S. 307, 315 (1978) (requiring OSHA inspectors to obtain a warrant for nonconsensual searches).

But *Cedar Point*'s limited exception for *government* access in such situations cannot be extended to permit government-mandated access for outsiders, especially with no limitation on how those third parties can use information they gather. Plaintiffs are aware of no evidence suggesting government agents have traditionally allowed a host of private parties to accompany them on searches of private property. Indeed, the Supreme Court has held that the police violated the Fourth Amendment when they permitted members of the media to accompany them while executing a search warrant. *Wilson*, 526 U.S. at 611-12.[1] And if such a practice were permissible, governments could easily circumvent the Takings Clause by redefining their own limited access rights into broad third-party access rights. *Cedar Point*'s exception for government access cannot be extended in such a self-defeating way.

Nor can OSHA claim that forced admittance of third parties is a reasonable condition on the grant of a valuable benefit. *Cedar Point*, 594 U.S. at 162. To start, it is unclear what benefit OSHA is granting employers in the Walkaround Rule. The right to conduct business on private property is a "basic and familiar use[ ] of

---

[1] In *Wilson*, the Court recognized a narrow, historically-grounded exception: "Where the police enter a home under the authority of a warrant to search for stolen property, the presence of third parties for the purpose of identifying the stolen property has long been approved by this Court and our common-law tradition." 526 U.S. at 611-12. In such narrow situations, including third parties can "directly aid[ ] in the execution of the warrant" in a way the Government cannot accomplish through its own efforts or resources. *Id.* at 611; *accord United States v. Clouston*, 623 F.2d 485, 486-87 (4th Cir. 1980) (permitting telephone company employees to participate in search to identify employer's property). That narrow, historically-grounded exception cannot, as OSHA has suggested, be transformed into a broad, ahistorical license to bring outsiders onto private property whenever an inspector believes they could make a positive contribution. 89 Fed. Reg. at 22,562.

property" that cannot be recharacterized "as a 'Government benefit.'" *Horne v. Dep't of Agric.*, 576 U.S. 350, 366 (2015); *see also Cedar Point*, 594 U.S. at 162 ("'basic and familiar uses of property' are not a special benefit that 'the Government may hold hostage, to be ransomed by the waiver of constitutional protection" (quoting *Horne*, 576 U.S. at 366)). Moreover, OSHA concedes that "it does not condition the grant of any benefit ... on allowing access for any of its reasonable safety and health inspections," 89 Fed. Reg. at 22,580, so it cannot invoke this *Cedar Point* exception.

### C.   The Court Should Interpret The Walkaround Statute Narrowly To Avoid This Serious Fifth Amendment Problem.

The Court should interpret the statute narrowly to avoid these "grave constitutional concerns" because Congress did not clearly authorize OSHA to take private property. *Mexican Gulf Fishing Co. v. U.S. Dep't of Com.*, 60 F.4th 956, 966, 971 (5th Cir. 2023). The Supreme Court's "precedents require Congress to enact exceedingly clear language if it wishes to significantly alter … the power of the Government over private property." *Ala. Ass'n of Realtors*, 594 U.S. at 764 (quoting *U.S. Forest Serv. v. Cowpasture River Pres. Ass'n*, 590 U.S. 604, 621-22 (2020)). Where a regulation would effect a taking, the agency must demonstrate a "clear" delegation of authority to take private property. *Bell Atlantic Tel. Cos. v. FCC*, 24 F.3d 1441 (D.C. Cir. 1994).

Without a clear delegation of authority, the Supreme Court has interpreted statutes narrowly to avoid takings problems. *United States v. Security Indus. Bank*, 459 U.S. 70, 82 (1982); *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 128 n.5 (1985). Similarly, the Court has narrowly interpreted the NLRA to protect

23

employers' property rights, explaining that "an employer may as a rule limit the access of *non* employee union organizers to company property." *NLRB v. Town & Country Elec., Inc.*, 516 U.S. 85, 97 (1995) (citing *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 538 (1992)); *see also Cedar Point*, 594 U.S. at 162 (Kavanaugh, J., concurring) (citing *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105 (1956)).

As explained, the Rule effects an untold number of takings in an identifiable class of cases by depriving property owners of the right to exclude third parties from their worksites. But Congress did not "clearly" authorize OSHA to expand its power "over private property" in this way. *Ala. Ass'n of Realtors*, 594 U.S. at 764. The best reading of § 657(e)—and the only one that avoids the takings problem—is that OSHA lacks authority to expand third-party access to employers' private property to an unlimited number of employee representatives. *See supra* Part I.

## III.   The Walkaround Rule Is Arbitrary And Capricious.

To make matters worse, OSHA acted arbitrarily and capriciously in promulgating the Rule by ignoring its own prior policy, important aspects of the problem, obvious alternatives, and the costs of the Rule.

### A.   OSHA Failed To Acknowledge Its Policy Change.

To start, OSHA failed to acknowledge the significant changes wrought by the new Rule. "When an agency changes its existing position," "the agency must at least display awareness that it is changing position and show that there are good reasons for the new policy." *Encino Motorcars, LLC*, 579 U.S. at 221. In OSHA's view,

24

however, the Rule makes "no[ ] change" at all—only "a clarification of OSHA's longstanding practice." 89 Fed. Reg. at 22,563, 22,594. That is clearly wrong.

The Rule is, in fact, a significant departure from OSHA's longstanding policy. For fifty years, OSHA limited the walkaround right to employees, 29 C.F.R. § 1903.8(c) (effective until May 31, 2024), but the new Rule allows employees to designate third-party representatives, 89 Fed. Reg. at 22,569 (describing the rule as "eliminating the text in the regulation requiring employee representatives to be an employee of the employer"), and an unlimited number to boot, *id.* at 22,569. And while the old rule allowed an OSHA inspector to invite a technical expert if "reasonably necessary to the conduct of an effective and thorough physical inspection," 29 C.F.R. § 1903.8(c) (effective until May 31, 2024), the new Rule abandons that narrow exception for technical experts in favor of anyone who might make a "positive contribution" to an inspection, 89 Fed. Reg. at 22,589. OSHA's refusal to acknowledge its change in position renders the Rule arbitrary and capricious. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

Relatedly, OSHA did not acknowledge, let alone reasonably explain, its departure from its own longstanding regulation interpreting the phrase "authorized employee representative" to mean "an authorized collective bargaining agent of employees" pursuant to the NLRA. 29 C.F.R. § 1904.35(b)(2)(i); *see* 66 Fed. Reg. at 6053-54 (explaining equivalent definitions in rule promulgating § 1904.35); *accord* 29 C.F.R. § 2200.1(g). OSHA stated that the two regulations will not conflict, but that in any event it is "not bound by" its existing definition "because of employee privacy

interests and the role a union serves in safety and health matters when employees have an authorized collective bargaining agent." 89 Fed. Reg. at 22,588. That cursory statement fails to explain why the same rationale does not also apply to inspections. OSHA's failure to acknowledge and adequately explain its conflicting positions is arbitrary and capricious.

### B.     OSHA Failed To Consider Important Aspects Of The Problem.

Next, OSHA failed to consider several "important aspect[s]" of the walkaround problem, *State Farm*, 463 U.S. at 43, instead punting important policy choices to OSHA inspectors to "set ground rules" for inspections on an ad hoc basis often under time pressure, 89 Fed. Reg. at 22,592. For example, OSHA refused to grapple with the fundamental issue of unauthorized disclosure of confidential business information to third parties by claiming it is "beyond the scope of this regulation or this rulemaking." *Id.* at 22,577. In addition, OSHA failed to address the maximum number of third-party employee representatives permitted to accompany an inspection, instead leaving this important determination to individual OSHA inspectors. *Id.* at 22,559. Nor did OSHA adequately grapple with the workplace disruptions created by expanding employee walkaround rights, *id.* at 22,584, again responding that answering these questions is "beyond the scope of this rulemaking," *id.* at 22,589. OSHA also "decline[d] to adopt specific procedures" for inspectors to resolve disagreements among employees over who will be their representative(s). *Id.* at 22,590-91; *see id.* at 22,574, 22,581. "Perhaps there is some explanation" that OSHA could have provided to address these concerns, but "it does not appear in the

final rule." *Ohio*, slip op. 13. Delegating all of these important decisions to OSHA inspectors on the ground abdicates OSHA's responsibility to provide "a satisfactory explanation" and address "important aspect[s] of the problem." *Id*.

### C.    OSHA Failed To Consider Obvious Alternatives.

Moreover, OSHA's failure to consider obvious "alternative[s]" obliterates the agency's rationale for the Walkaround Rule. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020). On OSHA's telling, expanding employee walkaround rights is necessary to provide inspectors with additional expertise to conduct more effective inspections. 89 Fed. Reg. at 22,571. Instead of inviting a parade of third parties onto private property, however, OSHA could have hired "experts and consultants" or tapped other federal and state agencies to provide its inspectors with additional expertise. 29 U.S.C. § 656(c). Not only did Congress authorize OSHA to obtain such assistance, OSHA itself has admitted that such assistance is "preferabl[e]" and "should" be used when needed, as opposed to third-party volunteerism. OSHA Field Operations Manual (FOM) 3-5, 3-21 (expert assistance should be arranged "preferably from within OSHA" and language interpretation needs should be directed to "the General Services Administration"). That OSHA ignored these obvious alternatives for one fraught with problems highlights the flaws in its decisionmaking process.

### D.    OSHA Failed To Consider Costs.

Finally, OSHA's assumption that the Rule "would not impose costs on any" employer (except potentially a one-time $5 familiarization cost), 89 Fed. Reg. at

22,600, "runs counter to the evidence before the agency," *State Farm*, 463 U.S. at 43. Had OSHA properly accounted for the Rule's costs, OSHA might have concluded that its burdens outweigh its benefits.

To begin, OSHA ignored the cost of taking employers' property rights. The Rule authorizes an unlimited number of third parties to access employers' private property (whether or not that access violates the Fifth Amendment). OSHA cannot simply ignore that cost to "more than 8 million employers." 89 Fed. Reg. at 22,595 n.4.

Similarly, despite claiming that "[t]he record is replete with examples" of third parties accompanying inspectors, OSHA made no effort to analyze the actual costs associated with those examples. *Id.* at 22,570. Whether or not there is "data" on costs, the agency should at least have evaluated the next-best thing: real-world examples.

Next, OSHA wrote off training costs by claiming that employers have "no obligation to train" or brief third-party representatives about anything (appropriate personal protective equipment (PPE), safety precautions, inspection scope, etc.). *Id.* at 22,594. But OSHA's own guidance requires briefing "outside consultants on the purpose of the inspection and personal protective equipment to be utilized." FOM 3-5. And it defies reason to suggest that employers should allow third parties onto unfamiliar and potentially hazardous worksites without any training whatsoever. While training may not be necessary for an inspector already familiar with or trained on the proper precautions, an unfamiliar outsider would likely require training.

Ensuring that visitors have appropriate PPE is another cost OSHA ignored. OSHA regulations and guidance recognize the importance of appropriate PPE for

worksite inspections. 29 C.F.R. § 1910.132; FOM 3-2. Accordingly, many employers may have duties to provide or ensure the effectiveness of PPE for visitors on their worksites. *Cf. Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983) (common-law duty to "take whatever action is reasonably prudent" to reduce or eliminate "unreasonable risk" on premises). So even if the Rule itself does not require employers to provide PPE to third-party employee representatives, it does expand the number of individuals to whom an employer may be required to provide PPE.

Moreover, employers will have to update handbooks, policies, and other practices to account for expanded third-party access, *see, e.g.*, Comments of Employers Walkaround Representative Rulemaking Coalition 23-24, OSHA-2023-0008-1976 (Nov. 13, 2023); yet OSHA wrote those costs off, again because it mistakenly believed the Rule "creates no new obligations," 89 Fed. Reg. at 22,595. The same goes for employers' need to consult legal counsel regarding the implications of expanded third-party access (*e.g.*, on tort, trade secrets or confidential business information, labor, or other more industry- or worksite-specific issues). *Id.* Employers cannot simply ignore legal and other risks, even if OSHA thinks they can.

Last, OSHA's erroneous cost assumption also violates the RFA, which requires agencies to conduct detailed analyses of the regulatory impacts on small businesses, *unless* the agency can certify, with a factual basis, that there will be *none*. 5 U.S.C. §§ 603(a), 604(a), 605(b), 611. The RFA's protections for small businesses carry special significance when it comes to OSHA inspections, because Congress instructed that the regime must be implemented "with a minimum burden upon employers,

especially those operating small businesses." 29 U.S.C. § 657(d). But here, OSHA provided no basis for its claim that the regulation does not trigger the procedural requirements of the RFA (as amended by Small Business Regulatory Enforcement Fairness Act of 1996). *See* 89 Fed. Reg. at 22,597. That error independently violates the RFA. *E.g.*, *NFIB v. Perez*, No. 5:16-CV-0066-C, 2016 WL 3766121, at *37-39 (N.D. Tex. June 27, 2016).

*                    *                    *

As for relief, "vacatur of an agency action is the default rule in this Circuit." *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023), *aff'd*, No. 22-976, 2024 WL 2981505 (U.S. June 14, 2024). Additionally, the Court should declare that § 657(e) does not authorize third-party access to non-union workplaces, permit non-union third party access to unionized workplaces, or allow an unlimited number of employee representatives during a walkaround inspection. As for the takings, the Court should declare that the Government will be obligated to pay just compensation if it forces employers to admit third parties onto their properties. *Duke Power Co. v. Carolina Env't Study Grp.*, 438 U.S. 59, 71 n.15 (1978); *E. Enters. v. Apfel*, 524 U.S. 498, 521-22 (1998). And to afford "complete relief," the Court should "enjoin" OSHA from "enforcing" the agency's "reading" of § 657(e) on an ad hoc basis. *Sanofi Aventis U.S. LLC v. HHS*, 58 F.4th 696, 706 (3d Cir. 2023).

### CONCLUSION

The Court should grant Plaintiffs summary judgment.

Dated: June 28, 2024

Respectfully submitted,

/s/ Brett A. Shumate

Jordan L. Von Bokern
D.C. Bar No. 1032962 (*pro hac vice*)
Maria C. Monaghan
D.C. Bar No. 90002227 (*pro hac vice*)
U.S. Chamber Litigation Center
1615 H Street, N.W.
Washington, D.C. 20062
Telephone:  (202) 463-5337

*Attorneys for the Chamber of Commerce
of the United States of America*

Noel J. Francisco
(D.C. Bar No. 286666) (*pro hac vice*)
Brett A. Shumate
(D.C. Bar No. 974673) (*pro hac vice*)
Jacqueline M. Holmes
(D.C. Bar No. 450357) (*pro hac vice*)
Charles E.T. Roberts
(W.D. Tex. Bar No. 326539)
(D.C. Bar No. 1780573)
Louis J. Capozzi III
(D.C. Bar 90018764) (*pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone:  (202) 879-3939
Fax:  (202) 626-1700

Jonathan D. Guynn
(Texas Bar No. 24120232)
JONES DAY
2727 North Harwood Street
Dallas, TX 75201
Telephone:  (214) 969-3793

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2024, I electronically filed the foregoing

motion with the Clerk of the Court using the CM/ECF system. Notice of this filing

will be sent to all attorneys of record by operation of the Court's electronic filing

system.

*/s/ Brett A. Shumate*
Brett A. Shumate
