**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES, et al., | § § § | NO. 6:24-cv-00271-ADA-DTG |
| Plaintiffs, | § § § | |
| v. | § § | **BRIEF OF *AMICI CURIAE* THE** |
| OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, et al., | § § § | **COALITION FOR A DEMOCRATIC WORKPLACE; INTERNATIONAL FOODSERVICE DISTRIBUTORS** |
| Defendants. | § § § § § § § § § § § § § § § § | **ASSOCIATION; AMERICAN HOTEL & LODGING ASSOCIATION; SMALL BUSINESS & ENTREPRENEURSHIP COUNCIL; AMERICAN ROAD & TRANSPORTATION BUILDERS ASSOCIATION; CALIFORNIA HOTEL & LODGING ASSOCIATION; AMERICAN BAKERS ASSOCIATION; AND INDEPENDENT ELECTRICAL CONTRACTORS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

**TABLE OF CONTENTS**

**Page**

INTEREST OF AMICI AND SUMMARY OF ARGUMENT ................................................... 1

ARGUMENT ....................................................................................................................... 3

I.     This Court Should Independently Determine That the Walkaround Rule Is Not Empowered by the OSH Act and Violates the APA ........................................................ 3

II.    The Rule Conflicts with the NLRA Regarding the Selection and Handling of Employee Representatives. ............................................................................................. 10

CONCLUSION .................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. U.S. Dep't of Lab.*,
 422 F.3d 1155 (10th Cir. 2005) ............................................................3

*ASARCOJ, Inc.*,
 276 NLRB 1367 (1985), *enforced in relevant part*, 805 F.2d 194 (6th Cir.
 1986) .........................................................................................13

*Brackeen v. Haaland*,
 994 F.3d 249 (5th Cir. 2021), *aff'd in part, vacated in part, rev'd in part*, 599
 U.S. 255 (2023).................................................................................8

*Caterpillar, Inc.*,
 361 NLRB 846 (2014), *reaff'g*, 359 NLRB 790 (2013) ..............................13

*Chevron U.S.A., Inc.* v. *Natural Resources Defense Council, Inc.*,
 467 U.S. 837 (1984).............................................................................4

*Duane Reade, Inc.*,
 338 NLRB 943 (2003) ........................................................................15

*Encino Motorcars, LLC v. Navarro*,
 579 U.S. 211 (2016)............................................................................8

*Holyoke Water Power Co.*,
 273 NLRB 1369 (1985), *enforced*, 778 F.2d 49 (1st Cir. 1985)......................12

*Int'l Ladies' Garment Workers' Union v. NLRB*,
 366 U.S. 731 (1961)......................................................................12, 14

*Laclede Gas Co. v. F.E.R.C.*,
 722 F.2d 272 (5th Cir. 1984) ................................................................8

*Lechmere, Inc. v. NLRB*,
 502 U.S. 527 (1992)...........................................................................13

*Loper Bright Enters. v. Raimondo*,
 No. 22–451, slip op. (U.S. June 28, 2024)..............................................4, 5

*Majestic Weaving Co., Inc. of N.Y.*,
 147 NLRB 859 (1964) ........................................................................14

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*,
 463 U.S. 29 (1983).............................................................................5

*Nat'l Fed'n of Indep. Bus. v. Dep't of Lab.*,
   142 S. Ct. 661 (2022) ........................................................................................3

*NLRB v. A.J. Tower Co.*,
   329 U.S. 324 (1946) .......................................................................................11

*NLRB v. Pa. Greyhound Lines*,
   303 U.S. 261 (1938) .......................................................................................14

*Price Crusher Food Warehouse*,
   249 NLRB 433 (1980) ....................................................................................15

*Skyline Distribs. v. NLRB*,
   99 F.3d 403 (D.C. Cir. 1996) .........................................................................12

*Smiley v. Citibank (S. Dakota), N.A.*,
   517 U.S. 735 (1996) .........................................................................................8

*U.S. Gypsum Co. v. United Steelworkers of Am., AFL-CIO*,
   384 F.2d 38 (5th Cir. 1967) ...........................................................................12

**Statutes**

5 U.S.C. §§ 551-559 ...........................................................................................2

5 U.S.C. § 706(2) ................................................................................................4

29 U.S.C. § 157 .................................................................................................11

29 U.S.C. §§ 651-768 ..........................................................................................2

29 U.S.C. § 664 ...................................................................................................8

Administrative Procedure Act ("APA") ...................................................... *passim*

Commission Administrative Law ........................................................................9

National Labor Relations Act (NLRA) ........................................................ *passim*

Occupational Safety and Health Act of 1970 ("OSHA Act") ....................... *passim*

**Other Authorities**

29 C.F.R. § 1903.8 ...........................................................................................3, 5

29 C.F.R. § 1903.8(c) ................................................................................1, 2, 5, 9

29 C.F.R. § 1903.9(d) ..........................................................................................9

29 C.F.R. § 2200.53(a)..................................................................................................9

29 C.F.R. § 2200.53(b) .................................................................................................9

88 Fed. Reg. 59,825, 59,830 .........................................................................................6

89 Fed. Reg. 22,558 ......................................................................................................1

89 Fed. Reg. 22,564 ...................................................................................................6, 7

89 Fed. Reg. 22,566 ....................................................................................................10

89 Fed. Reg. 22,575 .................................................................................................7, 11

89 Fed. Reg. 22,584 ....................................................................................................10

89 Fed. Reg. 22,589 ......................................................................................................2

89 Fed. Reg. 22,592 ......................................................................................................8

89 Fed. Reg. 22,594 ......................................................................................................5

89 Fed. Reg. 22,595 ......................................................................................................9

OSHA, Field Operations Manual ("FOM"), CPL 02-00-164 (effective Apr. 14, 2020) ...................................................................................................7, 9, 10

## INTEREST OF AMICI AND SUMMARY OF ARGUMENT

The *Amici*,[1] whose perspectives can benefit this Court, support Plaintiffs' motion for summary judgment. The Occupational Safety and Health Administration ("OSHA") regulation at issue, Worker Walkaround Representative Designation Process, 89 Fed. Reg. 22,558 (Apr. 1, 2024) (the "Walkaround Rule" or "Rule"), seeks to undermine health and safety inspections of American workplaces, is contrary to law, and is entitled to no deference by this Court. It is a significant and unlawful change in OSHA's well-established interpretation of 29 C.F.R. § 1903.8(c), resulting in a major encroachment into the rights of a vast number of private employers.

---

[1] The Interest of the *Amici Curiae*: The **Coalition for a Democratic Workplace** ("CDW") is composed of hundreds of organizations representing millions of businesses that employ tens of millions of workers nationwide in nearly every industry. Members of the CDW are joined by their mutual concern over regulatory overreach that threatens employees, employers, and economic growth. The **International Foodservice Distributors Association** ("IFDA") is the premier trade association representing foodservice distributors throughout the U.S. and around the world. IFDA members play a crucial role in the foodservice supply chain, delivering food and related products to restaurants, K-12 schools, hospitals and care facilities, hotels and resorts, U.S. military bases and government facilities, and other operations that make meals away from home possible. The industry generates $382 billion in sales, employs 431,000 people, and operates 17,100 distribution centers in all fifty states and the District of Columbia. The **American Hotel & Lodging Association** is the largest hotel association in the U.S. representing all segments of the industry nationwide including major chains, independent hotels, management companies, bed and breakfasts, industry partners, and more. It has over 32,000 member properties, including the ten largest hotel companies in the country. The **Small Business and Entrepreneurship Council** is an advocacy, research, and education group working to promote entrepreneurship and to protect small business vitality and growth. For more than thirty years, it has promoted innovative initiatives and policies to enable startup activity, small business competitiveness, and a policy ecosystem that lowers barriers to entrepreneurial opportunity and success. The **American Road & Transportation Builders Association** ("ARTBA") brings together all facets of the transportation construction industry to advocate for infrastructure investment and policy that meet the nation's need for the safe and efficient movement of people and goods. The ARTBA represents over 8,000 public and private sector members within the U.S. transportation construction industry and has been a longtime partner of OSHA and an advocate for worker safety. The **California Hotel & Lodging Association** represents all facets of California's lodging industry and is the largest state lodging industry association in the country. Its mission is to protect the rights and interests of California's lodging industry owners and operators by focusing on governmental advocacy, professional education, and industry communication programs on behalf of its membership. The **American Bakers Association** is the largest, most established, and diverse trade association for the commercial baking industry in the U.S., as well as the only bakery-specific national and state trade association, delivering results on priorities affecting the companies that feed the world. Its mission is to grow and enhance the baking industry through public policy advocacy, education, and networking opportunities. Its members include more than 300 member companies representing over 1,200 commercial baking facilities and the extensive industry supply chain, including everything from global wholesale baking companies and suppliers to baking industry entrepreneurs and startup bakeries. The **Independent Electrical Contractors** ("IEC") is a trade association federation with fifty-three educational campuses and affiliate local chapters across the country. IEC represents more than 3,600 member businesses that employ over 100,000 electrical and systems workers throughout the U.S. and educates nearly 16,000 electricians and systems professionals each year through world-class training programs. IEC contractor member companies are some of the premier firms in the industry and are responsible for over $10 billion in gross revenue annually.

In granting Plaintiffs' motion for summary judgement, the Walkaround Rule should be recognized for delivering on President Biden's promise to be the most pro-union president in history rather than delivering to American workplaces a rule that allows for health and safety inspections to be conducted in a manner consistent with the Occupational Safety and Health Act of 1970 (the "OSH Act"), 29 U.S.C. §§ 651-768, and the requirements of Administrative Procedure Act ("APA") rulemaking, 5 U.S.C. §§ 551-559.

This *Amici* brief focuses on two reasons why this Court should set aside the Walkaround Rule and enjoin OSHA from enforcing it. First, the Rule far exceeds OSHA's statutory authority. Under Section 8(e) of the OSH Act, 29 U.S.C. § 657(e), a representative must be an "authorized employee representative." OSHA's prior regulation implementing Section 8(e) of the OSH Act, 29 C.F.R. § 1903.8(c), stated that "[t]he representative(s) authorized by employees shall be an employee(s) of the employer." The regulation provided a narrow exception in which a non-employee third-party might be allowed to serve as a representative for "good cause . . . shown," "such as an industrial hygienist or a safety engineer." This struck a balance to allow for only qualified expertise regarding workplace safety while respecting employers' property rights and their rights to protect proprietary and confidential information. Through the new Rule, OSHA expands this limited exception so significantly as to swallow the rule by allowing for "a multitude of third parties" who might serve as representatives authorized by employees for purposes of an inspection, 89 Fed. Reg. at 22,589, specifically identifying "labor union[s], advocacy group[s], [and] worker justice coalition[s]," *id.* at 22,596.

Second, the Rule directly conflicts with the National Labor Relations Act ("NLRA"). Specifically, the Rule undermines federal labor relations policy by disregarding the need for lawful recognition of a union as selected by the majority of employees. Congress did not confer authority

upon OSHA to determine who is an employee's authorized representative; rather, such a question is within the exclusive jurisdiction of the National Labor Relations Board ("NLRB" or the "Board").

## **ARGUMENT**

### I.    **This Court Should Independently Determine That the Walkaround Rule Is Not Empowered by the OSH Act and Violates the APA.**

Congress is expected "to speak clearly when authorizing an agency to exercise powers of vast economic and political significance." *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab.*, 142 S. Ct. 661, 665 (2022). Congress did not empower OSHA to alter the legal landscape to permit its inspectors (also referred to as Compliance Safety and Health Officers or "CSHOs") to make determinations as to which non-employees have legal authority to represent employees. Any revision to 29 C.F.R. § 1903.8 was required to be promulgated under the authority given to OSHA when Congress enacted the OSH Act—specifically Section 8(e), which provides that "a representative of the employer and *a representative authorized by his employees* shall be given an opportunity to accompany the Secretary . . . for the purpose of aiding such inspection." 29 U.S.C. § 657(e) (emphasis added). OSHA's new interpretation in the Rule regarding what it means for an employee to be "authorized by his employees" is contrary to the meaning of "authorized."

The plain meaning of the word "authorized" requires some sort of legal delegation to act in one's shoes. *Authorized*, "sanctioned by authority: having or done with legal or official approval," MERRIAM-WEBSTER at https://www.merriam-webster.com/dictionary/authorized (accessed June 26, 2024). As noted in Plaintiffs' motion for summary judgment, courts, in considering the intent of Congress in interpreting language similar to "*a representative authorized by his employees*," have required legal authority. *See, e.g.*, *Anderson v. U.S. Dep't of Lab.*, 422 F.3d 1155, 1178-79 (10th Cir. 2005) (in interpreting the phrase "authorized representative of employees" under various statutes, the court determined that there must be some "legal authority,

3

rather than merely a request by employees to represent them"). Based on the meaning of the phrase "authorized representative" as set forth in Section 8(e) of the OSH Act, OSHA is not permitted to set forth a contrary definition of the phrase in a new regulation that defines *a representative authorized by his employees* as merely a request by two or more employees for a third party to accompany OSHA during the inspection of an employer's workplace. To be authorized by employees requires legal authority, not merely a simple request by employees to represent them.

Even if the statute were ambiguous, the Rule should still fail—first, because statutory ambiguity does not require a court to "throw up their hands" and defer to the agency, *see Loper Bright Enters. v. Raimondo*, No. 22–451, slip op. at 22 (U.S. June 28, 2024),[2] and second, because it is an arbitrary and capricious interpretation of the OSH Act and does not represent the best-informed judgment. OSHA's Walkaround Rule is arbitrary and capricious not only because it does not articulate a permissible construction of Section 8(e) of the OSH Act, but it was also issued without the reasoned explanation that is required by the APA, leaving many gaps. Under the APA, a court must "set aside" agency action that is "arbitrary, capricious," or "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2). An agency rule is arbitrary and capricious if the agency lacks a rational basis for adopting it—for example, if the agency relied on improper factors, failed to consider pertinent aspects of the problem, offered a rationale contradicting the evidence before it, or reached a conclusion so implausible that it cannot be attributed to a difference

---

[2] The Supreme Court's decision in *Loper* overruled its prior decision in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which required courts to defer to "permissible" agency interpretations of statutes administered by said agencies. *Id.* at 843. Now, under *Loper*, courts are required to exercise their independent judgment, using every interpretive tool at their disposal, to decide whether an agency has acted within its statutory authority and the statute's "best meaning." *Loper*, No. 22–451, slip op. at 31. Crucially, courts are not required to defer to merely "permissible" agency interpretations; instead, the APA "incorporates the traditional understanding of the judicial function, under which courts must exercise independent judgment in determining the meaning of statutory provisions." *Loper*, No. 22–451, slip op. at 16. And while "courts may—as they have from the start—seek aid from the interpretations of those responsible for implementing particular statutes," they must nonetheless "ensur[e] the agency has engaged in reasoned decisionmaking." *Id.* at 16-18.

of opinion or the application of agency expertise. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983).

Applying those principles, instead of showing the change in OSHA's interpretation is based on its fair and considered judgment on the matter in question, OSHA claims that the new Rule is not a change but, rather, seeks to cloak this sweeping change as merely a "clarification." *See* 89 Fed. Reg. at 22,594 ("this rule is a clarification of OSHA's longstanding practice with which employers are already familiar"). Based on the erroneous premise that the new Rule is merely a clarification of longstanding policy, OSHA fails to consider relevant aspects of the abrupt change of course, leaving many gaps for employers, employees, and OSHA inspectors to navigate.

OSHA's prior rule, 29 C.F.R. § 1903.8(c), plainly stated that an employee representative "shall be an employee(s) of the employer." That regulation, with the limited exception for specialists "such as industrial hygienists and safety engineers," was promulgated in 1971, and has remained effective—short of the Fairfax Memo[3]—for over fifty years, rendering the vast expansion of permissible authorized representatives in the new Rule an unreasonable departure from prior policy. While the prior regulation granted a limited exception,[4] the new Rule swallows the exception such that no exception remains. The present vast expansion of the regulation is evident when considering the language of Section 8(e) of the OSH Act that states, "Where there is

---

[3] The Rule is a reprise of its short-lived letter of interpretation issued to the United Steelworkers during the Obama administration (referred to as the "Sallman Letter" or "Fairfax Memo"). In an apparent effort to help unions organize, the Fairfax Memo attempted to rewrite four decades of OSHA's interpretation that only union representatives recognized by the NLRB as the majority representative of the employer's employees could be considered an "authorized employee representative" under Section 8(e) of the OSH Act and its implementing regulation, 29 C.F.R. § 1903.8. The Fairfax Memo was rescinded by the Trump administration.

[4] Likely, the previous limited exception was itself not permitted by Section 8(e) as there is nothing in this section that suggests Congress intended there to be any vehicle to bring in third-party expertise, where there is no collective bargaining representative, during the walkaround inspection. However, the *Amici* note that this issue was not raised by the Plaintiffs and the limited exception is an interpretation that has "remained consistent over time." *Loper*, No. 22–451, slip op. at 17.

no authorized employee representative, the Secretary or his authorized representative shall consult with a reasonable number of employees concerning matters of health and safety in the workplace." Thus, Congress contemplated the situation where there was not a legal "authorized employee representative," such as where there is no collective bargaining representative, and it determined that effective health and safety inspections of such workplaces could be conducted by OSHA consulting directly with a reasonable number of employees concerning health and safety matters.

OSHA's intention to broaden the types of individuals who may join inspections is made explicit in the preamble to the new Rule. Specifically, "OSHA has therefore deleted the two enumerated examples in the [prior] regulation—industrial hygienists and safety engineers—to clarify that different types of individuals may be reasonably necessary to OSHA's inspection." *See* 89 Fed. Reg. at 22,564. OSHA leaves open-ended which individuals can be considered "authorized representatives." Although OSHA outlines several examples in the Rule (*e.g.*, union leaders[5] or safety councils), the intentional omission leaves the practical application of the Rule arbitrary and capricious, with employers unable to prepare for which individuals may enter their facilities during inspections and what such individuals may do while on their property.

The Rule fails to address myriad questions about how it would function in practice, such that it is unworkable. There are numerous unaddressed questions that leave employers in the dark. For example, it is unclear whether a representative's "expertise" may expand the scope of an inspection based on what he or she sees in "plain view." Employers have a right to require that OSHA inspectors seek an inspection warrant before entering their establishment and may refuse

---

[5] Non-employer union representatives were the first example outlined by OSHA in the proposed Rule, underscoring the pro-union undertone motivating the Rule. *See* 88 Fed. Reg. 59,825, 59,830 (Aug. 30, 2023) (Proposed Rule) ("One scenario where OSHA has encountered third-party employee representatives is in union workplaces where employees have designated a union representative. . . . These representatives are often employees of the union rather than the employer being inspected. Third-party representation may also arise in workplaces without collective bargaining agreements where employees have designated a representative from a worker advocacy group, community organization, or labor union to serve as their representative in an OSHA inspection.").

entry in circumstances where a warrant has not been obtained. An exception to the warrant requirement is where a hazard can be observed in "plain view." *See* OSHA, Field Operations Manual ("FOM"), CPL 02-00-164 (effective April 14, 2020), at 3-6. Here, it is unclear whether non-employee representatives' observations could satisfy the "plain view" exception. This would be problematic because if OSHA inspectors' findings are supplemented by third parties' findings, it cannot be fairly said that the findings were in "plain view" of the investigator.

Further, it is unclear *how* an OSHA inspector would select the authorized representative(s). How will OSHA decide who is able to join an inspection if employees disagree about who should serve as their "authorized representative" with respect to a union representative? OSHA has failed to outline the procedure, leaving doubt as to whether the decision would be clear or objective. Indeed, it is subjectivity that OSHA seeks—stating that any third party is reasonably necessary as long as they make a "positive contribution" based on "the CSHO's determination on factors such as the knowledge, skills, or experience of the third party." 89 Fed. Reg. at 22,564, 22,575. There is no limit in the new Rule to the number of "authorized representatives" permitted to join OSHA inspections. Nothing in the Rule states that multiple employees could not request their own representatives; leaving employers to wonder if they are to be expected to accommodate as many people on their premises as OSHA deems appropriate. OSHA also does not address whether "authorized representatives" would be required to stay close to the CSHO during the inspection. Employers are likewise uninformed about their obligations to monitor the representatives, such as in situations where a representative wanders away from the inspection or seeks to engage with employees—whether or not they are the ones who "authorized" the representative. These scenarios leave workplace disruption, security, and safety out of business owners' control.[6]

---

[6] The Rule leaves employers guessing about a variety of other legal concerns—despite OSHA's attempt to answer some questions in informal guidance that was not issued as part of formal APA rulemaking, and according to OSHA,

The gaps in the Rule highlight that OSHA's intent is not about promoting employee participation and safety but rather to push forth the Biden administration's pro-union agenda, even at the cost of implementing arbitrary, haphazard authority. Given the expansive departure from the existing rule, OSHA needed a more reasoned explanation for its decision. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 211-12, 221 (2016) (and cases cited therein) (while an agency is permitted to change its existing policy as long as it is consistent with the authorizing statute, the agency must "display awareness that it is changing position" and "show that there are good reasons for the new policy").[7] OSHA has not even displayed an awareness that it is changing position, let alone shown that there are good reasons for the new policy; instead, seeking to avoid jumping through the hoops required by the APA, OSHA claims that the Rule only clarifies the existing regulation.

There is other evidence that OSHA's actions in the Walkaround Rule do not represent the best-informed judgment on the matter in question. For example, OSHA's Rule is inconsistent with Section 15 of the OSH Act.[8] The procedure in this section contemplates a "Confidential—Trade Secret" designation upon sharing information with OSHA, but it does not provide any procedure

---

"will be updated periodically…," meaning OSHA's thinking could easily change (*see* https://www.osha.gov/worker-walkaround/final-rule/faq): Will representatives be allowed to take their own notes and photographs? If so, will those be incorporated into OSHA's investigatory file, which eventually would be produced to the employer through discovery if a citation is issued and contested? Are notes of employee statements taken by a representative covered by the informant's privilege—as would be the case with employee statements made to OSHA? Who would be liable if a representative authorized by employees is injured, causes injury to others, or engages in misconduct since OSHA found it "unnecessary" to address this issue? 89 Fed. Reg. at 22,592.

[7] *See also Brackeen v. Haaland*, 994 F.3d 249, 356 (5th Cir. 2021), *aff'd in part, vacated in part, rev'd in part*, 599 U.S. 255 (2023) ("Sudden and unexplained change, or change that does not take account of legitimate reliance on prior interpretation, may be arbitrary, capricious [or] an abuse of discretion.") (quoting *Smiley v. Citibank (S. Dakota), N.A.*, 517 U.S. 735, 742 (1996)); *Laclede Gas Co. v. F.E.R.C.*, 722 F.2d 272, 275 (5th Cir. 1984) ("An agency must either conform to its prior precedent or explain its reasoning for departure from that precedent.").

[8] Section 15 provides that "[a]ll information reported to or otherwise obtained by the Secretary . . . in connection with any inspection . . . which contains or which might reveal a trade secret . . . shall be considered confidential[,] . . . [and] [i]n any such proceeding the Secretary, the Commission, or the court shall issue such orders as may be appropriate to protect the confidentiality of trade secrets." 29 U.S.C. § 664.

whereby non-employee third parties ever lay eyes on the confidential information or trade secrets—likely because that was never Congress's intent. Permitting non-employees (some of whom may work directly for competitors) to accompany the OSHA inspector on an inspection contradicts Section 15 by contemplating disclosure of trade secrets to third parties before an order can be entered protecting the confidentiality of such information.[9]

OSHA's new Rule also gave no consideration whatsoever to, and in fact contradicts, the Rules of Procedure of the Occupational Safety and Health Review Commission (the "Commission"). With the new Rule, even before the issuance of a citation and any litigation, *at the beginning of an inspection* of a workplace, OSHA seeks to engage in discovery through the use of the designation of "experts" deemed qualified by OSHA inspectors alone. However, recognizing the need for discovery *once litigation commences*, Commission Rule 53 provides for the use of worksite visits for purposes of expert discovery only after the issuance of a citation.[10]

OSHA's new Rule also contradicts its own FOM, which sets forth OSHA's policies and procedures for implementing inspections (as well as issuing citations and proposing penalties). OSHA's FOM makes clear that it is OSHA's policy not to become involved in labor disputes.[11]

---

[9] In considering the issue in the new Rule, OSHA incorrectly states that the Rule will not create costs for employers: "OSHA has determined that, as a result of this rule, employers will not incur costs associated with the protection of trade secrets or the preparation of nondisclosure agreements." *See* 89 Fed. Reg. at 22,595. OSHA suggests that employers still have the right to protect trade secrets by "request[ing] that areas of their facilities be off-limits to representatives who do not work in that particular part of the facility." *See* 89 Fed. Reg. at 22,595 (citing 29 C.F.R. 1903.9(d)). However, this conclusion is based on the prior regulation where an employee's representative "shall be an employee of the employer," Section 1903.8(c), whereas under the Rule, the employee's representative will not be an employee of the employer, thereby nullifying the protection afforded to employers by Section 1903.9(d).

[10] Rule 53 provides that "[a]ny time after the filing of the first responsive pleading . . . any party may serve on any other party a request to . . . [p]ermit entry upon designated land or other property." 29 C.F.R. § 2200.53(a). Commission Rule 53 also specifies the procedure if entry is refused. 29 C.F.R. § 2200.53(b). Such disputes regarding the right to engage in discovery, including allowing experts to enter an employer's property, are appropriate for Commission Administrative Law Judges, the Commission, and courts to decide—not OSHA inspectors who are not equipped to hear employers' objections or to make legal conclusions regarding (and orders enforcing) them. But through this Rule, OSHA seeks to get an early bite at the apple, without a Commission Order, and be the sole adjudicator as to the reasonableness of requests of non-employee third parties to enter an employer's property.

[11] *See* FOM at 3-9 ("Under no circumstances are CSHOs to become involved in a worksite dispute involving labor management issues or interpretation of collective bargaining agreements."); *id.* at 3-10 ("During the inspection,

While OSHA claims that the new Rule does not change its "longstanding policy of neutrality" and rejects arguments from commenters that the Rule will "improperly pressure CSHOs to allow authorized representatives," 89 Fed. Reg. at 22,584, the agency fails to explain how such blind faith is proper given the lack of direction and broad discretion provided to CSHOs in selecting third-party representatives.

**II.** **The Rule Conflicts with the NLRA Regarding the Selection and Handling of Employee Representatives.**

The Walkaround Rule constitutes an ill-considered extension of the OSH Act that infringes on the authority of the NLRB and interferes with the protections of the NLRA in multiple ways. As explained below, the Walkaround Rule encroaches on the exclusive authority that Congress granted to the NLRB to administer the NLRA, undermines the NLRA's fundamental protection of employees' right to choose their own representatives, upsets the balance struck by the Board and Supreme Court between employees' rights under the NLRA and employers' property rights, and even forces employers into violating the NLRA.

Congress did not confer authority upon OSHA to determine who is an employee's authorized union representative because such a question is within the exclusive jurisdiction of the NLRB. In the OSH Act, Congress created a limited right for "a" single "authorized employee representative" to accompany an OSHA inspector during a walkaround inspection of an employer's workplace. 29 U.S.C. § 657(e). The new Walkaround Rule, however, expands employees' rights to designate non-employee third-party representatives during walkaround inspections. Specifically, the new Rule authorizes two or more employees in any workplace to

---

CSHOs will make every effort to ensure that their actions are not *interpreted* as supporting either party to the labor dispute." (emphasis added)). OSHA's FOM also contemplates the need and process for an inspector to conduct a walkaround inspection with an interpreter so that the inspector may converse with employees—the FOM instructs the inspector to contact the government agency (General Services Administration), to obtain an interpreter (FOM at 3-21); thus, showing the lack of need in a new Rule to provide "access to an interpreter." 89 Fed. Reg. at 22,566.

designate an indeterminate number of third-party representatives to accompany OSHA inspectors on walkaround inspections, so long as the OSHA inspector determines that the third-party representatives will "make a positive contribution" to an inspection. 89 Fed. Reg. at 22,575. OSHA's new Rule thus permits any employee to select a union representative, with the agreement of only one other, without legal authority or consideration of fellow employees' choice, let alone a majority vote among employees regarding the selection.

This expansion of OSHA encroaches on the exclusive jurisdiction that Congress provided to the NLRB to protect and enforce employees' rights to choose their representatives under the NLRA. Those rights are set forth in Section 7, which provides that employees shall have the "right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities." 29 U.S.C. § 157. The Supreme Court has long recognized the Board's exclusive authority to create the necessary rules and regulations to protect employees' rights to choose their representatives, or to choose no representatives at all. *See NLRB v. A.J. Tower Co.*, 329 U.S. 324 (1946) ("Congress has entrusted the Board with a wide degree of discretion in establishing the procedure and safeguards necessary to insure the fair and free choice of bargaining representatives by employees."). Congress thus conferred on the Board, not OSHA, the responsibility and authority to protect employees' rights to choose their representatives.

The Walkaround Rule confers representative authority on third parties absent proof of majority support, undermining Sections 7 and 9 of the NLRA. Section 7 provides employees the right, among others, "to bargain collectively through representatives of their own choosing" or "to refrain from" such activity. 29 U.S.C. § 157. Section 9, in turn, establishes that to ensure

11

employees' freedom of choice regarding their representatives, such representatives must be "designated or selected for the purposes of collective bargaining *by the majority of the employees*." *Id.* § 159(a) (emphasis added). As the Board and courts have recognized, these provisions provide fundamental protections of the NLRA: "freedom of choice and majority rule." *Int'l Ladies' Garment Workers' Union v. NLRB*, 366 U.S. 731, 737 (1961). Recognizing a union as employees' representative absent majority support constitutes a clear violation of these fundamental rights under the NLRA. *Id.* ("The law has long been settled that a grant of exclusive recognition to a minority union constitutes unlawful support" in violation of the NLRA).[12] The new Walkaround Rule violates these fundamental protections of the NLRA by allowing a minority of employees to designate a union as the employees' representative for purposes of the walkaround inspection. It additionally cloaks that union with federal government approval as the employees' representative by allowing the union representative to accompany the OSHA inspector around the premises. The Rule thus contradicts the fundamental guarantees of the NLRA to workplace democracy and majority rule.

The Walkaround Rule contradicts well-established precedent balancing employers' property rights against employees' representation rights by differentiating between unions that are lawfully recognized as employees' majority representatives and other third-party unions that have not obtained majority support from the employees. The Board requires that an employer allow lawfully recognized union representatives access to the employer's property where necessary for the "responsible representation of employees." *Holyoke Water Power Co.*, 273 NLRB 1369, 1370

---

[12] *See also Skyline Distribs. v. NLRB*, 99 F.3d 403, 411 (D.C. Cir. 1996) ("One of the principal protections of the NLRA is the right of employees to bargain collectively through representatives of their own choosing *or* to refrain from such activity." (emphasis in original)); *U.S. Gypsum Co. v. United Steelworkers of Am., AFL-CIO*, 384 F.2d 38, 45 (5th Cir. 1967) ("the statutory duty to deal only with the representative chosen by the majority . . . is strong. But no less stringent is the duty not to deal with one having only minority support.").

(1985), *enforced*, 778 F.2d 49 (1st Cir. 1985). In such cases, there is a process—often in the context of safety and health matters—for the employer and union to address concerns about confidentiality, operational disruptions, and other legitimate concerns. *See ASARCOJ, Inc.*, 276 NLRB 1367 (1985), *enforced in relevant part*, 805 F.2d 194, 198 (6th Cir. 1986). Such matters fall within the NLRA's requirement that employers and unions bargain in good faith over reasonable measures to permit property access while protecting employers' legitimate business interests. *See, e.g.*, *Caterpillar, Inc.*, 361 NLRB 846 (2014), *reaff'g*, 359 NLRB 790 (2013) (employer violated NLRA by refusing to grant non-employee union representative access to its facility to conduct inspections after fatal accident), *enforced*, 803 F.3d 360 (7th Cir. 2015).

Employers do not have to similarly yield their property rights to union organizers who do not represent the employees. Because organizers are not actively representing the employees, they do not implicate the same rights under the NLRA as lawfully recognized unions and accordingly cannot justify the same encroachment on employers' property rights. Employers can therefore generally exclude non-employee union organizers that do not represent their employees, with limited exceptions. *See Lechmere, Inc. v. NLRB*, 502 U.S. 527, 534 (1992) ("[Section] 7 simply does not protect nonemployee union organizers except in the rare case" that employees are otherwise inaccessible). The Walkaround Rule upends the above balance struck by the Supreme Court and Board between employers' property rights and employees' representation rights.

The Walkaround Rule forces employers to engage in conduct that violates the NLRA's protections. Section 8(a)(2) of the NLRA prohibits an employer from contributing "support" to a labor organization, such as by recognizing a union that has not obtained majority support from the employer's employees. Section 8(b)(1)(A) correspondingly prohibits a union from accepting recognition as the representative of an employer's employees if it has not demonstrated majority

13

support from those employees. As the Supreme Court explained, mere recognition of a union that has not demonstrated support from a majority of employees violates the NLRA's mandates because "the union so favored is given a marked advantage over any other in securing the adherence of employees," and such recognition can confer on the representative "a deceptive cloak of authority with which to persuasively elicit additional employee support." *Int'l Ladies' Garment Workers' Union*, 366 U.S. at 736; *see also NLRB v. Pa. Greyhound Lines*, 303 U.S. 261, 267 (1938) ("once an employer has conferred recognition on a particular organization it has a marked advantage over any other in securing the adherence of employees, and hence in preventing the recognition of any other."). Based on this precedent, the Board has long held that an employer violates the NLRA if it merely negotiates with a union that has not achieved majority representative status even if the parties do not enter into an agreement. *Majestic Weaving Co., Inc. of N.Y.*, 147 NLRB 859 (1964).

The Rule forces employers into an untenable position with respect to these prohibitions under the NLRA. The requirement for an employer to allow a union that has not achieved majority status to enter the company's premises, where other third-party organizations are lawfully prohibited from entering in the same manner, will undoubtedly provide "a deceptive cloak of authority with which to persuasively elicit additional employee support" in violation of Section 8(a)(2). *Int'l Ladies' Garment Workers' Union*, 366 U.S. at 736. Additionally, the non-majority union representatives would not merely be present on the employer's premises but accompanying a federal official on an inspection, further cloaking that representative with authority. The Rule thus *requires* employers to provide the very kind of assistance the NLRA prohibits, giving these non-majority organizations a "marked advantage" over any others and undermining employees' freedom to choose their representation.

14

The Rule creates a conflict between employers' property rights and the NLRA even with respect to union organizers that do *not* participate in the walkaround. The NLRB requires that an employer treat organizing unions equally regarding any privileges it may afford, and thus prohibits the employer from permitting one union organizer access to the employer's property while denying equal access to the organizer of a different union. *See, e.g.*, *Duane Reade, Inc.*, 338 NLRB 943, 943 (2003) (finding employer violated Section 8(a)(2) of the NLRA by permitting one union's organizers access to its premises while excluding another union's organizers); *Price Crusher Food Warehouse*, 249 NLRB 433, 438-39 (1980) (finding employer unlawfully assisted union by not providing same opportunity on the store premises to another union). The Rule requires an employer to allow a union organizer special access to its premises, and the NLRA requires that the same special access be extended to *any* union organizer who thereafter requests it. However, as discussed, the Supreme Court and the Board have affirmed employers' rights to exclude such organizers from their property absent limited exceptions. The Walkaround Rule thus sets up a vastly broad and irreconcilable conflict between employers' established property rights and the NLRA's requirements for equal treatment of *all* union organizers.

## **<u>CONCLUSION</u>**

OSHA's Rule clearly exceeds OSHA's statutory authority and is arbitrary and capricious, as the agency lacks a rational basis for adopting it. Thus, the *Amici* oppose the Rule and urge this Court to grant Plaintiffs' motion for summary judgment and set aside OSHA's Walkaround Rule.

Dated: July 3, 2024

Respectfully submitted,


By: */s/ T. Cullen Wallace*
      T. Cullen Wallace
      (Texas Bar No. 24072412)

MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX  77002-5005
Telephone:  (713) 890-5000
Facsimile:  (713) 890-5001
cullen.wallace@morganlewis.com

Heather MacDougall (*pro hac vice* pending)
(FL State Bar No. 88214)
MORGAN, LEWIS & BOCKIUS LLP
600 Brickell Avenue, Suite 1600
Miami, FL  33131-3075
Telephone:  (305) 415-3000
Facsimile:  (305) 415-3001
heather.macdougall@morganlewis.com

John F. Ring (*pro hac vice* pending)
(CT State Bar No. 400869)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC  20004-2541
Telephone:  (202) 739-3000
Facsimile:  (202) 739-3001
john.ring@morganlewis.com

*Attorneys for Amici Curiae*
*the Coalition for a Democratic Workplace,*
*International Foodservice Distributors*
*Association, American Hotel & Lodging*
*Association, Small Business &*
*Entrepreneurship Council, American Road &*
*Transportation Builders Association,*
*California Hotel & Lodging Association,*
*American Bakers Association, and*
*Independent Electrical Contractors*

16

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 3, 2024, I electronically filed the foregoing brief with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

*/s/ T. Cullen Wallace*
T. Cullen Wallace
