**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

|  |  |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION *et al.*, <br><br> *Defendants*. | Case No. 6:24-cv-271-ADA-DTG |

**DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT AND MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

BACKGROUND ........................................................................................................................3

I.     OSHA's Workplace Inspections Under the OSH Act .....................................................3

II.    The Walkaround Rule ......................................................................................................5

STANDARD OF REVIEW .........................................................................................................6

ARGUMENT .............................................................................................................................6

I.     Plaintiffs Lack Standing to Challenge the Walkaround Rule ..........................................6

II.    Defendants Are Entitled to Summary Judgment on Plaintiffs' APA and Constitutional
       Claims ..........................................................................................................................11

       A.     The Walkaround Rule is consistent with OSHA's statutory authority .................11

       B.     The Walkaround Rule does not effect any taking of private property ..................22

       C.     The Walkaround Rule is not arbitrary or capricious ..........................................27

III.   The Court Lacks Jurisdiction over Plaintiffs' RFA Claim ............................................33

CONCLUSION .........................................................................................................................35

## TABLE OF AUTHORITIES

**Cases**

*Alenco Commc'ns, Inc. v. FCC,*
201 F.3d 608 (5th Cir. 2000) ................................................................................34

*Aluminum Ore Co. v. NLRB,*
131 F.2d 485 (7th Cir. 1942) ................................................................................16

*Am. Fuel & Petrochemical Mfrs. v. EPA,*
937 F.3d 559 (D.C. Cir. 2019) ........................................................................21, 22

*Asarco, Inc. v. NLRB,*
86 F.3d 1401 (5th Cir. 1996) ................................................................................20

*Associated Builders & Contractors of Tex., Inc. v. NLRB,*
826 F.3d 215 (5th Cir. 2016) .......................................................... 11, 12, 22, 23

*Bellville v. Town of Northboro,*
375 F.3d 25 (1st Cir. 2004) ..................................................................................25

*Bills v. Aseltine,*
958 F.2d 697 (6th Cir. 1992) ................................................................................26

*Cedar Point Nursery v. Hassid,*
594 U.S. 139 (2021) .......................................................................................*passim*

*Chamber of Com. of the U.S. v. NLRB,*
118 F. Supp. 3d 171 (D.C. Cir. 2015) ..................................................................12

*Chicago Bridge & Iron Co. v. OSHRC,*
535 F.2d 371 (7th Cir. 1976) ...........................................................................3, 19

*City of L.A. v. Lyons,*
461 U.S. 95 (1983) ................................................................................................10

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) ...............................................................................7, 8, 10, 11

*Cnty. of Washington v. Gunther,*
452 U.S. 161 (1981) ..............................................................................................15

*Contender Farms, LLP v. U.S. Dep't of Agric.,*
779 F.3d 258 (5th Cir. 2015) ..................................................................................8

*Crane v. Johnson,*
783 F.3d 244 (5th Cir. 2015) ..................................................................................7

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) .................................................................................6

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,*
    591 U.S. 1 (2020) ............................................................................ 30, 31

*FCC v. Fox Television Stations, Inc.,*
    556 U.S. 502 (2009) ...............................................................................27

*FCC v. Prometheus Radio Project,*
    592 U.S. 414 (2021) .......................................................................... 27, 33

*FDA v. Alliance for Hippocratic Med.,*
    602 U.S. 367 (2024) ..................................................................6, 7, 10, 11

*Funeral Consumers All., Inc. v. Serv. Corp. Int'l,*
    695 F.3d 330 (5th Cir. 2012) .............................................................. 7, 9

*Golden Glow Tanning Salon, Inc. v. City of Columbus,*
    52 F.4th 974 (5th Cir. 2022), *cert. denied,* 143 S. Ct. 1085 (2023) ........23

*Grocery Servs., Inc. v. USDA Food & Nutrition Serv.,*
    No. 06-cv-2354, 2007 WL 2872876 (S.D. Tex. Sept. 27, 2007) .............33, 34, 35

*Huawei Techs. USA, Inc. v. FCC,*
    2 F.4th 421 (5th Cir. 2021) ....................................................................27

*In re Establishment Inspection of Caterpillar Inc.,*
    55 F.3d 334 (7th Cir. 1995) ............................................................4, 12, 13

*Janus v. AFSCME, Council 31,*
    585 U.S. 878 (2018) ...............................................................................16

*Kerr-McGee Coal Corp. v. FMSHRC,*
    40 F.3d 1257 (D.C. Cir. 1994) ......................................................... 14, 19

*Larson v. Geren,*
    No. 08-CA-722, 2010 WL 11542078 (W.D. Tex. Apr. 14, 20100,
    *aff'd,* 432 F. App'x 356 (5th Cir. 2011)................................................6

*Loper Bright Enters. v. Raimondo,*
    144 S. Ct. 2244 (2024)............................................................................14

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992).........................................................................*passim*

*Marshall v. Barlow's, Inc.,*
    436 U.S. 307 (1978) ...............................................................................24

*Mason v. Barbieri*,
  338 F. App'x 94 (2d Cir. 2009) ...................................................................................26

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ..................................................................................28, 30, 31

*NAACP v. Trump*,
  298 F. Supp. 3d 209 (D.D.C.),
  *aff'd sub nom. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020)....................35

*NFIB v. Dougherty*,
  No. 3:16-cv-2568, 2017 WL 1194666 (N.D. Tex., Feb. 3, 2017) .......................................5, 12, 13, 28

*NLRB v. Boss Mfg. Co.*,
  118 F.2d 187 (7th Cir. 1941) ...................................................................................16

*NLRB v. Loc. Union No. 103, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, AFL-CIO*,
  434 U.S. 335 (1978) ...............................................................................................20

*Roosevelt Campobello Int'l Park Comm'n v. EPA*,
  684 F.2d 1034 (1st Cir. 1982) .................................................................................21

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) .................................................................................................6

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ..............................................................................................7, 8

*Teamsters Nat'l United Parcel Serv. Negotiating Comm. v. NLRB*,
  17 F.3d 1518 (D.C. Cir. 1994) ...............................................................................20

*Tex. Indep. Producers & Royalty Owners Ass'n v. EPA*,
  413 F.3d 479 (5th Cir. 2005) ...................................................................................8

*Thunder Basin Coal Co. v. FMSHRC*,
  56 F.3d 1275 (10th Cir. 1995) ...............................................................................14

*U.S. Dep't of Lab. v. Wolf Run Mining Co.*,
  452 F.3d 275 (4th Cir. 2006) .................................................................................14

*United States v. Leon*,
  468 U.S. 897 (1984) ...............................................................................................24

*United States v. Moss*,
  872 F.3d 304 (5th Cir. 2017) .................................................................................17

*United States v. Sparks*,
  265 F.3d 825 (9th Cir. 2001), ...............................................................................25

*Wilson v. Layne*,
  526 U.S. 603 (1999) ..............................................................................................26

*Zimmerman v. City of Austin*,
  881 F.3d 378 (5th Cir. 2018) ...............................................................................11

**Statutes**

1 U.S.C. § 1 ..........................................................................................................22

5 U.S.C. § 601 ......................................................................................................33

5 U.S.C. § 602 ......................................................................................................33

5 U.S.C. § 603 ......................................................................................................33

5 U.S.C. § 604 ......................................................................................................33

5 U.S.C. § 605 ................................................................................................33, 35

5 U.S.C. § 606 ......................................................................................................33

5 U.S.C. § 607 ......................................................................................................33

5 U.S.C. § 608 ......................................................................................................33

5 U.S.C. § 609 ......................................................................................................33

5 U.S.C. § 610 ......................................................................................................33

5 U.S.C. § 611 ............................................................................................33, 34, 35

5 U.S.C. § 612 ......................................................................................................33

5 U.S.C. § 706 ........................................................................................................6

15 U.S.C. § 632 ....................................................................................................34

18 U.S.C. § 3105 ..................................................................................................25

28 U.S.C. § 1391 ..................................................................................................11

29 U.S.C. § 152 ....................................................................................................19

29 U.S.C. § 159 ..........................................................................................15, 16, 18

29 U.S.C. § 651 ......................................................................................................3

29 U.S.C. § 656 ................................................................................................. 25, 31

29 U.S.C. § 657 ....................................................................................................... *passim*

29 U.S.C. § 661 ................................................................................................. 15, 28

29 U.S.C. § 664 ....................................................................................................... 18

29 U.S.C. § 666 ......................................................................................................... 9

29 U.S.C. § 673 ....................................................................................................... 20

30 U.S.C. § 813 ....................................................................................................... 13

**Regulations**

13 C.F.R. § 121.103 ................................................................................................. 34

13 C.F.R. § 121.201 ................................................................................................. 34

29 C.F.R. § 1903.4 ......................................................................................... 9, 10, 24

29 C.F.R. § 1903.7 ................................................................................................... 24

29 C.F.R. § 1903.8 (1971) ........................................................................................ 4

29 C.F.R. § 1903.8 ............................................................................................. *passim*

29 C.F.R. § 1903.9 ....................................................................................... 18, 25, 29

29 C.F.R. § 1904.35 ........................................................................................... 19, 28

29 C.F.R. § 2200.1 ................................................................................................... 28

36 Fed. Reg. 17,850 (Sept. 4, 1971) ........................................................................ 4

66 Fed. Reg. 5916 (Jan. 19, 2001) .......................................................................... 20

88 Fed. Reg. 59,825 (Aug. 30, 2023) .................................................................. 5, 22

89 Fed. Reg. 22,558 (Apr. 1, 2024) ................................................................... *passim*

**Legislative Materials**

S. Rep. No. 91-1282 (1970), *reprinted in* Legislative History of the Occupational Safety
and Health Act of 1970 ................................................................................. 3, 4, 13, 19

Staff of Subcomm. on Labor, S. Comm. on Labor and Public Welfare, 92d Cong.,
 Legislative History of the Occupational Safety and Health Act of 1970
 (Comm. Print. 1971) ...................................................................................................13, 19, 22

**Other Authorities**

*Authorize*, Black's Law Dictionary (4th rev. ed. 1968) ..............................................................15

Fed. R. Civ. P. 12(b)(1)...............................................................................................................6

*Frequently Asked Questions: Worker Walkaround Designation Process (Walkaround) Rule*, OSHA,
 https://www.osha.gov/worker-walkaround/final-rule/faq .................................................30

Letter from Richard E. Fairfax, Deputy Assistant Secretary, OSHA, to Mr. Steve Sallman,
 Health and Safety Specialist, United Steelworkers (Feb. 21, 2013),
 https://www.regulations.gov/document/OSHA-2023-0008-0003 ......................................4

News Release, Bureau of Labor Statistics, U.S. Dep't of Labor, Union Members – 2023
 (Jan. 23, 2024), https://perma.cc/VD5C-PSVV ................................................................19

OSHA Memorandum, Rescission of February 21, 2013 Letter (April 25, 2017),
 https://www.regulations.gov/document/OSHA-2023-0008-0006 ......................................5

## INTRODUCTION

In section 8(e) of the Occupational Safety and Health Act ("OSH Act") of 1970, Congress provided that, during physical workplace inspections, employees would have the opportunity to authorize a representative who may accompany the inspector, "for the purpose of aiding such inspection." 29 U.S.C. § 657(e). Congress explicitly delegated authority to the Secretary of Labor to issue regulations giving effect to this provision. *Id.* Since first promulgating such regulations in 1971, the Occupational Safety and Health Administration (OSHA) has had a policy of permitting third-party authorized employee representatives to accompany inspectors, so long as their accompaniment would be reasonably necessary to the conduct of a thorough and effective inspection, in the judgment of the OSHA Compliance Safety and Health Officer (CSHO) who conducts the inspection. In 2017, a federal court concluded that this policy is consistent with the OSH Act but inconsistent with the letter of OSHA's then-existing regulation. Accordingly, OSHA undertook a rulemaking to revise the regulation and, on April 1, 2024, issued *Worker Walkaround Representative Designation Process*, 89 Fed. Reg. 22,558 ("Walkaround Rule"). The Rule made revisions to 29 C.F.R. § 1903.8(c) to ensure that OSHA's longstanding policy is clearly reflected in the regulatory text.

Plaintiffs are twelve associations whose members are businesses of various kinds. All Plaintiffs lack Article III standing to challenge the Walkaround Rule on behalf of their members because the Rule does not directly regulate any employers; rather, it clarifies employees' statutory right to authorize a representative of their choosing during walkaround inspections. It is therefore unsurprising that Plaintiffs do not identify a single member that suffers a certainly impending injury. Instead, Plaintiffs' theory of injury relies on a speculative chain of future events regarding unknown members. OSHA inspects only about 0.43% of workplaces each year, and the vast majority of inspections do not involve an authorized third-party employee representative. Plaintiffs' hypothetical theory of future injury to unidentified members cannot satisfy Article III. Accordingly, their complaint should be dismissed in its entirety.

Even if the Court were to reach the merits, Plaintiffs' claims would fail. The Walkaround Rule is wholly consistent with section 8(e) of the OSH Act, the text, purpose, and history of which support OSHA's longstanding policy reflected in the Rule, as other federal courts have consistently concluded. The crux of Plaintiffs' claims—that OSHA's interpretation of section 8(e) conflicts with an unrelated statutory scheme, the National Labor Relations Act (NLRA)—is a strawman of their own making. Section 8(e) in no way overlaps with or incorporates section 9(a) (or any other section) of the NLRA, and the Rule accordingly creates no conflict between the two statutes. Congress created no link between the two unrelated statutory provisions, which do not even use the same terms. Plaintiffs' reading of section 8(e), which would limit employee representatives for walkaround inspections to unionized employees—thus excluding the vast majority of employees nationwide from this statutory right—finds no support in the text of either statute.

Plaintiffs' Fifth Amendment takings claim is likewise meritless. The Supreme Court expressly distinguished the takings in *Cedar Point. Nursery v. Hassid*, 594 U.S. 139 (2021), with "government-authorized physical invasions" like the inspections at issue here, which pose no Fifth Amendment problem. *Id.* at 160. Like all OSHA inspections, inspections affected by the Walkaround Rule are conducted consistent with the Fourth Amendment and thus clearly fall within *Cedar Point*'s explicit exceptions for "traditional common law privileges to access private property." *Id.* Moreover, because Plaintiffs bring a facial challenge to the Rule, they must show that there is *no circumstance* in which the Rule's application is lawful. But even under Plaintiffs' incorrect reading of section 8(e) of the Act, there are circumstances in which the Rule's application is consistent with both the OSH Act and the Fifth Amendment. Therefore, Plaintiffs' *facial* challenge to the Rule fails, and Defendants are entitled to summary judgment on the statutory-authority and Fifth Amendment claims.

Finally, the Rule easily satisfies the narrow and highly deferential standard of review for determining whether an agency action is arbitrary and capricious. That standard requires that an

action be reasonable and reasonably explained. OSHA thoroughly explained its decisions in the Walkaround Rule and addressed in detail every concern that Plaintiffs reprise here. And while Plaintiffs perfunctorily brief their claim under the Regulatory Flexibility Act, this Court lacks jurisdiction to hear that claim, and OSHA fully complied with its requirements in any event.

## BACKGROUND

### I.   OSHA's Workplace Inspections Under the OSH Act

Congress passed the OSH Act "to assure so far as possible every working [person] in the Nation safe and healthful working conditions and to preserve our human resources." 29 U.S.C. § 651(b). To ensure employers' compliance with the Act, Congress authorized the Secretary to conduct workplace inspections, *id.* § 657(a), and to "prescribe such rules and regulations . . . dealing with the inspection of an employer's establishment," *id.* § 657(g)(2). Section 8(e) of the Act provides that, whenever OSHA conducts a "physical inspection" of a workplace, "a representative of the employer and a representative authorized by his employees shall be given an opportunity to accompany" OSHA's CSHO, "for the purpose of aiding such inspection." *Id.* § 657(e). Congress included this provision to ensure "an appropriate degree of involvement of employees" in OSHA inspections. S. Rep. No. 91-1282 (1970), *reprinted in* Legislative History of the Occupational Safety and Health Act of 1970, at 151 (Comm. Print 1971) ("S. Rep."). Congress understood that, during safety and health inspections conducted under laws that predated the Act, employees were "often not even aware of [an] inspector's presence and are thereby deprived of an opportunity to inform [the inspector] of alleged hazards," which left "[m]uch potential benefit of an inspection . . . never realized." *Id.* Consequently, Congress enacted section 8(e) to ensure that employees would have the opportunity to choose representatives to accompany CSHOs during walkaround inspections. Congress also "[c]orrespondingly" provided the employer the same opportunity, *id.*, "in the interest of fairness," *Chicago Bridge & Iron Co. v. OSHRC*, 535 F.2d 371, 375 (7th Cir. 1976).

Anticipating that "questions may arise as to who shall be considered a duly authorized

3

representative of employees," S. Rep. at 151, Congress explicitly authorized the Secretary to issue

regulations governing walkaround inspection representation, 29 U.S.C. § 657(e).[1] OSHA, exercising

delegated authority from the Secretary, *id.* § 657(e), (g)(2), first promulgated regulations for

inspections in 1971, including those addressing employer and employee representatives pursuant to

section 8(e). *See* 29 C.F.R. § 1903.8 (1971); 36 Fed. Reg. 17,850 (Sept. 4, 1971). As originally issued,

section 1903.8(c), the precursor to the provision challenged here, provided that

> [t]he representative(s) authorized by employees shall be an employee(s) of the
> employer. However, if in the judgment of the [CSHO], good cause has been shown
> why accompaniment by a third party who is not an employee of the employer (such
> as an industrial hygienist or a safety engineer) is reasonably necessary to the conduct
> of an effective and thorough physical inspection of the workplace, such third party
> may accompany the [CSHO] during the inspection.

29 C.F.R. § 1903.8(c) (1971). In practice, OSHA interpreted this regulation to provide a limited right

to employees to authorize third parties as walkaround representatives where, in the CSHO's

judgment, their accompaniment is reasonably necessary to the inspection. *See In re Establishment*

*Inspection of Caterpillar Inc.*, 55 F.3d 334, 337 n.2 (7th Cir. 1995).

In 2013, OSHA clarified this interpretation in response to an inquiry from a stakeholder.

Letter from Richard E. Fairfax, Deputy Assistant Secretary, OSHA, to Mr. Steve Sallman, Health

and Safety Specialist, United Steelworkers (Feb. 21, 2013), https://www.regulations.gov/document/

OSHA-2023-0008-0003 ("Sallman Letter"). OSHA explained that section 1903.8(c) "acknowledge[d]

that most employee representatives will be employees of the employer being inspected" but

"explicitly allow[ed] walkaround participation by an employee representative who is not an employee

of the employer" if the CSHO determines that it would be reasonably necessary to the inspection.

*Id.* In 2016, the National Federation of Independent Business (NFIB) challenged that interpretation

---

[1] In situations where a CSHO is "not able to determine the existence of any authorized
representative of employees" at a workplace, S. Rep. at 151, OSHA must "consult with a reasonable
number of employees concerning matters of health and safety in the workplace," 29 U.S.C. § 657(e).

in court, arguing that the Sallman Letter exceeded OSHA's authority under the OSH Act and violated the Administrative Procedure Act (APA). *NFIB v. Dougherty*, No. 3:16-cv-2568, 2017 WL 1194666 (N.D. Tex., Feb. 3, 2017). The court concluded that OSHA's interpretation of section 8(e) of the OSH Act was "a persuasive and valid construction of the Act." *Id.* at *12. However, the court also held that the interpretation contradicted the text of former section 1903.8(c), which, in the court's view, required "that the employee representative be an employee himself." *Id.* at *11. The court therefore viewed the Sallman Letter as making a substantive change to section 1903.8(c) without notice-and-comment rulemaking procedures. *NFIB*, 2017 WL 1194666 at *11. Following that decision, OSHA rescinded the Sallman Letter. OSHA Memorandum, Rescission of February 21, 2013 Letter (April 25, 2017), https://www.regulations.gov/document/OSHA-2023-0008-0006.

## II.     The Walkaround Rule

On August 30, 2023, OSHA initiated a rulemaking to clarify who may accompany CSHOs on walkaround inspections as representatives authorized by employees. 88 Fed. Reg. 59,825. OSHA proposed changes to clarify that (1) representatives authorized by employees may be employees of the employer or third parties, and (2) authorized third parties are not limited to the two examples included in the 1971 regulation (industrial hygienists and safety engineers) but may have a range of skills, knowledge, or experience that could aid the CSHO's inspection. *Id.* at 59,826, 59,829–31.

After receiving and considering comments on the proposed rule, on April 1, 2024, OSHA issued the Walkaround Rule, 89 Fed. Reg. 22,558, which revised section 1903.8(c) to state, in full:

> The representative(s) authorized by employees may be an employee of the employer or a third party. When the representative(s) authorized by employees is not an employee of the employer, they may accompany the [CSHO] during the inspection if, in the judgment of the [CSHO], good cause has been shown why accompaniment by a third party is reasonably necessary to the conduct of an effective and thorough physical inspection of the workplace (including but not limited to because of their relevant knowledge, skills, or experience with hazards or conditions in the workplace or similar workplaces, or language or communication skills).

89 Fed. Reg. at 22,601. OSHA explained that the regulation is consistent with the OSH Act, *e.g.*, *id.*

at 22,560–62, 22,586–87, and other OSHA regulations, *id.* at 22,587–88, and addressed the various concerns raised by commenters, including that the regulation was unconstitutional, *id.* at 22,562–63, 22,577–81, and conflicted with the NLRA. *Id.* at 22,581–83.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) requires dismissal where the court lacks jurisdiction. It is "presume[d] that federal courts lack jurisdiction," and therefore plaintiffs "carry the burden of establishing" it, including standing. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 & n.3 (2006). Where the court has jurisdiction, "[s]ummary judgment is [the] appropriate procedure for resolving a challenge to a federal agency's administrative decision when review is based upon the administrative record, even though the Court does not employ the standard of review set forth in the rule governing summary judgment motions." *Larson v. Geren*, No. 08-CA-722, 2010 WL 11542078, at *4 (W.D. Tex. Apr. 14, 2010) (quotation marks omitted), *aff'd*, 432 F. App'x 356 (5th Cir. 2011). Under the APA, an agency action may not be set aside unless it is "arbitrary," "capricious," "not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. § 706.

## ARGUMENT

### I.    Plaintiffs Lack Standing to Challenge the Walkaround Rule

Because courts do not "operate as an open forum for citizens to press general complaints about the way in which government goes about its business," a plaintiff "must have a personal stake in the dispute." *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 379 (2024) (quotation marks omitted). To demonstrate that stake and satisfy Article III standing, a plaintiff "bears the burden of establishing" that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). These "are not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). A membership organization seeking to establish associational standing must demonstrate that "(a) its

6

members would otherwise have [Article III] standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 343 (5th Cir. 2012) (quotation marks omitted).

"An injury in fact must be 'concrete,' meaning that it must be real and not abstract," and "must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." *Alliance*, 602 U.S. at 381. A "threatened injury must be certainly impending," and "[a]llegations of *possible* future injury are not sufficient." *Crane v. Johnson*, 783 F.3d 244, 251–52 (5th Cir. 2015) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). As to the traceability and redressability prongs of standing—causation—a plaintiff "generally cannot 'rely on speculation about the unfettered choices made by independent actors not before the courts.'" *Alliance*, 602 at 383 (quoting *Clapper*, 568 U.S. at 415 n.5). The causation requirement thus "precludes speculative links—that is, where it is not sufficiently predictable how third parties would react to government action or cause downstream injury to plaintiffs." *Id.*

These threshold requirements are no less stringent when an association seeks to sue on behalf of its members and cannot be satisfied by showing "a statistical probability that some of [a plaintiff organization's] members are threatened with concrete injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009). Plaintiffs here *at most* demonstrate a "statistical probability" that some of its (unknown or unidentified) members may one day be "threatened with concrete injury" resulting from a highly speculative and attenuated chain of causation. *Id.* This does not suffice.

As a threshold matter, the Walkaround Rule does not directly regulate Plaintiffs' members. Rather, it addresses the scope of *employees'* right to designate a representative for OSHA inspections. The Rule does not create or alter any legal requirements for employers, and does not require compliance by employers. 89 Fed. Reg. at 22,593. Indeed, the Rule does not change the legal

7

landscape for employers or employees at all; it merely clarifies a preexisting and longstanding agency policy. Where, as here, "the plaintiff is not himself the object of the government action or inaction he challenges, standing is . . . ordinarily substantially more difficult to establish." *Contender Farms, LLP v. U.S. Dep't of Agric.*, 779 F.3d 258, 264 (5th Cir. 2015) (quoting *Lujan*, 504 U.S. at 562); *see also Tex. Indep. Producers & Royalty Owners Ass'n v. EPA*, 413 F.3d 479, 482 (5th Cir. 2005) (pre-enforcement review of regulation permissible "only after finding that the regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance" (quotation marks omitted)).

With Plaintiffs' motion, each Plaintiff organization provided a declaration identifying a similar theory of injury—they have unknown members whose workplaces OSHA may one day inspect, for which employees might authorize third-party representatives—albeit with varying levels of support. *See* App. to Pls.' Mot. for Summ. J., ECF No. 31-1 ("App."). All fall far short of identifying a single member of any of their organizations that is threatened by injury that is "*certainly* impending," not merely a "*possible* future injury." *Clapper*, 568 U.S. at 401, 409, 411.

Plaintiffs assert that they each have members whose facilities have undergone OSHA inspections in the past.[2] But across all twelve Plaintiff organizations, Plaintiffs identify only *two* members that have ever undergone OSHA inspections involving a third-party employee representative: Professional Janitorial Services, Inc. (PJS), between October 2013 and February 2014, and LeBus International Inc., on an unspecified date. *See* App. at A058–59 (National Association of Manufacturers (NAM) for PJS), A070 (NFIB for PJC), A015 (Longview Chamber for LeBus). But Plaintiffs do not allege that those members suffered any injury from the presence of nonemployee representatives. And, in any event, "[p]ast exposure to illegal conduct does not in itself show a

---

[2] The International Franchise Association and National Retail Federation fail to identify a single member *at all*. That failure alone requires dismissal of these Plaintiffs. *See, e.g.*, *Summers*, 555 U.S. at 498 (requiring, among other things, "at least one *identified* member" (emphasis added)).

present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Funeral Consumers*, 695 F.3d at 344 (quoting *Lujan,* 504 U.S. at 564).

Instead, Plaintiffs' theory of injury rests on the potential risk that each Plaintiff organization will have some member, at some point "in the future," App. at A003, who could "potentially fac[e] sanctions—including contempt of court—if they refuse to allow third-party access to their worksites during OSHA walkaround inspections," App. at A004. But an injury in fact "must be an invasion of a legally protected interest," *Lujan*, 504 U.S. at 560, and Plaintiffs do not have a legally protected interest in disobeying a warrant obtained from a federal court. Moreover, this "potential[]" injury depends on a highly speculative chain of possible events. In an ordinary inspection, the claimed injury would occur only if (1) a Plaintiff member-employer's business is one of the 0.43% of all workplaces nationwide chosen for inspection in a given year, *see* 89 Fed. Reg. at 22,595 n.4; (2) the employees at the worksite choose a nonemployee representative; (3) the CSHO determines that the nonemployee representative is reasonably necessary to the inspection; (4) the employer objects to the presence of the nonemployee representative; (5) consistent with OSHA regulations, the CSHO terminates the inspection and reports it to the OSHA area director; (6) the area director consults with the Department of Labor's regional solicitor; (7) the regional solicitor seeks a warrant for OSHA to access the employer's worksite; (8) a federal district court issues the warrant; (9) the employer files a motion to quash the warrant; (10) the court denies the motion to quash; (11) the employer prevents OSHA from accessing the worksite pursuant to the warrant; and (12) the court holds the employer in contempt and imposes sanctions on the employer.[3] In rare instances, OSHA

---

[3] As Plaintiffs appear to recognize, *e.g.*, App. at A004, OSHA does not have the authority to issue citations or penalties to an employer for refusing to grant OSHA access to its worksite for the purpose of an inspection. *See generally* 29 U.S.C. § 666. In the event of such a refusal, OSHA's regulations instruct the compliance officer to terminate the inspection and report the refusal to the area director, who shall consult with the regional solicitor, and determine whether compulsory process (i.e., a warrant) is necessary. 29 C.F.R. § 1903.4(a).

9

may obtain a warrant before it attempts to inspect a workplace, *see* 29 C.F.R. § 1903.4(b); Pls.' Mot. at 3, but OSHA's use of that process is highly unlikely to occur as to any particular workplace, and Plaintiffs' hypothetical injury would still require the employees to choose a nonemployee representative, the CSHO to determine that their accompaniment is reasonably necessary to the inspection, and a federal court to issue such a warrant.[4]

That Plaintiffs fail to identify a single instance of this *ever* occurring to a member of even one of their organizations only emphasizes the purely hypothetical nature of their claimed injury. *Cf. City of L.A. v. Lyons*, 461 U.S. 95, 102–03 (1983) (no standing where prospect of future injury rested on the likelihood that plaintiff would again be stopped by the police who would again illegally choke him). Far from being "imminent" or "certainly impending," this theory of injury is entirely speculative. *See Lujan*, 504 U.S. at 560, 567 n.3; *Clapper*, 568 U.S. at 408, 414 n.5. Even if Plaintiffs could demonstrate a statistical likelihood that such an attenuated chain of events would occur to some of their members, these possible future events are "too speculative to satisfy the well-established requirement that threatened injury must be certainly impending." *Clapper*, 568 U.S. at 401; *id.* at 410 (rejecting probabilistic approach to future injury based on "objectively reasonable likelihood" that named plaintiffs would suffer injury from challenged policy as "inconsistent with [the] requirement that threatened injury must be certainly impending" (quotation marks omitted)).

Further underscoring the hypothetical nature of their claimed injury, nine of the twelve Plaintiff organizations fail to identify a single member that has a facility that has ever undergone an OSHA inspection with a third-party employee representative. *See* App. at A002–06, A008–12, A021–25, A027–32, A034–42, A044–48, A050–55, A063–67, A077–82. And five of those identify no member that has *ever* had an OSHA inspection at all. *See* App. at A027–32, A044–48, A050–55,

---

[4] For similar reasons, Plaintiffs' theory of "downstream injury" that depends on, among other things, "how third parties would react to government action" likewise fails the causation requirement for Article III standing. *Alliance*, 602 at 383.

A063–67, A077–82.[5]

Nor do Plaintiffs' claimed compliance costs suffice to establish standing. *E.g.*, App. at A045–47. As explained, Plaintiffs' members are not "object[s]" of the regulation. *Lujan*, 504 U.S. at 562. The Rule requires no action by any employer and thus requires no compliance. Although "some employers may decide to undertake actions not directly required to comply with [the Rule], the revisions impose no new direct cost burden on employers." 89 Fed. Reg. at 22,593. Any claimed compliance costs incurred are therefore necessarily voluntary, and "standing cannot be conferred by a self-inflicted injury." *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018); *see Clapper*, 568 U.S. at 416 ("[R]espondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.").

Plaintiffs thus fail to "show a predictable chain of events leading from the government action to the asserted injury." *Alliance*, 602 U.S. at 385. Rather, they have shown, at most, a "*possible future injury*" to members. *Clapper*, 568 U.S. at 409, 411. That is not enough for Article III standing.

## II.    Defendants Are Entitled to Summary Judgment on Plaintiffs' APA and Constitutional Claims

### A.  The Walkaround Rule is consistent with OSHA's statutory authority

**1.** Because Plaintiffs bring a facial challenge to the Walkaround Rule, "they must establish that no set of circumstances exists under which the [Rule] would be valid." *Associated Builders & Contractors of Tex., Inc. v. NLRB*, 826 F.3d 215, 220 (5th Cir. 2016) (quotation marks omitted)

---

[5] If the Court were to somehow find that NAM and NFIB, unlike all other Plaintiffs, have shown injury in fact based on their more detailed allegations that member PJS has undergone OSHA inspections involving a third-party representative in the past—and it should not, for all the reasons explained—then the Court should dismiss all other Plaintiffs from this suit and then dismiss this case for lack of venue, or at the least transfer it to the U.S. District Court for the District of Columbia. *See* 28 U.S.C. § 1391(e)(1). Without Plaintiff Waco Chamber of Commerce, there is no basis for venue in this district. *See* Compl. ¶ 17, ECF No. 1 (relying on Plaintiff Waco Chamber of Commerce for venue under 28 U.S.C. § 1391(e)(1)(C)); App. at A057, ¶ 2 (NAM is located in Washington, D.C.), A069, ¶ 2 (NFIB is located in Washington, D.C.).

(collecting cases). Plaintiffs do not even attempt to make that showing. Instead, Plaintiffs argue that section 8(e) of the OSH Act provides that employees at unionized workplaces shall only have the opportunity to have their designated collective bargaining agent (under the NLRA) accompany CSHOs during walkaround inspections. Pls.' Mot. for Summ. J. at 3, 10, 15, ECF No. 31. Plaintiffs thus concede that the Rule would be valid in its application to circumstances where unionized employees choose to have their collective bargaining agent serve as their walkaround representative.

Plaintiffs' facial challenge fails for the additional reason that the Rule gives CSHOs the discretion to accept or decline the accompaniment of any authorized third-party representative depending on whether their accompaniment is reasonably necessary to a thorough and effective inspection. 29 C.F.R. § 1903.8(c). Where an administrative rule turns on a discretionary decision by an agency decisionmaker, that discretion "effectively precludes" a facial challenge to the validity of the regulation. *Associated Builders*, 826 F.3d at 227; *accord Chamber of Com. of the U.S. v. NLRB*, 118 F. Supp. 3d 171, 206–07 (D.C. Cir. 2015). Because CSHOs may exercise their discretion under section 1903.8(c) in a manner that Plaintiffs would agree is consistent with section 8(e) of the Act (e.g., by allowing employees' collective bargaining agent under the NLRA to represent employees at a unionized workplace, or by declining—as not reasonably necessary to a thorough and effective inspection—to allow another party to serve as the employees' walkaround representative), Plaintiffs cannot establish that the regulation is invalid "in every set of circumstances." *Associated Builders*, 826 F.3d at 227. Accordingly, Plaintiffs' facial challenge fails.

**2.** In any event, as multiple federal court decisions confirm, the revisions to section 1903.8(c) effected by Walkaround Rule are wholly consistent with the text, history, and purpose of section 8(e) of the OSH Act. *See Caterpillar*, 55 F.3d at 338 ("the plain language of § 8(e) permits private parties to accompany OSHA inspectors"); *NFIB*, 2017 WL 1194666, at *12 ("the Act merely provides that the employee's representative must be authorized by the employee," and OSHA's interpretation that

third parties may represent employees during walkaround inspections when the CSHO determines

that their accompaniment would be reasonably necessary to the inspection is "a persuasive and valid

construction of the Act"). The text of section 8(e) places only one limit on who may accompany a

CSHO as "a representative authorized by his employees" during a walkaround inspection: the party

must "aid[] such inspection." 29 U.S.C. § 657(e). Nothing in the text of section 8(e) limits the scope

of employee walkaround representatives to employees at the inspected workplace. And Congress

explicitly delegated authority to the Secretary to issue regulations regarding that provision, including

*who* is a representative authorized by employees for the purposes of walkaround inspections—i.e.,

who may "aid[]" inspections. *Id.* §§ 657(e), 657(g)(2).

Congress thus declined to limit the scope of individuals who could aid an OSHA inspection

as a walkaround representative and instead vested "the Secretary of Labor with authority to

promulgate regulations for resolving this question." S. Rep. at 151; 89 Fed. Reg. at 22,561. Further,

the OSH Act's legislative history confirms that, in doing so, Congress contemplated that employees

could authorize nonemployee third parties to represent them during walkaround inspections. *See*

Staff of Subcomm. on Labor, S. Comm. on Labor and Public Welfare, 92d Cong., Legislative

History of the Occupational Safety and Health Act of 1970, at 1224 (Comm. Print. 1971)

("Subcomm. Rep.") (statement of Rep. Scherle) ("The bill provides that *union representatives or any*

*employee representative* be allowed to accompany inspectors on their plant tours[.]" (emphasis added)).

Consistent with this understanding, federal courts considering the question have uniformly

interpreted both section 8(e) of the OSH Act and a parallel provision of the Mine Act to encompass

third-party employee-authorized representatives. *See, e.g.*, *Caterpillar*, 55 F.3d at 338 (interpreting 29

U.S.C. § 657(e)); *NFIB*, 2017 WL 1194666, at *11 (same). The Mine Act contains substantially

similar language providing for employer- and employee-authorized representatives during

walkaround inspections of mines, 30 U.S.C. § 813(f), which courts have long understood "does not,

in any way, restrict who may serve as a miners' representative." *U.S. Dep't of Lab. v. Wolf Run Mining Co.*, 452 F.3d 275, 288 (4th Cir. 2006); *see also, e.g.*, *Kerr-McGee Coal Corp. v. FMSHRC*, 40 F.3d 1257, 1260 (D.C. Cir. 1994) ("[t]he [Mine] Act contemplates non-employee third parties serving as miners' representatives" (quotation marks omitted)); *Thunder Basin Coal Co. v. FMSHRC*, 56 F.3d 1275, 1280 (10th Cir. 1995) (finding it permissible under the statute for "a nonemployee union agent to function as a miners' representative" at a nonunionized mine). The Walkaround Rule, which reflects this interpretation, is thus unquestionably a valid exercise of OSHA's authority to regulate employee representation during walkaround inspections. *See also generally Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024) (reaffirming that where, as here, a statute "expressly delegate[s] to an agency the authority to give meaning to a particular statutory term," the "agency is authorized to exercise a degree of discretion." (quotation marks omitted)).

The Walkaround Rule is also consistent with the express purpose of section 8(e): to "aid[] [OSHA's] inspection[s]." 29 U.S.C. § 657(e). "OSHA's ability to carry out workplace inspections is critical to the OSH Act's entire enforcement scheme," 89 Fed. Reg. at 22,560, and Congress included section 8(e) because it considered employee involvement to be necessary for OSHA's walkaround inspections to be thorough and effective, *id.* at 22,559. "[P]ermitting employees to select trusted and knowledgeable representatives of their choice, including third parties, facilitates the CSHO's information gathering during OSHA inspection, which will improve the effectiveness of OSHA inspections and benefit employees' health and safety." 89 Fed. Reg. at 22,572.

For all of these reasons, the Rule is a valid exercise of OSHA's statutory authority.

**3.** Plaintiffs' principal arguments to the contrary are grounded in the incorrect and unsupported premise that Congress *implicitly* "relie[d] on" processes set out in a *different* statute to define the phrase "authorized representative" in section 8(e) of the Act. Pls.' Mot. at 1, 4. Plaintiffs argue that an "authorized representative . . . for the purpose of aiding [an OSHA] inspection" under

14

section 8(e), 29 U.S.C. § 657(e), has the same definition as "exclusive representative[] of all the employees in such unit for the purposes of collective bargaining" under the NLRA, 29 U.S.C. § 159(a). But the two statutes use entirely different terms and have different purposes, and section 8(e) makes no reference to the NLRA. Plaintiffs' radical interpretation not only lacks support in the text of the OSH Act; it also has not been adopted by any authority in the more than 50 years that section 8(e) has been in effect.

As explained, section 8(e) does not limit who can serve a walkaround representative other than requiring that they "aid[] [the] inspection," and delegates to the Secretary authority to regulate the designation of such representatives. 29 U.S.C. § 657(e). If Congress had intended to limit walkaround representation to unionized workplaces or otherwise incorporate any NLRA provisions into section 8(e), it would have explicitly done so; indeed, it *has* explicitly done so in other statutory provisions. *Compare* 29 U.S.C. § 657(e) *with id.* § 661(i) (applying "the provisions of section [11 of the NLRA]" to Occupational Safety and Health Review Commission (OSHRC) proceedings). But neither section 8(e), nor any other provision of section 8, refers to the NLRA or to unions. *Contra* Pls.' Mot. at 8 (suggesting without support that section 8(e) distinguishes between unionized and nonunionized workplaces).

It is meaningful that Congress used the word "authorized" to describe employees' walkaround representative, rather than "exclusive" or another term that might imply a link to the NLRA. As Plaintiffs acknowledge, "authorize" simply means "[t]o empower" or "to give a right or authority to act," *id.* at 9 (quoting *Authorize*, Black's Law Dictionary (4th rev. ed. 1968)), and does not imply a specific process but "ordinarily denotes affirmative enabling action," *id.* (quoting *Cnty. of Washington v. Gunther*, 452 U.S. 161, 169 & n.9 (1981)). Plaintiffs provide no rational basis for their conclusion, based on those definitions, that the use of "authorized" in section 8(e) as applied to employee representatives must refer to an agent of "the union chosen as the employees' 'exclusive

15

representative' pursuant to the NLRA." *Id.* at 10.[6] Section 8(e) also refers to the "authorized representative" of the Secretary, and no one would suggest that the Secretary has an official union agent. It is illogical to suggest that Congress intended "authorized" to create an implicit connection to a different statutory scheme in only two of its four uses in section 8(e). Moreover, crucially, the word "authorized" is not even used in the section of the NLRA that Plaintiffs claim governs the selection of employee walkaround representatives. 29 U.S.C. § 159(a); *contra* Pls.' Mot. at 9–10.

Plaintiffs' attempt to manufacture this nonexistent connection to section 9(a) of the NLRA fails for multiple additional reasons. First, Plaintiffs ignore that Congress expressly delegated to the Secretary authority to regulate the authorization of employee walkaround representatives. 29 U.S.C. § 657(e). Congress would have no reason to delegate to the Secretary authority to resolve "questions [that] may arise as to who shall be considered a duly authorized representative of employees," S. Rep. at 151, if the NLRA's union election process was dispositive of those questions. Moreover, in regulating walkaround representation for over five decades, OSHA has always allowed employees to choose representatives without a formal or "rigid designation process," choosing instead "to provide flexibility for employees' designation process." 89 Fed. Reg. at 22,590.

Second, Plaintiffs' argument finds no support in the text of section 9(a) of the NLRA. That section provides that "[r]epresentatives designated or selected *for the purposes of collective bargaining* by the majority of the employees . . . shall be the exclusive representatives of all the employees in such unit *for the purposes of collective bargaining*." 29 U.S.C. § 159(a) (emphases added). Collective bargaining is a procedure focused on making "a collective agreement between the employer and the accredited representative of his employees." *NLRB v. Boss Mfg. Co.*, 118 F.2d 187, 189 (7th Cir. 1941); *see also Aluminum Ore Co. v. NLRB*, 131 F.2d 485, 487 (7th Cir. 1942) (collective bargaining "contemplates

---

[6] Plaintiffs cite (Pls.' Mot. at 10) *Janus v. AFSCME, Council 31*, 585 U.S. 878 (2018), but *Janus*, which addressed a state law and did not discuss or even cite the OSH Act or the NLRA, is inapposite.

exchange of information . . . and an honest attempt to arrive at an agreement"). By contrast, the purpose of an authorized employee walkaround representative "is to aid OSHA's inspection, not engage in collective bargaining." 89 Fed. Reg. at 22,583. Employee walkaround representatives aid OSHA's inspections by communicating with CSHOs or facilitating employees' communication with CSHOs. *See, e.g.*, S. Rep. at 151 (employee representatives can "aid in the inspection" by "inform[ing] [the CSHO] of alleged hazards"); 89 Fed. Reg. at 22,569–72 (discussing ways that third-party employee representatives may aid OSHA inspections). Employee representatives are not authorized under section 8(e) to engage in collective bargaining with the employer, nor would CSHOs permit them to do so during a walkaround inspection. *See id.* at 22,582–83 (a "walkaround representative will be onsite solely to aid OSHA's inspection" and "[i]f the representative deviates from that role, OSHA's existing regulations afford the CSHO the authority to terminate the representative's accompaniment" (citing 29 C.F.R. § 1903.8(d)). There is thus no connection or conflict between employees' authorization of walkaround representatives under section 8(e) and the NLRA's process for electing unions to represent employees in collective bargaining.[7]

Plaintiffs make much of the fact that the OSH Act does not use the word "authorized" elsewhere in the Act, including to describe the employer's walkaround representative, Pls.' Mot. at 11; employee representatives' right to access certain records regarding workplace incidents, *id.* (citing 29 U.S.C. § 657(c)(3)); or employee representatives' authority to request an inspection, *id.* (citing 29 U.S.C. § 657(f)). From this, Plaintiffs ask the Court to infer that "authorized" in section 8(e) means "a formal delegation must occur pursuant to the NLRA." *Id.* at 10. But a more reasonable interpretation is that Congress included "authorized" in section 8(e) alone to clarify that an

---

[7] Plaintiffs cite (Pls.' Mot. at 12) *United States v. Moss*, 872 F.3d 304, 310 (5th Cir. 2017), which held that two provisions in the same set of Department of the Interior regulations were *in pari materia* and must therefore be read together. *Moss* does not support Plaintiffs' argument that the Court should rewrite section 8(e) if it could hypothetically cause conflict with the NLRA. Moreover, the NLRA and OSH Act were promulgated several decades apart and concern different subject matter.

employee walkaround representative must be one that employees have specifically empowered to fulfill that role, and that Congress considered such an emphasis inappropriate or unnecessary when describing an employer's right to a walkaround representative and employee representatives' rights to access exposure records and request inspections. This is reinforced by the lack of any connection between the language and purpose of section 8(e) and that of section 9(a) of the NLRA, which, again, does not contain the word "authorized" at all. 29 U.S.C. § 159(a).[8]

 Nor does section 8(e)'s instruction that OSHA should "consult with a reasonable number of employees concerning matters of health and safety in the workplace" in situations "where there is no authorized employee representative," 29 U.S.C. § 657(e), suggest that Congress intended for that consultation to substitute for walkaround representation at all nonunionized workplaces. *Contra* Pls.' Mot. at 8–9. That unsupported inference is incompatible with the statute's clear command that employees have the opportunity for representatives to accompany CSHOs "during the physical inspection of *any* workplace." 29 U.S.C. § 657(e) (emphasis added). Rather, consistent with that command, Congress included the instruction to consult with a reasonable number of employees to ensure some degree of employee participation in inspections where CSHOs are unable to identify any representatives authorized by employees to accompany them. *See* 29 C.F.R. § 1903.8(b).

 Nor does the legislative history "suggest[] that Congress intended to extend employee

---

[8] The fact that Congress gave OSHA authority to hire experts and consultants in an unrelated section of the OSH Act, 29 U.S.C. § 656(c), neither supports Plaintiffs' reading of the word "authorized" nor limits who can serve as employee walkaround representatives under section 8(e). *Contra* Pls.' Mot. at 4, 5, 7, 12. Likewise irrelevant is the lack of reference to third parties accompanying inspectors in 29 U.S.C. § 664. *See* Pls.' Mot. at 12. Congress broadly required the Secretary to treat trade secrets obtained during "any inspection or proceeding" as confidential, 29 U.S.C. § 664, but otherwise relied on the Secretary to promulgate regulations articulating how that would be accomplished, *see id.* § 657(g)(2); 89 Fed. Reg. at 22,571 (section 1903.9(c) and (d) allow employers "to identify areas in the workplace that contain or might reveal a trade secret" and request that those present for inspection of those areas be limited to "an employee in that area or an employee authorized by the employer to enter that area"). Given Congress's vesting in the Secretary authority to fill in the details of section 664's general command, it is unremarkable that Congress did not mention third-party walkaround representatives in that section of the Act.

accompaniment rights only to unionized workplaces." 89 Fed. Reg. at 22,586; *see Kerr-McGee*, 40 F.3d at 1263 (rejecting claim that analogous Mine Act provision does not permit third-party employee representatives because "if Congress had intended to restrict" the scope of representatives in that manner "it could have done so in the statute or at least mentioned its views in the legislative history"). To the contrary, the legislative history supports that Congress intended section 8(e) to ensure that *all* OSHA walkaround inspections would benefit from "an appropriate degree of involvement of employees," S. Rep. at 151, and understood that employees' walkaround representatives may include employees, union representatives, or other third parties.[9]

Plaintiffs' proffered reading also contravenes the clear purpose of section 8(e), as it would leave CSHOs without the benefit of an employee representative during the vast majority of inspections.[10] Indeed, Congress included a right for *employers* to have representatives accompany CSHOs on walkaround inspections "in the interest of fairness," *Chicago Bridge*, 535 F.2d at 375, yet Plaintiffs' interpretation would afford employers the opportunity to have a representative on *all* walkaround inspections, while limiting that same opportunity to only unionized employees.

That OSHA defined the term "authorized employee representative" in its recordkeeping regulations as "an authorized collective bargaining agent of employees," 29 C.F.R. § 1904.35(b)(2)(i), is irrelevant to what Congress meant by "a representative authorized by his employees" and

---

[9] *See* Subcomm. Rep. at 430 (statement of Sen. Williams) ("no one knows better than the working [person] what the conditions are, where the failures are, where the hazards are, and particularly where there are safety hazards," and stressing the importance of "[t]he opportunity to have the working man himself and a representative of other working men accompanying inspectors"); *id.* at 1224 (statement of Rep. Scherle) ("The bill provides that *union representatives or any employee representative* be allowed to accompany inspectors on their plant tours." (emphasis added)).

[10] Only six percent of private-sector employees in the United States were unionized in 2023, News Release, Bureau of Labor Statistics, U.S. Dep't of Labor, Union Members – 2023, at 2 (Jan. 23, 2024), https://perma.cc/VD5C-PSVV, and many employees that are protected by the OSH Act are exempted from the NLRA, such as "agricultural laborer[s]" and "individual[s] employed as a supervisor," 29 U.S.C. § 152.

(synonymously) "authorized employee representative" in section 8(e). *Contra* Pls.' Mot. at 13. OSHA's recordkeeping regulations are authorized by different sections of the Act (not section 8(e)), *see* 66 Fed. Reg. 5916 (Jan. 19, 2001) (citing 29 U.S.C. §§ 657(c)(1), (2), 673(a)), and OSHA explained in the Walkaround Rule why that definition, promulgated in the specific context of its recordkeeping regulations, differs from its interpretation of section 8(e). 89 Fed. Reg. at 22,588. OSHA has never suggested that its recordkeeping regulations have any relation to its walkaround inspection regulations under section 8(e).

Plaintiffs further contend without support that any hypothetical communication between an employee walkaround representative and the employer during an inspection at a unionized workplace would constitute an unfair labor practice, Pls.' Mot. at 15, but neither of the cases they cite supports that contention.[11] And Plaintiffs selectively quote (Pls.' Mot. at 14) from *Asarco, Inc. v. NLRB*, 86 F.3d 1401, 1412 (5th Cir. 1996), to claim that union agents that are designated employee representatives under NLRA section 9(a) have "the responsibility of attending OSHA inspections." *Asarco* says no such thing; rather, the Fifth Circuit court *rejected* an employee and union agent's claim that his former employer discriminated against him by excluding him from an OSHA inspection, because "[n]othing in the OSHA regulations . . . require[d] [him] to accompany the OSHA representative on an inspection." 86 F.3d at 1412. As explained, it is wholly consistent with the OSH Act and the NLRA for employees to authorize representatives other than collective bargaining agents for walkaround inspections, and for CSHOs to determine on a case-by-case basis whether those representatives would be reasonably necessary to the conduct of a thorough and effective

---

[11] *See NLRB v. Loc. Union No. 103, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, AFL-CIO*, 434 U.S. 335, 338 (1978) (finding unfair labor practice where "an uncertified union not representing a majority of the employees . . . engage[d] in extended picketing in an effort to enforce a prehire agreement with the employer"); *Teamsters Nat'l United Parcel Serv. Negotiating Comm. v. NLRB*, 17 F.3d 1518, 1523 (D.C. Cir. 1994) (holding that historically excluded group of workers could not be accreted in a bargaining unit without showing that a majority of them supported joining the unit).

inspection.[12]

**4.** This Court lacks jurisdiction to consider Plaintiffs' remaining statutory arguments because they extend beyond the narrow scope of the challenged Rule and attack an unaffected regulation. *See, e.g.*, *Am. Fuel & Petrochemical Mfrs. v. EPA*, 937 F.3d 559, 586 (D.C. Cir. 2019) (court lacked jurisdiction to consider challenge to agency policy that was beyond the scope of the rulemaking); *Roosevelt Campobello Int'l Park Comm'n v. EPA*, 684 F.2d 1034, 1039 (1st Cir. 1982) (same).

First, Plaintiffs' argument that section 8(e) does not entitle employees at nonunionized workplaces to a walkaround representative at all, Pls.' Mot. at 3, 10, challenges the guarantee in section 1903.8(a) that employees at *all* workplaces (unionized or nonunionized) will have the opportunity for authorized representatives to accompany CSHOs on walkaround inspections. 29 C.F.R. § 1903.8(a) (providing, in part, that "a representative authorized by his employees shall be given an opportunity to accompany the [CSHO] during the physical inspection of any workplace for the purpose of aiding such inspection"). That existing regulatory provision is unaffected by the Rule, which clarifies the circumstances in which an employee representative may be a nonemployee.

Second, Plaintiffs' argument that section 8(e) does not allow multiple representatives to accompany CSHOs on walkaround inspections, Pls.' Mot. at 16–18, concerns the *number* of representatives—a subject that is addressed not by section 1903.8(c) but by section 1903.8(a). That section provides that a "CSHO may permit additional employer representatives and additional representatives authorized by employees to accompany him where he determines that such

---

[12] Contrary to Plaintiffs' claim that the Rule changed how employee walkaround representatives will be selected at unionized workplaces, Pls.' Mot. at 14–15, OSHA repeatedly explained that its longstanding policy (unchanged by the Rule) is that, at a unionized workplace, "the highest-ranking union official or union employee representative on-site shall designate who will participate as the authorized representative during the walkaround." *E.g.*, 89 Fed. Reg. at 22,582. OSHA also clarified that, consistent with 29 C.F.R. § 1903.8(d), CSHOs always reserve the right to deny accompaniment if the representative chosen by that official would interfere with the inspection, *id.* at 22,575, and, consistent with section 1903.8(a), may permit additional employee representatives to accompany them "if the CSHO determines" that they "will further aid the inspection," *id.* at 22,583.

additional representatives will further aid the inspection." 29 C.F.R. § 1903.8(a). The Walkaround Rule addresses only the *identity*—not the *number*—of those representatives.

Because Plaintiffs' challenges to section 1903.8(a) are beyond the scope of the Walkaround Rule, *see* 88 Fed. Reg. at 59,830 (NPRM) (explaining that the "proposed revisions . . . do not implicate any other limitations found elsewhere in part 1903"), the Court lacks jurisdiction to consider them here. *Am. Fuel*, 937 F.3d at 586.[13]

### B. The Walkaround Rule does not effect any taking of private property

Plaintiffs invoke *Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021), to argue that the Walkaround Rule effects a *per se* physical taking under the Fifth Amendment, but *Cedar Point* is plainly distinguishable. Indeed, the Supreme Court expressly distinguished the takings in *Cedar Point* with "many government-authorized physical invasions," like the inspections at issue here, which pose no Fifth Amendment problem. *Id.* at 160.

**1.** As explained above, to prevail on this facial challenge Plaintiffs "must establish that no set of circumstances exists under which the [Rule] would be valid." *Associated Builders*, 826 F.3d at 220 (quotation marks omitted). Even if the Court were to conclude that some hypothetical applications of the Rule *could* result in unconstitutional takings—and it should not, as discussed below—

---

[13] In any event, the arguments are meritless. Section 8(e) does not preclude employees at nonunionized workplaces from authorizing a walkaround representative; as explained, *supra* section II.A.2, that interpretation would be inconsistent with the text, history, and purpose of the Act. Further, Congress expressly delegated the authority to regulate the accompaniment of CSHOs during walkaround inspections, 29 U.S.C. § 657(e), and OSHA's resulting regulation providing that CSHOs may permit more than one individual to represent employers or employees during an inspection is wholly consistent with section 8(e). Generally, statutory "words importing the singular include and apply to several persons, parties, or things." 1 U.S.C. § 1. Given that the express purpose of section 8(e) is to aid OSHA inspections, section 8(e)'s guarantee that the employer and employees will have the opportunity for "a" representative to accompany the CSHO is best understood as an assurance that each party may designate *at least one* representative to accompany the CSHO, provided that the representative's accompaniment will "aid[] such inspection." 29 U.S.C. § 657(e); *see also, e.g.*, Subcomm. Rep. at 1224 (statement of Rep. Scherle) (observing that "union representatives" (plural) would "be allowed to accompany inspectors on their plant tours").

Plaintiffs' facial challenge nonetheless fails because they have not shown that the Rule would cause an uncompensated taking in *all* of its applications. *Id.* On the contrary, Plaintiffs appear to recognize that OSHA inspections are generally lawful and take issue only with the potential presence of third-party employee-authorized representatives during a fraction of all inspections. *See* Pls.' Mot. at 24. They impliedly concede that no taking would occur, for example, where employees authorize a fellow employee to serve as their walkaround representative, or where a CSHO declines the accompaniment of an authorized third-party representative because it would not be reasonably necessary to the inspection. Moreover, because the accompaniment of a third-party representative hinges on a discretionary decision of the CSHO, it is effectively impossible for Plaintiffs to establish that the regulation would be unconstitutional "in every set of circumstances." *Associated Builders*, 826 F.3d at 227. Plaintiffs' facial challenge to the Rule under Fifth Amendment therefore fails.

**2.** In any event, the Rule is constitutionally permissible under *Cedar Point.* That case "involved a California regulation that granted to labor organizations a 'right to take access to an agricultural employer's property' . . . for up to three hours per day, 120 days per year," for the purpose of "'solicit[ing] support for unionization.'" *Golden Glow Tanning Salon, Inc. v. City of Columbus*, 52 F.4th 974, 981 (5th Cir. 2022) (quoting *Cedar* Point, 594 U.S. at 143), *cert. denied*, 143 S. Ct. 1085 (2023). The Supreme Court held that this "right to take access" constituted a "*per se* physical taking" because it appropriated "for the enjoyment of third parties the owners' right to exclude." *Cedar Point*, 594 U.S. at 149. But the Court was careful to explain that this principle is not without exception. In particular, it emphasized that "many government-authorized physical invasions will not amount to takings because they are consistent with longstanding background restrictions on property rights." *Id.* at 160. Such "background limitations also encompass traditional common law privileges to access private property." *Id.* Crucially here, "[b]ecause a property owner traditionally had no right to exclude an official engaged in a reasonable search, government searches that are consistent with the

Fourth Amendment and state law cannot be said to take any property right from landowners." *Id.* at 161 (citation omitted).

The Rule fits neatly within this exception. OSHA regulations ensure that OSHA inspections comport with Fourth Amendment protections against "unreasonable search and seizure." U.S. Const. amend. IV. To wit, if an employer objects to an OSHA inspection, OSHA must show administrative probable cause and obtain a warrant to proceed with the inspection. *See* 29 C.F.R. § 1903.4; *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 320–21 (1978). Further, whether an inspection is conducted with employer consent or pursuant to a warrant, OSHA is required to carry out the inspection in a reasonable manner, under both the Fourth Amendment and the OSH Act. *See* 29 U.S.C. § 657(a)(2) (requiring that OSHA inspections occur at "reasonable times, and within reasonable limits and in a reasonable manner"). And where the government has shown probable cause to obtain a search warrant and acted within the scope of that warrant, the search is presumptively reasonable. *See United States v. Leon*, 468 U.S. 897, 922 (1984).

The Walkaround Rule does not alter the constitutionality of OSHA inspections. The Rule allows an authorized third-party employee representative to "accompany" a CSHO if the official determines that such representative is "reasonably necessary to the conduct of an effective and thorough physical inspection," and the representative may accompany the CSHO *only* for that purpose. 29 C.F.R. § 1903.8(c). And authorized representatives do not themselves conduct any inspections, nor can they use inspections for their own purposes. *See* 89 Fed. Reg. at 22,582–83. OSHA's regulations further safeguard the reasonableness of inspections—including those with a third-party employee representative. *See, e.g.*, 29 C.F.R. § 1903.8(c) (good cause requirement for third party); *id.* § 1903.8(b), (d) (CSHO has authority to resolve all disputes regarding who the authorized representatives are and to "deny the right of accompaniment" to anyone "whose conduct interferes with a fair and orderly inspection"); *id.* § 1903.7(d) ("The conduct of inspections shall be such as to

preclude unreasonable disruption of the operations of the employer's establishment."); *id.*

§ 1903.9(c), (d) (allowing employer to "identify areas" with sensitive information to prevent

disclosure of trade secrets and to exclude employee representatives from those areas).

Ignoring these realities, Plaintiffs urge this Court to construe the OSH Act "narrowly" to

exclude the use of any third-party employee-authorized representative, Pls.' Mot. at 23–24, but such

is not compelled by *Cedar Point* or other Takings Clause precedents.[14] The Supreme Court did not

identify a constitutional distinction between takings by the government and government-authorized

takings by particular third parties; rather, it stated that the Takings Clause is implicated when the

government "appropriate[es] private property *for itself or a third party*" for a public use. *Cedar Point*, 594

U.S. at 147–48 (emphasis added). The presence of a third-party authorized employee representative,

therefore, does not alone affect the constitutionality of an inspection. And the Court said nothing to

suggest that "background restrictions on property rights," including lawful searches and safety

inspections, become constitutionally irrelevant by the presence of third parties who act within the

scope of the government's lawful purpose. *Id.* at 160.

Indeed, federal courts have confirmed that the presence of a civilian to aid a law

enforcement search does not render an otherwise lawful government search unreasonable under the

Fourth Amendment, where the civilian provides necessary assistance and does not exceed the scope

of police authority. *See, e.g.*, *United States v. Sparks*, 265 F.3d 825, 831 (9th Cir. 2001), *overruled on other*

*grounds by United States v. Grisel*, 488 F.3d 844 (9th Cir. 2007); *Bellville v. Town of Northboro*, 375 F.3d 25,

32 (1st Cir. 2004) (explaining that "Congress has explicitly authorized the practice, *see* 18 U.S.C.

§ 3105 ('A search warrant may in all cases be served by any of the officers mentioned in its

---

[14] Further, it is difficult to square Plaintiffs' contention that the presence of *any* nonemployee
accompanying a CSHO on an inspection would effect an unconstitutional taking, Pls.' Mot. at 23–
24, with its argument that Congress intended OSHA to hire "experts and consultants" pursuant to
29 U.S.C. § 656(c)(2) to aid CSHOs on inspections, *see, e.g.*, Pls.' Mot. at 12.

direction . . . , but by no other person, except in aid of the officer on his requiring it, he being present and acting in its execution.'), and courts have repeatedly upheld the practice" (collecting cases)); *Bills v. Aseltine*, 958 F.2d 697, 703 (6th Cir. 1992) (third party's entry onto private property of warrant subject may have been "justified if he had been present to assist the local officers").

Plaintiffs argue that *Wilson v. Layne*, 526 U.S. 603 (1999), undermines this conclusion, Pls.' Mot. at 22, but that case provides a useful contrast to the above-cited cases and to the circumstances allowed under the Rule. In *Wilson*, the Supreme Court found a Fourth Amendment violation where law enforcement officers invited reporters to join them in the execution of arrest warrants at a suspect's residence, *not* to assist the officers but to "work[] on a story for their own purposes." 526 U.S. at 607, 613. No analogous circumstance is permitted under the Walkaround Rule, which strictly limits third-party representatives to individuals authorized by employees, for the limited purpose of aiding CSHOs during inspections, and only when CSHOs determine their accompaniment to be "reasonably necessary." *E.g.*, 89 Fed. Reg. 22,576–77 (explaining the limited role of an authorized third-party employee representative to "accompany the CSHO for the purpose of aiding OSHA's physical inspection of the workplace"). Although "it is a violation of the Fourth Amendment for police to bring members of the media or other third parties into a home during the execution of a warrant when the presence of the third parties in the home [is] not in aid of the execution of the warrant," *Mason v. Barbieri*, 338 F. App'x 94, 95 (2d Cir. 2009) (quoting *Wilson*, 526 U.S. at 614), "the presence of a third party who is *assisting authorized officers in their search* does not violate the Fourth Amendment's reasonableness requirement," *id.* at 95–96 (quotation marks omitted).

The Walkaround Rule thus provides for inspections conducted consistent with the Fourth Amendment, which clearly fall within *Cedar Point*'s explicit exception for "traditional common law privileges to access private property," including "government searches that are consistent with the Fourth Amendment," 594 U.S. at 161–62; *see also id.* at 162 (emphasizing that "unlike standard health

and safety inspections," California law at issue was "not germane to . . . any risk posed to the public"). Accordingly, the Rule does not offend the Fifth Amendment Takings Clause.

### C.  The Walkaround Rule is not arbitrary or capricious

Plaintiffs next challenge the Walkaround Rule as arbitrary and capricious, but they fail to show that OSHA's action was not "reasonable and reasonably explained"—which is all that is required under the APA's "narrow and highly deferential" arbitrary-and-capricious standard of review. *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 433, 449 (5th Cir. 2021) (quotation marks omitted). That standard requires simply that the agency "has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). "[A] court is not to substitute its judgment for that of the agency," and "should uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513–14 (2009) (quotation marks omitted). The Rule readily satisfies this standard.

**1.** First, Plaintiffs wrongly accuse OSHA of failing to acknowledge a "policy change," but as the agency explained, the Rule reflects a "clarifi[cation] that consistent with Section 8(e) of the OSH Act, employee representatives may either be an employee of the employer or a third party." 89 Fed. Reg. 22,559. The administrative record supports this; "[s]everal commenters provided examples of third-party representatives who accompanied OSHA on walkaround inspections," including one commenter who served "as a third-party employee walkaround representative accompanying CSHOs on inspections of health care facilities in the 1980s." *Id.* at 22,589. Plaintiffs elsewhere recognize that the interpretation of section 8(e) reflected in the Rule has been OSHA's policy since before the challenged Rule's promulgation, as demonstrated by their own declarations. *See* App. at A015, A059. And, although the Rule changed the language of the previous regulation, the agency addressed the reasons for that change at length. In particular, OSHA changed the regulatory

language in response to a federal court's 2017 decision that although OSHA's interpretation of section 1903.8(c) was "a persuasive and valid construction of the Act," it was not consistent with the existing regulation. *NFIB*, 2017 WL 1194666, at *12; *see* 89 Fed. Reg. at 22,559–60.

Plaintiffs also attempt to cast the Rule as departing from the definitions of "authorized employee representative" in two *different* regulations. *See* Pls.' Mot. at 25. But even if distinctions between different regulations could be construed as a policy change—and they are not—the agency more than adequately addressed those differences in the Rule. *See* 89 Fed. Reg. at 22,588. One of the regulations Plaintiffs invoke was promulgated pursuant to different provisions of the OSH Act and addresses recordkeeping and reporting. 29 C.F.R. § 1904.35(b)(2)(i); *see* 29 U.S.C. § 657(c). As OSHA explained, that regulation defines the term "authorized employee representative" differently from the Walkaround Rule because it "implicate[s] different regulatory, compliance, and privacy interests." 89 Fed. Reg. at 22,588. The other cited regulation, 29 C.F.R. § 2200.1(g), is not an OSHA regulation at all but a regulation of the OSHRC, an independent adjudicative body that is not part of the Department of Labor and which promulgates procedural rules under 29 U.S.C. § 661(g), only as necessary "for the orderly transaction of its [adjudicatory] proceedings." 89 Fed. Reg. at 22,588. That regulation has no bearing on OSHA's interpretation of section 8(e) of the OSH Act.

**2.** Next, Plaintiffs wrongly characterize the discretion afforded to CSHOs under the Rule as a "fail[ure] to consider" aspects of the "walkaround problem." Pls.' Mot. at 26. But the agency's reasoned decision to afford CSHOs discretion in certain aspects does not amount to a failure to consider those aspects. *See, e.g.*, 89 Fed. Reg. at 22,575 ("CSHOs have the expertise and judgment necessary to determine, on an inspection-by-inspection basis, whether a third party will aid OSHA's inspection."). Plaintiffs may not have made the same policy choice that OSHA made, but any contention that OSHA "entirely failed to consider an important aspect of the problem" is belied by the Rule, which thoroughly addresses each aspect that Plaintiffs reference. *Motor Vehicle Mfrs. Ass'n of*

*U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Plaintiffs contend that OSHA did not address their fear of "disclosure of confidential business information to third parties," Pls.' Mot. at 26, but OSHA explained why it "disagrees . . . that the protection of trade secrets or other confidential business information outweighs the need for third parties," and described the safeguards in place to protect confidential business information, 89 Fed. Reg. at 22,571. Under existing regulations, for example, employers may identify areas of the workplace that may reveal trade secrets and request that walkaround representatives are excluded from such areas and from any information obtained therein, and CSHOs must abide by such requests absent "clear reason to question" the identification. 29 C.F.R. § 1903.9(c). Further, employers are not precluded from voluntarily using nondisclosure agreements. *See* 89 Fed. Reg. at 22,596.

Further, Plaintiffs complain that OSHA did not set a "maximum number of third-party employee representatives permitted to accompany an inspection," Pls.' Mot. at 26, but—as explained, *supra* section II.A.4—that complaint falls outside the scope of the Walkaround Rule. Section 1903.8(a)—not section 1903.8(c)—allows a CSHO to "permit . . . additional representatives authorized by employees to accompany him where he determines that such additional representatives will further aid the inspection." 29 C.F.R. § 1903.8(a). Moreover, the number of employee-authorized representatives is necessarily limited by their purpose of "aid[ing] the inspection." *Id.*; *contra* Pls.' Mot. at 27 (imagining an implausible "parade of third parties" as authorized representatives). Even so, OSHA considered and responded at length to such concerns raised by commenters in the Rule. 89 Fed. Reg. at 22,590–91.

Plaintiffs vaguely accuse OSHA of failing to consider "workplace disruptions created by expanding employee walkaround rights," Pls.' Mot. at 26, but—as explained, *supra* section II.A.3— the Rule did not "expand[]" such rights. In any event, OSHA explained why "concerns about the

CSHOs' ability to address potential interference or disruptions to the workplace are unfounded." 89 Fed. Reg. at 22,592.[15] OSHA cited CSHOs' "extensive experience," including with "handling any interference or disruptions" to inspections, and the OSHA Field Operation Manual's guidance on how to handle such matters. *Id.* OSHA assured that CSHOs "will set ground rules" for each inspection and advise all employee representatives "that, during the inspection, matters unrelated to the inspection shall not be discussed with employees." *Id.* Moreover, recognizing that it cannot "anticipate and categorize every type of conduct," OSHA stated its intent to "issue further guidance to the extent specific issues arise." *Id.*; *see also Frequently Asked Questions: Worker Walkaround Designation Process (Walkaround) Rule*, OSHA, https://www.osha.gov/worker-walkaround/final-rule/faq (addressing many of the issues raised by the rulemaking).

Although Plaintiffs take issue with OSHA's decision not to "adopt specific procedures" for employees to select their authorized representatives, Pls.' Mot. at 26 (quoting 89 Fed. Reg. at 22,590), they do not argue that OSHA "failed to consider" this aspect, *State Farm*, 463 U.S. at 43. Nor could they, for OSHA explained that it "has never had a rigid designation process" and "has long permitted nonemployees to serve" as authorized representatives, yet it has never "encountered issues with the ways employees may authorize their representative." 89 Fed. Reg. at 22,590. OSHA concluded that it was better to preserve the historically adequate "flexibility" in that process rather than impose a solution in search of a problem. *Id.*

**3.** Plaintiffs additionally accuse OSHA of failing to consider their preferred "alternative[]" to OSHA's chosen policy. Pls.' Mot. at 27. "[W]hen an agency *rescinds a prior policy* its reasoned analysis must consider the 'alternative[s]' that are 'within the ambit of the existing [policy].'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) (quoting *State Farm*, 463 U.S. at 51). But, as

---

[15] Plaintiffs' cherry-picked language, "beyond the scope of this rulemaking," Pls.' Mot. at 26 (quoting 89 Fed. Reg. at 22,589), is from elsewhere in the Rule and unrelated to their purported concern.

explained, *supra* section II.C.1, the Rule does not effect a policy change. Moreover, Plaintiffs'

preferred course is not an "alternative[] . . . within the ambit of the existing [policy]." *Id.* (quoting

*State Farm*, 463 U.S. at 51). Plaintiffs cite a different statutory provision that allows OSHA to

"employ experts and consultants" in the course of its work, 29 U.S.C. § 656(c), and point out that

OSHA may retain expert assistance to accompany CSHOs during inspections when needed. But this

does not fall within the "ambit" of the Rule, which addresses "authorized employee

representative[s]" under section 8(e). 29 U.S.C. § 657(e). Experts cannot be employed by the

government to fill the role of *employee-authorized* representatives, and it would be impracticable—if

not impossible—for OSHA to employ individuals who have expertise in every kind of workplace

across the country that may be subject to inspection at some point. To the extent that employees'

representatives sometimes provide expertise, employees are often in a better position to identify

such representatives. *See* 89 Fed. Reg. at 22,571. In addition, third-party employee-authorized

representatives may aid inspection in any of multiple potential ways and are not limited to hired

technical experts. *See, e.g.*, 89 Fed. Reg. at 22,569–70 (explaining that employees are more likely to

"trust" an employee-designated interpreter more than "bilingual CSHOs" or "hire[d] outside

interpreters" and will, "as a result, be more willing to provide information").

    **4.** Plaintiffs also raise various disagreements with OSHA's final economic analysis. Across

six pages of the Rule, OSHA detailed the reasoning behind its topline conclusion "that, while [the

Rule] may impose societal costs and that some employers may decide to undertake actions not

directly required to comply with any requirements in this rule, the revisions impose no new direct

cost burden on employers." *Id.* at 22,593. Plaintiffs do not seriously contest this conclusion.[16]

Instead, they complain about various such voluntary actions that employers may choose to

---

[16] Nor do Plaintiffs substantively dispute OSHA's estimation that familiarization with the Rule's
revisions to section 1903.8(c) would cost, at most, $5 per employer. *See* 89 Fed. Reg. at 22,594.

undertake and their associated costs. Although none of their hypothetical concerns constitute direct costs of the Rule, OSHA thoroughly responded to each of them (and others) in the rulemaking.

First, Plaintiffs accuse OSHA of "ignor[ing] the cost of taking employers' property rights," Pls.' Mot. at 28, but the Rule does not effect a taking of any employer's property rights, as thoroughly explained in the Rule and above, *see supra* section II.B.

Second, OSHA addressed each of the various voluntary actions that Plaintiffs claim that some employers may take in anticipation of the rare possibility that OSHA initiates an inspection of their workplace, their employees authorize a third-party representative, and the CSHO determines such representative is reasonably necessary to an effective inspection. Plaintiffs speculate that employers should want to "train" or "brief" third-party representatives. Pls.' Mot. at 28. But OSHA made clear that "the employer has no obligation to train those individuals." 89 Fed. Reg. at 22,594. And, as explained in the Rule, any employer that has its own policy or rule that third parties "participate in a safety briefing before entering a jobsite" would give any such briefing to the CSHO, and "there would be no further cost to [the] employer to have an additional visitor present" during the briefing. *Id.* Plaintiffs next contend that some employers "may have duties to provide or ensure the effectiveness of PPE for visitors on their worksites." Pls.' Mot. at 29. But OSHA explained that any such duty would not result from the Rule but from the employer's *own* policies, and as a practical matter, based on OSHA's experience, "it is likely that they would have extra PPE available for visitors in accordance with their own policies." 89 Fed. Reg. at 22,595. If the employer does not have PPE available for the third-party representative, OSHA explained, then "the third party would need to supply their own PPE," and if they have none, then "the representative would be unable to accompany the CSHO in any area where PPE is required." *Id.* The Rule thus occasions no PPE cost to the employer. Third, Plaintiffs insist that "employers will have to update handbooks, policies, and other practices" to account for purported "legal and other risks" from the Rule. Pls.' Mot. at 29. In

response to such concerns, OSHA reiterated that the Rule effects no policy change but "clarifies longstanding OSHA practice," thus "creat[ing] no new obligations for employers," no new risks, and no need to revise any existing policies or procedures. 89 Fed. Reg. at 22,595.

Third, Plaintiffs generally criticize OSHA for not analyzing purported "costs associated with" past instances of third parties accompanying CSHOs on walkaround inspections. Pls.' Mot. at 28. But Plaintiffs identify no such costs, and do not explain why the agency's thorough responses to the economic concerns raised by commenters did not satisfy the APA's requirement to "reasonably consider[] the relevant issues and reasonably explain[] the decision." *Prometheus*, 592 U.S. at 423.[17]

## III.     The Court Lacks Jurisdiction over Plaintiffs' RFA Claim

This Court does not have jurisdiction to consider Plaintiffs' claim under the RFA, and in any event OSHA fully complied with the statute's requirements. The RFA "requires federal agencies to consider the effect that agency regulations will have on small entities." *Grocery Servs., Inc. v. USDA Food & Nutrition Serv.*, No. 06-cv-2354, 2007 WL 2872876, at *10 (S.D. Tex. Sept. 27, 2007); *see* 5 U.S.C. §§ 601–612. A final rule that has "a significant economic impact on a substantial number of small entities" must include a "final regulatory flexibility analysis" covering six identified topics. 5 U.S.C. §§ 604(a)(1)–(6), 605(b). "A full regulatory flexibility analysis is not required if the agency 'certifies that the rule will not, if promulgated, have a significant economic impact on a substantial number of small entities.'" *Grocery Servs.*, 2007 WL 2872876, at *10 (quoting 5 U.S.C. § 605(b)); *contra* Pls.' Mot. at 29 (incorrectly asserting that the RFA requires a determination "that there will be *no*[]"

---

[17] Plaintiffs also argue, in a single paragraph, that the Rule's cost determinations violate the RFA. Pls.' Mot. at 29. As explained *infra* section III, the Court lacks jurisdiction to consider Plaintiffs' RFA claim, which fails on the merits in any event. To the extent that Plaintiffs contend that OSHA's cost determinations are arbitrary and capricious, OSHA thoroughly explained how it reached its estimate that employers may expend an average of $5 in rule familiarization costs, and that this "quantitative estimate portrays an unlikely upper bound assuming all employers will decide to read this regulation," which totals only 107 words, creates no compliance obligations, and merely clarifies an existing policy. 89 Fed. Reg. at 22,594.

"regulatory impact[] on small businesses").

The RFA provides for "[o]nly a limited judicial review of agency compliance." *Grocery Servs.*, 2007 WL 2872876, at *10. Only "a small entity that is adversely affected or aggrieved by final agency action is entitled to judicial review." 5 U.S.C. § 611(a)(1). "The RFA is a procedural rather than substantive agency mandate," and courts "review only to determine whether an agency has made a reasonable, good-faith effort to carry out the mandate of the RFA." *Alenco Commc'ns, Inc. v. FCC*, 201 F.3d 608, 625 (5th Cir. 2000) (quotation marks omitted).

As an initial matter, none of the Plaintiffs have shown that any of their members are small entities aggrieved by the Rule, as required to bring an RFA claim. 5 U.S.C. § 611. A "small entity" is defined in the RFA as a "small organization," "small business," or "small governmental jurisdiction," each of which the statute, in turn, defines. *Id.* § 601. A "small organization" is a "not-for-profit enterprise which is independently owned and operated and is not dominant in its field." 5 U.S.C. § 601(4). And a "small business" is defined, by incorporation of section 3 of the Small Business Act, *see id.* § 601(3), as a business concern that "is independently owned and operated and [that] is not dominant in its field of operation," 15 U.S.C. § 632(a)(1); *see* 13 C.F.R. §§ 121.103(a)(6), 121.201 (establishing particular size standards for businesses in different industries, typically based on number of employees or annual receipts).

No Plaintiff has shown that any of its members is a nonprofit, nor asserted any facts about individual members' ownership and operation. Plaintiff Associated General Contractors of America (AGC) alone names a member that it asserts is a certified small business, Martinez Construction Services, but it does not show that it is "aggrieved" by the Walkaround Rule. App. at A037. AGC merely asserts that Martinez was once the subject of an OSHA inspection, on an unspecified date; for the reasons explained, *supra* section I, that barebones assertion, devoid of facts about the

34

inspection as might bear on the Rule, does not show any concrete harm stemming from this Rule.[18]

In any event, OSHA complied with the requirements of the RFA in promulgating the Rule. OSHA determined that the Rule "will not have a significant impact on a substantial number of small entities," 89 Fed. Reg. at 22,597, "certified and published the determination in the Federal Register, and included a statement providing the factual basis for the determination," *Grocery Servs.*, 2007 WL 2872876, at *10; *see* 5 U.S.C. § 605(b). Plaintiffs' contention that "OSHA provided no basis for its claim that the regulation does not trigger the procedural requirements of the RFA," Pls.' Mot. at 30, is belied by the face of the Rule, *see* 89 Fed. Reg. at 22,597–99 (section entitled "Regulatory Flexibility Certification" explaining OSHA's determination in detail). Plaintiffs further argue that OSHA's determination was based on an "erroneous cost assumption," Pls.' Mot. at 29, but—setting aside Plaintiffs' incorrect premise, *see* 89 Fed. Reg. at 22,594—Plaintiffs' "complaint[] [is] substantive, not procedural, and this Court does not review the factual substance of an agency's RFA determination." *Grocery Servs.*, 2007 WL 2872876, at *10. Accordingly, because OSHA "complied with all procedural requirements of the RFA and plaintiffs provide no probative evidence to the contrary[,] Defendants are entitled to summary judgment on plaintiffs' RFA claim[]." *Id.* at *12.

## CONCLUSION

The Court should dismiss Plaintiffs' complaint or, in the alternative, grant Defendants' cross-motion for summary judgment, deny Plaintiffs' motion for summary judgment, and enter judgment for Defendants on all claims.

---

[18] Even if AGC or another Plaintiff could demonstrate that individual members are small entities under the RFA and harmed by the Rule, it is not at all clear that the statute's limited provision for judicial review allows for associations that are not "small entit[ies]," 5 U.S.C. § 611(a)(1), to sue on behalf of small-entity members in a representational capacity under the RFA. *See generally, e.g., NAACP v. Trump*, 298 F. Supp. 3d 209, 235–36 (D.D.C.) ("[T]he RFA extends standing to seek judicial review only to a 'small entity.'"), *aff'd sub nom. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020).

Dated: July 29, 2024                    Respectfully submitted,

                                        BRIAN M. BOYNTON
                                        Principal Deputy Assistant Attorney General

                                        JULIE STRAUS HARRIS
                                        Assistant Director

                                        */s/ Christine L. Coogle*
                                        Christine L. Coogle
                                        Trial Attorney
                                        U.S. Department of Justice
                                        Civil Division, Federal Programs Branch
                                        1100 L St. NW
                                        Washington, D.C. 20005
                                        202-880-0282
                                        christine.l.coogle@usdoj.gov

                                        *Counsel for Defendants*