# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA,
GREATER WACO CHAMBER OF
COMMERCE, LONGVIEW CHAMBER
OF COMMERCE, NATIONAL
ASSOCIATION OF CHEMICAL
DISTRIBUTORS D/B/A ALLIANCE FOR
CHEMICAL DISTRIBUTION,
ASSOCIATED BUILDERS AND
CONTRACTORS, INC., ASSOCIATED
GENERAL CONTRACTORS OF
AMERICA, INTERNATIONAL
FRANCHISE ASSOCIATION INC.,
INTERNATIONAL WAREHOUSE
LOGISTICS ASSOCIATION,
NATIONAL ASSOCIATION OF
MANUFACTURERS, NATIONAL
ASSOCIATION OF WHOLESALER-
DISTRIBUTORS, NATIONAL
FEDERATION OF INDEPENDENT
BUSINESS, INC., NATIONAL RETAIL
FEDERATION,

    *Plaintiffs*,

  *v.*

OCCUPATIONAL SAFETY AND
HEALTH ADMINISTRATION, UNITED
STATES DEPARTMENT OF LABOR,
JULIE A. SU, in her official capacity as
Acting Secretary of Labor, and
DOUGLAS L. PARKER, in his official
capacity as Assistant Secretary of Labor
for Occupational Safety and Health,

    *Defendants.*

No. 6:24-cv-00271-ADA-DTG

**PLAINTIFFS' REPLY IN
SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND
OPPOSITION TO
DEFENDANTS' MOTION TO
DISMISS OR, IN THE
ALTERNATIVE, FOR
SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES..........................................................................ii

INTRODUCTION .......................................................................................1

ARGUMENT ...............................................................................................2

I.   Plaintiffs Have Standing. ....................................................................2

II.  The Walkaround Rule Exceeds OSHA's Statutory Authority...........5

   A.   Congress Did Not Authorize Unlimited Third-Party Employee
      Representatives To Access Employer Workplaces. ..........................5

     1.   OSHA Misreads The Text Of The Statute. .................................5

     2.   OSHA's Interpretation Would Conflict With The NLRA. ............8

     3.   OSHA's Reliance On Legislative History Is Misplaced..............10

     4.   Caselaw Does Not Support OSHA's Interpretation. ..................10

   B.   OSHA's Attempts To Avoid Judicial Review Fail...........................12

     1.   The Rule Exceeds OSHA's Authority On Its Face......................12

     2.   The Court Has Jurisdiction To Review The Rule.......................14

III. The Walkaround Rule Effects Takings Of Private Property. ...........15

   A.   The Rule Effects Takings...............................................................16

   B.   The Court Should Narrowly Interpret The Walkaround Statute.................20

IV.  The Walkaround Rule Is Arbitrary And Capricious. .......................21

   A.   OSHA Still Fails To Acknowledge Its Policy Change. ...................21

   B.   OSHA Still Fails To Grapple With Obvious Alternatives. ............23

   C.   OSHA Still Ignores Important Aspects Of The Problem...............24

   D.   OSHA Still Undercounts The Rule's Costs. ..................................25

CONCLUSION...........................................................................................25

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ala. Ass'n of Realtors v. HHS,*
594 U.S. 758 (2021) ....................................................................................... 4, 20

*Associated Builders & Contractors of Tex. v. NLRB,*
826 F.3d 215 (5th Cir. 2016) .................................................................................. 14

*BellSouth Corp. v. FCC,*
162 F.3d 678 (D.C. Cir. 1998) ............................................................................... 21

*Bellville v. Town of Northboro,*
375 F.3d 25 (1st Cir. 2004) .................................................................................... 18

*Career Colls. & Sch. of Tex. v. U.S. Dep't of Educ.,*
98 F.4th 220 (5th Cir. 2024) ................................................................................ 2, 3

*Cedar Point Nursery v. Hassid,*
594 U.S. 139 (2021) ........................................................... 4, 15, 16, 17, 19, 20

*Chamber of Com. of U.S. v. U.S. Dep't of Lab.,*
885 F.3d 360 (5th Cir. 2018) .................................................................................. 14

*Contender Farms L.L.P. v. U.S. Dep't of Agric.,*
779 F.3d 258 (5th Cir. 2015) ................................................................................... 3

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,*
591 U.S. 1 (2020) .................................................................................................... 24

*Encino Motorcars, LLC v. Navarro,*
579 U.S. 211 (2016) .......................................................................................... 21, 22

*In re Establishment Inspection of Caterpillar Inc.,*
55 F.3d 334 (7th Cir. 1995) ................................................................................... 11

*Loper Bright Enters. v. Raimondo,*
144 S. Ct. 2244 (2024) ............................................................................................. 7

*Mason v. Barbieri,*
    338 Fed. App'x 94 (2d Cir. 2009) .......................................................................... 18

*Mexican Gulf Fishing Co. v. U.S. Dep't of Com.,*
    60 F.4th 956 (5th Cir. 2023) ................................................................................. 20

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) .................................................................................................. 24

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs,*
    145 F.3d 1399 (D.C. Cir. 1998) ..................................................................... 12, 13

*NFIB v. Dougherty,* No. 3:16-CV-2568-D,
    2017 WL 1194666 (N.D. Tex. Feb. 3, 2017) ..................... 2, 4, 10, 11, 15, 17, 21, 22

*NYSE v. SEC,*
    962 F.3d 541 (D.C. Cir. 2020) ................................................................................. 7

*R.J. Reynolds Vapor Co. v. FDA,*
    65 F.4th 182 (5th Cir. 2023) ................................................................................. 23

*Russello v. United States,*
    464 U.S. 16 (1983) .................................................................................................... 8

*Ryan LLC v. FTC,* No. 3:24-CV-00986-E,
    2024 WL 3297524 (N.D. Tex. July 3, 2024) ....................................................... 23

*Tex. Democratic Party v. Benkiser,*
    459 F.3d 582 (5th Cir. 2006) ................................................................................... 3

*Texas v. EEOC,*
    933 F.3d 433 (5th Cir. 2019) ................................................................................... 4

*TRW Inc. v. Andrews,*
    534 U.S. 19 (2001) .................................................................................................... 6

*United States v. Riverside Bayview Homes, Inc.,*
    474 U.S. 121 (1985) ......................................................................................... 20, 21

*United States v. Security Indus. Bank,*
    459 U.S. 70 (1982) .................................................................................................. 20

*United States v. Sparks,*
    265 F.3d 825 (9th Cir. 2001) .......................................................................... 18, 19

*Wachovia Bank v. Schmidt,*
    546 U.S. 303 (2006) ............................................................................................ 10

*Wages & White Lion Investments, LLC v. FDA,*
    16 F.4th 1130 (5th Cir. 2021) ............................................................................ 22

*Wilson v. Layne,*
    526 U.S. 603 (1999) ...................................................................................... 16, 17

*Young Conservatives of Tex. Found. v. Smatresk,*
    73 F.4th 304 (5th Cir. 2023) ................................................................................ 3

## CONSTITUTIONS AND STATUTES

1 U.S.C. § 1 ............................................................................................................... 7

18 U.S.C. § 3105 .................................................................................................... 18

28 U.S.C. § 1391 ...................................................................................................... 4

29 U.S.C.
    § 159 ....................................................................................................................... 9
    § 656 ................................................................................................... 6, 7, 19, 23
    § 657 ............................................................................... 5–15, 19, 20, 22, 23
    § 664 ....................................................................................................................... 7
    § 725 ....................................................................................................................... 7

30 U.S.C. § 813 .................................................................................................. 7, 11

U.S. Constitution, amend. IV ...................................................................... 16, 17

U.S. Constitution, amend. V ...................................... 1, 15, 16, 18, 19, 20

## OTHER AUTHORITIES

29 C.F.R. § 1903.4 ............................................................................................ 6, 23

29 C.F.R. § 1903.8 ........................................................................ 2, 12–15, 20–22

29 C.F.R. § 1903.9 ............................................................................................... 24

29 C.F.R. § 1904.35 ................................................................... 8, 22

29 C.F.R. § 2200.1 ......................................................................... 8

*Worker Walkaround Representative Designation Process*,
   89 Fed. Reg. 22,558 (Apr. 1, 2024) .................................... 3, 17, 18, 22–25

Legislative History of the OSH Act of 1970 (Comm. Print 1971) ................................. 10

OSHA, Field Operations Manual (FOM) ...................................................... 6

OSHA, Sallman Letter Rescission (Apr. 25, 2017) ..................................... 21

**INTRODUCTION**

OSHA does not dispute that its new Walkaround Rule requires employers to open their doors during inspections to an unlimited number of third parties. Yet OSHA fails to demonstrate statutory authority for such an intrusive new regime. The statute's best reading—and the only one that avoids a serious Fifth Amendment problem—is that Congress did not authorize an unlimited number of third-party employee representatives to access employer workplaces.

OSHA's defense of the Rule rests on a faulty premise. Instead of candidly acknowledging that the Rule reflects a marked change in position, OSHA insists that the Rule is a "clarification" of the agency's "longstanding policy" permitting third-party representatives to accompany inspectors. But OSHA's longstanding policy—as reflected in the agency's 50-year-old regulation—restricted employee representatives to "employees." The new Rule authorizes an unlimited number of "third party" "representative(s)." Indeed, a federal court already held that OSHA's current position is *inconsistent* with its decades-old regulation. Because OSHA refuses to even acknowledge its significant policy change, the Rule is arbitrary and capricious.

From the erroneous premise that the Rule changes nothing, OSHA contends that Plaintiffs lack standing because the Rule imposes no new obligations. But Plaintiffs' standing is apparent because employers are the object of the Rule—it restricts their property rights by expanding third parties' right of access. And to prepare for this expanded access, Plaintiffs' members have documented substantial costs establishing Article III standing. Plaintiffs are entitled to summary judgment.

## ARGUMENT

### I.   Plaintiffs Have Standing.

OSHA's challenge to Plaintiffs' standing "is more bewildering than persuasive." *Career Colls. & Sch. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 234 (5th Cir. 2024). It ignores that a court already determined that one of the Plaintiffs (NFIB) had standing to challenge OSHA's previous attempt to expand third-party access. *NFIB v. Dougherty*, No. 3:16-CV-2568-D, 2017 WL 1194666, at *5 (N.D. Tex. Feb. 3, 2017). Here, Plaintiffs (including NFIB) likewise have standing to challenge the Rule because it compels employers to give third parties access to private property during inspections, and they have proven their standing through declarations establishing that specific, identifiable employers must spend money preparing for this access.

In response, OSHA makes the baffling claim that employers are not the object of the Rule. OSHA Br., ECF 39 at 7-8 (hereinafter, "Br."). But here, there is no doubt that employers are the object of the Rule because it compels employers to permit third-party employee representatives to access their property during a "physical inspection of the workplace," 29 C.F.R. § 1903.8(c). By expanding the right of employees to designate "third party" representatives who "may accompany" the OSHA inspector "during the inspection," 29 C.F.R. § 1903.8(c), the Rule appropriates employers' "property rights for the use of third parties," App'x, ECF 31-1 at A072.

Moreover, Plaintiffs have identified members—including FedEx, Palmer Logistics, RL National Roofing Partners LLC, and Bonn Roof Care—who will incur significant costs because of the Rule. *See* App'x A004-05, A023-25, A029-31, A054-55,

A073-74. OSHA concedes that the Rule will cost each employer $5 to become familiar with the new regime. 89 Fed. Reg. 22,558, 22,594, 22,597–98 (Apr. 1, 2024); Br. 31 n.16; A073. That estimate is far too low, but even a "trifle" is enough, *Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 310 (5th Cir. 2023), because "economic injury is a quintessential injury upon which to base standing," *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586 (5th Cir. 2006). Plaintiffs also need to "update handbooks, policies, and other practices and processes" regarding access to their facilities in light of the Rule. A073. This "increased regulatory burden" "satisfies the injury in fact requirement," *Contender Farms L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 266 (5th Cir. 2015), because employers must make "alterations in operating procedures" to account for the Rule, *Career Colleges*, 98 F.4th at 235, 238.

OSHA responds that any costs employers incur are self-inflicted, Br. 11, but this argument rests on the flawed premise that the new Rule changes nothing. *Infra* Part IV.A. Setting that aside, "[s]tanding is defeated only if it is concluded that the injury is *so completely due* to the plaintiff's own fault as to break the causal chain." *Young Conservatives*, 73 F.4th at 310. Here, Plaintiffs have submitted detailed evidence that employers "are handing over money" "that, in the absence of [OSHA's] presumed-unlawful [regulation], they would happily retain." *Id.; e.g.*, A074.

OSHA's remaining standing arguments fare no better. The agency claims that forcing employers to allow third parties onto their property would not "be an invasion of a legally protected interest" because employers suffer no "injury from the presence of nonemployee representatives." Br. 8-9. But employers do have legally protected interests

in who can access and enjoy their real property, and the Rule strips employers of their "right to exclude" third parties. *Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758, 765 (2021); *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 150 (2021). The Court must "assume, for purposes of the standing analysis," that the Rule effects takings, *Texas v. EEOC*, 933 F.3d 433, 447 (5th Cir. 2019), and that appropriation surely confers standing.

Nor is there anything "speculative" about the Rule's impact on property rights. Br. 9-10. The Rule "eliminat[es]" employers' "right to exclude third parties from their private property" during inspections. A072. This forces Plaintiffs' "members to choose between ceding this right of access to unauthorized third parties or potentially facing sanctions—including contempt of court—if they refuse to allow third-party access to their worksites during OSHA walkaround inspections." A072. OSHA does not dispute that Plaintiffs' members "have undergone OSHA inspections in the past," including inspections "involving a third-party employee representative." Br. 8; *see* A015, A070. These "past injur[ies] in the form of the presence of non-employee third parties on the property of" Plaintiffs' members establish a "sufficiently certain future injury" due to the "imminent threat" that an inspector will "conduct a walkaround inspection, accompanied by a non-employee representative." *NFIB*, 2017 WL 1194666, at *5.[1]

---

[1] OSHA's argument questioning venue in a footnote is meritless. Br. 11 n.5. Venue is proper because the Greater Waco Chamber resides in this District, 28 U.S.C. § 1391(e)(1), and identified an injured member, A009.

## II.     The Walkaround Rule Exceeds OSHA's Statutory Authority.

OSHA's attempt to cobble together authority for the Rule is unavailing. Congress enacted a regime for walkaround inspections that depends on the type of workplace: Where there already is "a representative authorized by … employees" (*i.e.*, union workplaces), OSHA may permit a union representative to accompany the inspector on the walkaround if it would "aid[ ] such inspection." 29 U.S.C. § 657(e). But "[w]here there is no authorized employee representative" (*i.e.*, non-union workplaces), OSHA "shall consult with a reasonable number of employees." *Id.* OSHA points to no authority permitting an unlimited number of third-party employee representatives to access employer workplaces during inspections. Pls.' Mot., ECF 31 at 8-18. And OSHA's last-ditch efforts to evade judicial review fall flat.

### A.     Congress Did Not Authorize Unlimited Third-Party Employee Representatives To Access Employer Workplaces.

OSHA's breathtaking claim that § 657(e) permits an unlimited number of third parties to accompany inspections of any type of workplace, Br. 12-15, misreads the statutory text, conflicts with the NLRA, and lacks support in the sources OSHA cites.

### 1.     OSHA Misreads The Text Of The Statute.

As OSHA sees it, § 657(e) imposes "only one limit on who may accompany" an inspector—"the party must," in the OSHA inspector's view, "'aid[ ] such inspection.'" Br. 13. But that reading suffers from multiple flaws.

*First*, OSHA neglects the key statutory term "authorized." 29 U.S.C. § 657(e). Congress intentionally used that term to distinguish between union workplaces where there is an "authorized" employee representative and non-union workplaces where

"there is no authorized employee representative." Pls.' Mot. 9-13. OSHA's workaround for this inconvenient term is to equate "authorized" with whomever the OSHA inspector determines will "aid" the inspection. Br. 13. But that interpretation would render the word "authorized" superfluous because Congress's use of that term could be excised and the statute would retain the same meaning. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (explaining that superfluity should be avoided in statutory interpretation).

*Second*, OSHA's reading would obliterate the requirement that the inspector "consult with a reasonable number of employees concerning matters of health and safety in the workplace" if "there is no authorized employee representative" at the workplace. 29 U.S.C. § 657(e). If "authorized" representative means anyone chosen by two employees whom the OSHA inspector determines will "aid" in the inspection, then the statute's consultation requirement does not serve a meaningful purpose.

*Third*, OSHA gives short shrift to Congress's specific authorization for OSHA to "employ" and pay for "experts and consultants," and to engage federal and state agency partners, to aid inspections. *Id.* § 656(c)(2). OSHA asserts that this authority is "unrelated." Br. 18 n.8. But it plainly relates to inspections, since inspections are among the Secretary's "responsibilities under this chapter." 29 U.S.C. § 656(c). And OSHA's own Field Operations Manual emphasizes that any need for expertise or interpreters "should" be filled using these resources. FOM 3-5, 3-12. Its regulations also contemplate covering the "costs" for "us[ing]" such "experts" *during* "inspection[s]." 29 C.F.R. § 1903.4(b). Section 656 thus demonstrates how OSHA can augment inspections, and it is not with volunteer third parties.

6

*Fourth*, OSHA attempts to wave away Congress's protection for confidential information obtained during an inspection. Br. 18 n.8. As Plaintiffs explained, § 664 shows that Congress only intended for individuals with some formal relationship with the government or the employer to potentially obtain confidential information during an inspection. Pls.' Mot. 12. OSHA's interpretation would upend that too.

*Fifth*, OSHA's brief pluralizes the word "representative" in § 657(e) when the statute is intentionally singular (yet intentionally plural elsewhere, *see* 29 U.S.C. §§ 657(c)(3), 657(f)(1), 656(b)). Br. 3-4. OSHA's response is to rely on the Dictionary Act, Br. 22 n.13, but that general rule of construction does not apply when "context indicates otherwise," 1 U.S.C. § 1. Context indicates otherwise here. Pls.' Mot. 16-18. OSHA further rewrites § 657(e) by saying "that each party may designate *at least one* representative to accompany" an inspection. Br. 22 n.13 (emphasis added). But if that is what Congress meant, it would have said so. *See, e.g.*, 30 U.S.C. § 813(f) ("more than one representative"); 29 U.S.C. § 725 ("at least one representative").

*Finally*, OSHA's retreat to its general rulemaking authority adds nothing. Br. 13. OSHA has authority to promulgate inspection-related "regulations," 29 U.S.C. § 657(e), but "an agency's general rulemaking authority does not mean that the specific rule the agency promulgates is a valid exercise of that authority," *NYSE v. SEC*, 962 F.3d 541, 546 (D.C. Cir. 2020). Rather, the Court must adopt the "best reading" of § 657(e), *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2266 (2024), and judge whether that provision authorizes OSHA to force employers to open their doors to an unlimited number of third parties.

### 2.    OSHA's Interpretation Would Conflict With The NLRA.

Next, OSHA tries to deny a link between § 657(e) and the NLRA, claiming that § 657(e) "in no way overlaps with" "any … section" of the NLRA, because they "concern different subject matter." Br. 2, 17 n.7. But OSHA has already conceded the "overlap" and "intersection" between the NLRA and § 657(e). 89 Fed. Reg. at 22,582-83. According to OSHA, both statutes "protect[ ] employees' right to voice concerns to management about unsafe or unhealthful working conditions." *Id.* at 22,583.

Moreover, OSHA's longstanding regulation (still on the books) defines "authorized employee representative" in § 657(e) to mean "an authorized collective bargaining agent of employees" pursuant to the NLRA. 29 C.F.R. § 1904.35(b)(2)(i); *accord* 29 C.F.R. § 2200.1(g). OSHA claims its own regulation is "irrelevant" because it relates to "recordkeeping" and not "inspections," Br. 19-20, but that regulation interprets a different subsection of the *same* statute, *see* 29 U.S.C. § 657(c). Words in the same statute must be given the same meaning, *Russello v. United States*, 464 U.S. 16, 23 (1983), but more importantly the term "authorized employee representative" appears *only* in § 657(e). Thus, § 1904.35(b)(2)(i) reflects OSHA's binding interpretation of the phrase "authorized employee representative" in § 657(e), which governs inspections.

Even beyond OSHA's regulation, the link between § 657(e) and the NLRA is apparent on the face of the statute. As Plaintiffs explained, the link between the two statutes—which are codified in the same title—comes from Congress's use of the word "authorized" in relation to "employee representative" in § 657(e). Pls.' Mot. 12-15. There is only one way for employees to "authorize" a "representative"—through the NLRA's

"exclusive" process for designating union representation. 29 U.S.C. § 159(a). Although § 159(a) does not say "authorized," it refers to § 657(e) by establishing the union as the "exclusive representatives of all the employees" in the unit, *id.*

OSHA claims that Plaintiffs' interpretation of the statute would "exclud[e] the vast majority of employees nationwide from this right," Br. 2, but Congress spoke precisely to a situation where employees have not voted to establish an "authorized employee representative" pursuant to the NLRA. 29 U.S.C. § 657(e). In that situation, the inspector "shall consult with a reasonable number of employees concerning matters of health and safety in the workplace." *Id.* The consultation requirement is not only surplusage under OSHA's interpretation of § 657(e), *see supra* Part II.A.1, but the Rule also usurps the NLRA's "exclusive" and "majority[-based]" process for designating employee representatives by allowing OSHA inspectors to bypass that process in authorizing employee representatives. 29 U.S.C. § 159(a). Additionally, OSHA does not deny that the Rule puts unionized employers to a Hobson's choice between (a) recognizing the OSHA-designated representative when it is not the NLRA-authorized representative and (b) rejecting that OSHA-designated representative to face compulsory process and potential contempt for refusing access.

By contrast, the two statutes fit together perfectly under Plaintiffs' interpretation. Congress provided for employee representation in two different ways depending on the type of workplace: (a) through the NLRA's "exclusive" mechanism for authorizing a representative at a unionized workplace, *id.*, or (b) through § 657(e)'s requirement for an inspector to "consult with a reasonable number of employees" at non-union workplaces

where there is no authorized union representative, *id.* 657(e); *see* Pls.' Mot. 12. These two "statutes addressing the same subject matter" should be interpreted to create compatibility, not contradiction. *Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006).

### 3. OSHA's Reliance On Legislative History Is Misplaced.

With no textual or structural hook for its position, OSHA relies on legislative history and purpose, but neither supports OSHA's interpretation. A Senator's statement that § 657(e) provides "an appropriate degree of involvement of employees" says nothing about the "appropriate degree" of third-party representatives in OSHA inspections. Br. 3, 19 (quoting Legislative History of the OSH Act of 1970, at 151 (Comm. Print 1971)). In fact, Congress required "a reasonable number of employees" to be involved when there is no authorized representative. 29 U.S.C. § 657(e). OSHA also twists a lone statement out of context. Br. 22 n.13. The full sentence reads: "The bill provides that union representatives *or* any employee *representative*" (singular) "be allowed to accompany inspectors on their plant tours." Legislative History at 1224. The House Managers also understood that § 657(e) "does not confer authority on the secretary to prescribe regulations with respect to representation questions in a collective bargaining context." *Id.* at 1190. Finally, OSHA's appeal to legislative "purpose" falls flat, Br. 19 & n.10, because declining unionization is not a ticket to rewrite the statute. In any event, consulting with employees at non-union workplaces would serve the statute's purposes.

### 4. Caselaw Does Not Support OSHA's Interpretation.

Nor do the cases OSHA cites provide support for the Rule. OSHA primarily relies on *NFIB*, an ironic choice considering the court's holding that NFIB—also a plaintiff

here—had standing to challenge OSHA's attempt to impose the same rule through informal guidance. 2017 WL 1194666, at *4-6. The *NFIB* court briefly addressed a different statutory argument—that employee representatives "must also be an employee of the employer"—without any meaningful textual analysis. *Id.* at *11-12. Thus, that court did not consider § 657(e)'s text, the statute's distinction between union and non-union workplaces, the link to the NLRA, canons of construction, or the serious constitutional concerns raised here.

Nor does *In re Establishment Inspection of Caterpillar Inc.* help OSHA. There, Caterpillar challenged OSHA's authority to bring a striking *employee*—not an outside third party—on an inspection. 55 F.3d 334, 335-36 (7th Cir. 1995). The court observed simply that the "implementing regulations permit *employees* to accompany OSHA … inspections." *Id.* at 337 (emphasis added). And in the *Chevron* era, the court deferred to OSHA's interpretation of the statute. *Id.* at 336. The court did not address whether the statute permits the OSHA inspector to bring along outside third parties.

Finally, OSHA's cases interpreting the Mine Act have no relevance here. That statute contains four sentences beyond the two in § 657(e) that OSHA cites as "substantially similar." Br. 13. Those additional sentences specify that a Mine Act representative need not be an employee and that a mine inspector may authorize "more than one." 30 U.S.C. § 813(f). Those differences demonstrate that § 657(e) does *not* permit the same third-party involvement. Pls.' Mot. 18.

**B.      OSHA's Attempts To Avoid Judicial Review Fail.**

With the Rule on thin ice, OSHA attempts to avoid judicial review. First, OSHA argues that Plaintiffs have not shown that the Rule is invalid on its face because the Rule could be validly applied. Second, OSHA contends that Plaintiffs' arguments go beyond the scope of the rulemaking. Both arguments fail.

**1.      The Rule Exceeds OSHA's Authority On Its Face.**

In this facial challenge, Plaintiffs argue that OSHA's amendment to § 1903.8(c) is facially invalid because § 657(e) does not authorize "third party" employee "representative(s)" to accompany OSHA inspections, 29 C.F.R. § 1903.8(c). During non-union workplace inspections, third-party employee representatives cannot participate because inspectors must "consult with a reasonable number of employees." 29 U.S.C. § 657(e). And in unionized workplaces, non-union, third-party employee representatives are impermissible because Congress limited employee representation to the "representative authorized by … employees" under the NLRA. *Id.* Every application of the Rule will be unlawful because OSHA adopted an incorrect reading of the statute.

OSHA responds with two hypotheticals to argue that the Rule is not invalid in every circumstance, but neither hypothetical defeats this facial challenge. Br. 12. A plaintiff need only "show that the *incremental* regulation … is invalid under every set of circumstances; to show, in other words, that the [agency] would be acting *ultra vires* every time it" enforces the new rule in a way that "it could not have" acted under the old rule. *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1407 (D.C. Cir. 1998). Thus, Plaintiffs need only show the amendment to § 1903.8(c) authorizing "third

party" employee "representative(s)" is unlawful on its face, not that the entire pre-amendment version of § 1903.8 is also invalid.

OSHA's first hypothetical, where a union representative accompanies the inspection of a unionized workplace, does not preclude a facial challenge. Union access to the workplace does not implicate the Rule because the statute—and a preexisting regulation that parrots the statute—permits "a representative authorized by his employees" to accompany the inspection of a union workplace. 29 U.S.C. § 657(e); 29 C.F.R. § 1903.8(a). OSHA does not enforce the *Rule* when it permits a union representative to access a union workplace pursuant to that *statutory* mandate. By contrast, OSHA enforces the *new Rule* when it permits non-union, *third-party* employee representatives to access a union workplace because OSHA could not permit such third-party access prior to adopting the Rule.

Nor does OSHA's second hypothetical, where the inspector exercises discretion to deny accompaniment, defeat this facial challenge. Under the old § 1903.8(c), inspectors already had discretion to exclude third parties who are not "reasonably necessary" to the inspection. In that situation, OSHA exercises preexisting regulatory authority, not the Rule's new authority. Plaintiffs' facial challenge is not defeated because the old rule "could be validly applied." *Nat'l Mining Ass'n*, 145 F.3d at 1407.

Even if OSHA's hypotheticals implicated the new Rule, its facial validity does not depend on whether or how OSHA "might happen" to enforce it in "a particular case." *Id.* at 1408. For example, in 2016, the Department of Labor issued a rule reinterpreting the term "investment advice fiduciary" in the Employee Retirement Income Security Act. In

13

a facial challenge, the Fifth Circuit did not linger on whether or how the agency might apply the rule in any particular case. Instead, the court reasoned that "[e]xpanding the scope of [a] regulation in vast and novel ways is valid only if it is authorized by [the governing statute]." *Chamber of Com. of U.S. v. U.S. Dep't of Lab.*, 885 F.3d 360, 369 (5th Cir. 2018). Because the agency adopted the wrong reading of the statute, it "lacked statutory authority to promulgate the Rule," and the rule was "invalid" on its face. *Id.* at 379. Like the fiduciary rule, the Walkaround Rule is facially invalid because OSHA adopted an incorrect interpretation. Neither the agency's discretion to enforce the Rule, nor its possible alignment with § 657(e) in some situations, changes that result.[2]

## 2.   The Court Has Jurisdiction To Review The Rule.

Next, OSHA argues that the Court lacks jurisdiction to consider some of Plaintiffs' arguments because another regulation, 29 C.F.R. § 1903.8(a), authorizes an unlimited number of employee representatives and guarantees access to all workplaces, Br. 21-22. Again, OSHA's sleight of hand confuses the issue.

Plaintiffs only challenge the amendment to § 1903.8(c). The amendment authorizes an "third party" employee "representative(s)" to accompany OSHA

---

[2] *Associated Builders & Contractors of Texas v. NLRB*, 826 F.3d 215 (5th Cir. 2016), is not to the contrary. There, plaintiffs argued that a rule permitting NLRB officials to schedule quicker union elections would impair free speech. Because it was unclear whether that rule authorized scheduling elections so quickly as to implicate such concerns, that uncertainty "effectively preclude[d] the ABC entities' facial challenge." *Id.* at 227. By contrast, there is no doubt here that the Rule authorizes "third party" "representative(s)" to accompany OSHA inspections. 29 C.F.R. § 1903.8(c). The Rule thus exceeds OSHA's authority on its face regardless of how an inspector might enforce it in any particular case.

inspections of any workplace. 29 C.F.R. § 1903.8(c). This was impermissible prior to the new Rule. *NFIB*, 2017 WL 1194666, at *2. In stating that "a representative authorized by … employees shall be given an opportunity to accompany the [inspector] during the physical inspection of any workplace," § 1903.8(a) merely parrots the statute. *See* 29 U.S.C. § 657(e). It does not address *who* may be an employee representative. Instead, § 1903.8(c) addresses who the "representative(s) authorized by employees may be" by allowing "a third party" to serve as one. That expansion of *who* may serve exceeds OSHA's authority.

Nor does § 1903.8(a) address *how many* third-party representatives may be authorized. It merely authorizes the inspector to allow "additional representatives authorized by employees to accompany him where he determines that such additional representatives will further aid the inspection." 29 C.F.R. § 1903.8(a). But that rule never permitted an unlimited number of *third-party* representatives because the previous version of § 1903.8(c) limited representatives to *employees*. For the first time, the new Rule authorizes an unlimited number of "third party" representatives by eliminating the "employee" limitation. The Court thus has jurisdiction to consider Plaintiffs' arguments challenging the new Rule.

## III. The Walkaround Rule Effects Takings Of Private Property.

The Rule also effects Fifth Amendment takings because it "appropriates a right" for third parties "to physically invade" private property. *Cedar Point*, 594 U.S. at 152; *see* Pls.' Mot. 18-23. At a minimum, the Court should avoid that serious constitutional problem by narrowly construing OSHA's authority. *Id.* at 23-24.

### A. The Rule Effects Takings.

Notably, Plaintiffs and OSHA *agree* that the Takings Clause protects property owners against being compelled to allow third parties to access their property. *See* Br. 23. And both sides agree there are "exception[s]" to this rule. *Id.* As Plaintiffs acknowledged, "government searches that are consistent with the Fourth Amendment" and "government health and safety inspections" that satisfy the "constitutional conditions framework" are not Fifth Amendment takings. Pls.' Mot. 19 (quoting *Cedar Point*, 594 U.S. at 161).

OSHA does not defend the Rule under the "constitutional conditions framework." *Id.* Instead, it argues that the Rule envisions only "government searches that are consistent with the Fourth Amendment." Br. 23-24. Again, the parties agree that this *Cedar Point* exception allows government agents to access private property, so long as they comply with the Fourth Amendment. But the Rule does not sanction "government searches" because it allows third-party outsiders to access private property. Pls.' Mot. 22. OSHA offers two contrary arguments, but both fail.

*First*, OSHA suggests that private third parties can access private property alongside government inspectors so long as they do not "use inspections for their own purposes." Br. 24, 26 (acknowledging *Wilson v. Layne* proves law enforcement cannot include private parties who pursue "their own purposes"). But even if that proposed extension of the *Cedar Point* government-access exception is correct—it is not—the Rule is still unlawful. OSHA asserts that third parties "may accompany the [inspector] *only*

16

for [the] purpose" of assisting the inspection. *Id.* at 24. For that proposition, OSHA cites only the Rule itself, which includes no such limitation.

In fact, nothing in the Rule prevents third-party outsiders from using the access mandate "for their own purposes." *Wilson v. Layne*, 526 U.S. 603, 613 (1999). The Rule requires only that an OSHA inspector find an outsider will make a "positive contribution," 89 Fed. Reg. at 22,575, a vague standard that can easily be satisfied. And once an OSHA inspector deems an outsider useful, nothing stops that outsider from *also* using the inspection for his "own purposes." *Wilson*, 526 at 613. For example, the Rule allows union officials to access non-union facilities, which "gives union leaders an opportunity to proselytize employees during safety walkarounds." *NFIB*, 2017 WL 1194666, at *2. Indeed, OSHA's union *amici* hope to gain access to non-union workplaces so they can assist employees in "exercising their labor rights," impart "the benefits of union education and support," and provide "the benefits of union advocates." Worker Advocacy Groups Br., ECF 40 at 1, 2, 9.

In any event, *Cedar Point* does not tolerate mandatory property-access for any private party the government deems useful for an inspection. Instead, there are narrow, historically-grounded exceptions where private parties provide "necessary assistance" during government searches. Br. 25. For example, the Supreme Court has recognized that, consistent with the Fourth Amendment, the police may invite a third party when entering a home "to search for stolen property" with the "purpose of identifying the stolen property." *Wilson*, 526 U.S. at 611-12.

17

OSHA's authorities likewise prove that third-party outsiders can be included in government searches *only* when truly "necessary." Br. 25. *United States v. Sparks* outlined situations where a theft victim could participate in a search to identify stolen property, and the court insisted that there "must be some reason why a law enforcement officer cannot himself conduct the search" without the private party. 265 F.3d 825, 830-32 (9th Cir. 2001). *Bellville v. Town of Northboro* held that a government agent "must have some demonstrable need for the presence of [a] civilian." 375 F.3d 25, 33 (1st Cir. 2004). *Mason v. Barbieri* acknowledged the rule "requir[ing] officers to demonstrate a need for the presence of the civilian." 338 Fed. App'x 94, 95-96 (2d Cir. 2009). And 18 U.S.C. § 3105 narrowly allows law enforcement "officers" (not OSHA) to include private parties when their aid is "requir[ed]."

OSHA has not identified any situation where the Rule satisfies a necessity standard. Instead, seeking to transform an inchwide exception to Fifth Amendment protections into a gaping hole, OSHA asserts that including "necessary" and "require[d]" private parties in searches is the same thing as including any person a government agent believes will make a "positive contribution." 89 Fed. Reg. at 22,575. But OSHA has admitted that the Rule's "positive contribution" standard allows admitting private third parties in many situations where they are not essential to assisting inspections. For example, including union organizers in inspections at non-unionized facilities to serve as a "buffer between the employer and [its] employees," *id.* at 22,566, 22,570, can hardly be characterized as "necessary." Br. 25. Moreover, OSHA points to no situation where OSHA inspectors or agents "cannot [themselves] conduct" the inspection, which is a

precondition to including a third-party outsiders in government searches at all. *Sparks*, 265 F.3d at 832. Nor has OSHA explained why it cannot hire its own "experts and consultants" or engage other agencies if it needs technical assistance during an inspection. 29 U.S.C. § 656(c); *see infra* Part IV.B.

Simply put, the Rule represents an attempt to significantly expand a narrow search-necessity exception to *Cedar Point* and the Fifth Amendment into a broad positive-contribution permission slip. But there is no basis for such an extension, which would obliterate fundamental Fourth and Fifth Amendment protections.

*Second*, OSHA asserts that, even if the Rule effects unconstitutional takings, Plaintiffs have failed to prove it will be unconstitutional in all its applications. Br. 22-23. But Plaintiffs have met that burden. Mandating third-party access to private property is unconstitutional unless an exception applies. *See supra* pp. 16-17. The only exception OSHA asserts is that the Rule facilitates lawful "government searches." Br. 23-24. But the agency has pointed to no situation where a third-party outsider is necessary to facilitate a search. Indeed, it is hard to imagine any situation where one of OSHA's 800+ inspectors—who are trained to spot health and safety issues—"cannot himself conduct [any] search" under the Act, not to mention with the aid of employers, employees, experts, consultants, and agency partners under § 656(c). *Sparks*, 265 F.3d at 832.

Unable to meet its burden, OSHA again misdirects, arguing that Plaintiffs' challenge must fail because Plaintiffs "recognize that OSHA inspections are generally lawful." Br. 23. But the Rule is not what authorizes OSHA inspections—that is 29 U.S.C. § 657(a). The Rule authorizes "third party" employee "representative(s)" to accompany

OSHA inspections. 29 C.F.R. § 1903.8(c). The Rule thus *only* comes into play when OSHA inspectors include third-party outsiders in inspections—and Plaintiffs have established that effects takings.[3]

### B.   The Court Should Narrowly Interpret The Walkaround Statute.

The Court, however, need not decide whether the Rule violates the Fifth Amendment. Instead, the Court should interpret § 657(e) narrowly to avoid these "grave constitutional concerns" because Congress did not clearly authorize OSHA to take private property. *Mexican Gulf Fishing Co. v. U.S. Dep't of Com.*, 60 F.4th 956, 966, 971 (5th Cir. 2023). The Supreme Court's "precedents require Congress to enact exceedingly clear language if it wishes to significantly alter … the power of the Government over private property." *Ala. Ass'n of Realtors*, 594 U.S. at 764 (cleaned up); *accord Cedar Point*, 594 U.S. at 162 (Kavanaugh, J., concurring). OSHA cannot prevail on the Act's plain text, *supra* Part II.A, let alone satisfy a clear-statement rule.

OSHA effectively ignores these clear-statement rules, instead repeating its merits argument. Br. 25. But OSHA does not dispute that a narrowing construction of § 657(e) is warranted if the Rule would result in takings in an "identifiable class of cases." *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 128 n.5 (1985); *see United States v. Security Indus. Bank*, 459 U.S. 70, 103 (1982). Thus, even if the Court does not agree

---

[3] OSHA also suggests that a "facial" challenge must fail because Plaintiffs agree that no Fifth Amendment taking occurs when an *employee* accompanies an OSHA inspector. Once again, the statute, not the Rule, authorizes inspections including only government agents and the employer's employees. Section 657(e), which Plaintiffs do not challenge, is the source of authority for such inspections.

Plaintiffs have satisfied the standard for a facial takings challenge, but have shown the Rule will result in takings "in an identifiable class of cases," *Riverside Bayview Homes*, 474 U.S. at 128 n.5, a narrowing construction is still warranted, *see, e.g.*, *BellSouth Corp. v. FCC*, 162 F.3d 678 (D.C. Cir. 1998).

## IV. The Walkaround Rule Is Arbitrary And Capricious.

OSHA also fails to rebut Plaintiffs' arguments that the Rule violates the APA.

### A. OSHA Still Fails To Acknowledge Its Policy Change.

The APA required OSHA to "at least display awareness that it is changing position" before adopting the Rule. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). Yet even now, OSHA refuses to acknowledge that it was changing position by papering over the Rule's changes as a mere "clarification" of OSHA's "longstanding policy." Br. 1, 27. OSHA's revisionist history cannot hide the Rule's sharp departures.

*First*, OSHA ignores its 2017 decision to reject expanded third-party walkaround rights at non-union workplaces through a letter. In response to the *NFIB* decision, OSHA rescinded its 2013 attempt to expand these rights in light of the "express guidance in the statute and applicable regulation." OSHA, Sallman Letter Rescission (Apr. 25, 2017), https://perma.cc/NC9Y-5QDT. The new Rule repudiates the agency's 2017 position by resurrecting the policy OSHA had initially announced through informal guidance. Yet OSHA has nothing to say about this flip-flop.

*Second*, OSHA's claim that the new Rule merely clarifies longstanding policy is not credible in light of the agency's concession that the new Rule "changed the language of the previous regulation" in § 1903.8(c). Br. 27. Indeed, the regulation previously

"require[d]" that the employee representative be an "employee," *NFIB*, 2017 WL 1194666, at *2, whereas the new Rule permits "third part[ies]" to serve as representatives, 89 Fed. Reg. at 22,601. If the new Rule were "consistent with the existing regulation," Br. 28, then there was no need to amend §1903.8(c). To the extent OSHA had a longstanding practice of misapplying its former regulation by permitting "third-party representatives," Br. 27, this "unexplained inconsistency in agency policy is a reason for holding an interpretation to be an arbitrary and capricious change from agency practice," not a free pass. *Encino*, 579 U.S. at 222.

*Third*, OSHA still resists acknowledging the Rule's departure from the agency's longstanding interpretation of the same term in a related regulation. Br. 28. The Rule causes OSHA to define "authorized employee representative" in two conflicting ways— (1) a third party who "aids" an inspection, Br. 13, and (2) an "authorized collective bargaining agent of employees," 29 C.F.R. § 1904.35(b)(2)(i)—even though this phrase appears only once in § 657. OSHA's attempt to dismiss § 1904.35(b)(2)(i) as irrelevant in this context is unreasonable. *Supra* Part II.A.2.

*Finally*, OSHA has no answer for its failure to acknowledge that the Rule's new "positive contribution" standard changes how inspectors apply the statutory "aiding an inspection" standard. 29 U.S.C. § 657(e); 89 Fed. Reg. at 22,589. OSHA "did not have to completely flip flop for there to be a change in position" as long as it "elects to shift its policy or depart from its typical manner of administering a program." *Wages & White Lion Investments, LLC v. FDA*, 16 F.4th 1130, 1141 (5th Cir. 2021).

**B.     OSHA Still Fails To Grapple With Obvious Alternatives.**

OSHA's failure to acknowledge its flip-flop "is exacerbated by its failure to consider alternatives to" authorizing an unlimited number of third-party employee representatives. *R.J. Reynolds Vapor Co. v. FDA*, 65 F.4th 182, 191 (5th Cir. 2023); *see also Ryan LLC v. FTC*, No. 3:24-CV-00986-E, 2024 WL 3297524, at *12 (N.D. Tex. July 3, 2024). The statute itself provides two ways for OSHA to obtain help during inspections: (1) to "employ [outside] experts and consultants" and enlist other agencies to aid inspections, 29 U.S.C. § 656(c), and (2), to "consult with a reasonable number of employees concerning matters of health and safety in the workplace," *id.* § 657(e).

OSHA has no good answer for why it ignored these alternatives. As for experts and consultants, OSHA now says § 656 "does not fall within the 'ambit' of the Rule" because "[e]xperts cannot be employed by the government to fill the role of *employee-authorized* representatives." Br. 31. But aiding an inspection—not expanding employee rights—is the Rule's supposed rationale. 89 Fed. Reg. at 22.563. If OSHA were serious about filling inspection-related needs, it would have considered hiring its own "experts and consultants" or tapping other agencies (which OSHA still fails to address). Indeed, OSHA elsewhere recognizes that tapping these resources is "preferabl[e]" in the inspection context. Pls.' Mot. 27 (quoting FOM 3-5, 3-21).

As for the consultation requirement, OSHA does not dispute that consulting with employees at non-union workplaces falls within the ambit of the Rule. Nor does OSHA claim this alternative would be impracticable. Employees may "aid inspection in any of multiple potential ways," Br. 31, yet OSHA ignored this alternative.

## C.     OSHA Still Ignores Important Aspects Of The Problem.

OSHA defends its decision to punt many important decisions to inspectors on a case-by-case basis (with no guidance) by pointing to agency discretion. Br. 28. But the APA requires *the agency* to "consider [] important aspect[s] of the problem," not punt until later. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 48 (1983). Here, OSHA's explanations for delegating so many important decisions to its inspectors fall short of reasoned decisionmaking.

*First*, OSHA again conflates "trade secrets" with "confidential business information." Br. 29; 89 Fed. Reg. at 22,571. The two are distinct. *See* 29 C.F.R. § 1903.9. Yet OSHA never explicitly addresses the risk of confidential business information being disclosed to third parties under the Rule, 89 Fed. Reg. at 22,577, despite comments identifying the difference between trade secrets and confidential information.

*Second*, OSHA's belated attempt to explain why no maximum number of authorized third-party employee representatives is necessary does not excuse the Rule's silence. *See* Br. 29. "An agency must defend its actions based on the reasons it gave when it acted," *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 24 (2020), so OSHA's post hoc explanations cannot save the Rule.

*Third*, OSHA ignores the workplace disruptions the Rule will create. At first, OSHA denies that the Rule "expands" employee walkaround rights, Br. 29, again highlighting the agency's refusal to acknowledge its change in position. On substance, OSHA simply punted those questions to inspectors either because such "questions are beyond the scope of this rulemaking" or because they may be addressed in "additional

guidance." 89 Fed. Reg. at 22,589, 22,591-92. In the rulemaking, OSHA simply failed to address how to prevent such disruption, which commenters warned is likely to increase under the Rule. *See id.* at 22,584.

*Fourth*, OSHA's conclusory explanation for failing to consider specific procedures for resolving disagreements over representative authorization(s) is *ipse dixit*: "OSHA decline[d] to adopt specific procedures" simply "because [it] does not believe such measures are necessary and seeks to provide flexibility." *Id.* at 22,590.

### D.   OSHA Still Undercounts The Rule's Costs.

Finally, OSHA continues to write off the costs of third-party access to employer workplaces as "not directly required" by the Rule. Br. 31. But the Rule itself causes employers to incur significant costs. *See supra* Part I. It defies reason (not to mention evidence in the record) to claim that there are *no* costs associated with a new rule requiring employers to throw their doors open to third parties. OSHA's claim that employers are unnecessarily preparing to accommodate a parade of third parties in the workplace also rests on the flawed premise that the Rule changes nothing. OSHA did change course, yet OSHA ignored the costs of its new third-party access mandate.[4]

### CONCLUSION

The Court should grant Plaintiffs' motion for summary judgment, vacate the rule, and deny Defendants' motion to dismiss or, in the alternative, for summary judgment.

---

[4] OSHA's jurisdictional objection to Plaintiff's Regulatory Flexibility Act claim is meritless because it concedes that Plaintiffs identified at least one small business member. Br. 34; A037, 41. And its merits response likewise ignores the Rule's costs.

Dated: August 28, 2024

Respectfully submitted,

/s/ Brett A. Shumate

Jordan L. Von Bokern
D.C. Bar No. 1032962 (*pro hac vice*)
Maria C. Monaghan
D.C. Bar No. 90002227 (*pro hac vice*)
U.S. Chamber Litigation Center
1615 H Street, N.W.
Washington, D.C. 20062
Telephone:  (202) 463-5337

*Attorneys for the Chamber of Commerce of the United States of America*

Noel J. Francisco
(D.C. Bar No. 286666) (*pro hac vice*)
Brett A. Shumate
(D.C. Bar No. 974673) (*pro hac vice*)
Jacqueline M. Holmes
(D.C. Bar No. 450357) (*pro hac vice*)
Charles E.T. Roberts
(W.D. Tex. Bar No. 326539)
(D.C. Bar No. 1780573)
Louis J. Capozzi III
(D.C. Bar 90018764) (*pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone:  (202) 879-3939
Fax:  (202) 626-1700

Jonathan D. Guynn
(Texas Bar No. 24120232)
JONES DAY
2727 North Harwood Street
Dallas, TX 75201
Telephone:  (214) 969-3793

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

*/s/ Brett A. Shumate*
Brett A. Shumate
