# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

|  |  |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION *et al.*, <br><br> *Defendants*. | Case No. 6:24-cv-271-ADA-DTG |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................2

I.     The Court Should Dismiss This Case for Lack of Jurisdiction ....................................2

     A.     Plaintiffs lack standing to challenge the Walkaround Rule.................................2

     B.     Even if the Court were to find that some plaintiffs have standing based on the *NFIB* court's reasoning, this venue would be improper ...........................5

II.     Defendants Are Entitled to Summary Judgment on Plaintiffs' Claims.......................6

     A.     Plaintiffs' facial challenges fail ........................................................................6

     B.     The Walkaround Rule is consistent with OSHA's statutory authority in any event ..............................................................................................................8

     C.     The Walkaround Rule does not effect any taking of private property .......................15

     D.     The Walkaround Rule is not arbitrary or capricious ......................................17

III.     The Court Lacks Jurisdiction over Plaintiffs' RFA Claim.........................................20

CONCLUSION....................................................................................................................20

i

# TABLE OF AUTHORITIES

## Cases

*Assoc. Builders & Contractors of Tex. v. NLRB,*
    826 F.3d 215 (5th Cir. 2016) ............................................................................ 2, 7, 8

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.,*
    571 U.S. 49 (2013) ................................................................................................ 5

*Balderas v. Frontier Enterprises, Inc.,*
    Case No. 5-16-cv-479, 2018 WL 835207 (W.D. Tex. Feb. 12, 2018) ................. 20

*Barnhart v. Sigmon Coal Co.,*
    534 U.S. 438 (2002) ............................................................................................ 12

*Cedar Point Nursery v. Hassid,*
    594 U.S. 139 (2021) ...................................................................................... 2, 15

*Chamber of Commerce of the U.S. v. U.S. Department of Labor,*
    885 F.3d 360 (5th Cir. 2018) ................................................................................ 8

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ............................................................................................ 4

*Contender Farms, LLP v. U.S. Dep't of Agric.,*
    779 F.3d 258 (5th Cir. 2015) ................................................................................ 5

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,*
    591 U.S. 1 (2020) ............................................................................................... 19

*FCC v. Prometheus Radio Project,*
    592 U.S. 414 (2021) ........................................................................................... 17

*FDA v. All. for Hippocratic Med.,*
    602 U.S. 367 (2024) ............................................................................................ 3

*In re Establishment Inspection of Caterpillar Inc.,*
    55 F.3d 334 (7th Cir. 1995) ............................................................................... 14

*In re Planned Parenthood Fed'n of Am., Inc.,*
    52 F.4th 625 (5th Cir. 2022) ................................................................................ 6

*Kerr-McGee Coal Corp. v. FMSHRC,*
    40 F.3d 1257 (D.C. Cir. 1994) ........................................................................... 14

*Loper Bright Enters. v. Raimondo,*
    144 S. Ct. 2244 (2024) ................................................................................... 9, 11

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ............................................................................................ 3

*Marshall v. Barlow's, Inc.,*
   436 U.S. 307 (1978) ......................................................................................................................3

*Mayfield v. U.S. Dep't of Labor,*
   — F.4th —, 2024 WL 4142760 (5th Cir. 2024)............................................................................9

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
   463 U.S. 29 (1983) ......................................................................................................................19

*Nat'l Env't Dev. Assoc.'s Clean Air Project v. EPA,*
   752 F.3d 999 (D.C. Cir. 2014) ....................................................................................................17

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs,*
   145 F.3d 1399 (D.C. Cir. 1998) ....................................................................................................7

*NFIB v. Dougherty,*
   No. 3:16-cv-2568, 2017 WL 1194666 (N.D. Tex. Feb. 3, 2017) .....................................*passim*

*Reno v. Flores,*
   507 U.S. 292 (1993) ......................................................................................................................7

*Sherley v. Sebelius,*
   644 F.3d 388 (D.C. Cir. 2011) ......................................................................................................7

*Summers v. Earth Island Inst.,*
   555 U.S. 488 (2009) ......................................................................................................................2

*Tex. Indep. Producers & Royalty Owners Ass'n v. EPA,*
   413 F.3d 479 (5th Cir. 2005) ....................................................................................................4, 5

*Texas v. United States,*
   497 F.3d 491 (5th Cir. 2007) ........................................................................................................5

*Thunder Basin Coal Co. v. FMSHRC,*
   56 F.3d 1275 (10th Cir. 1995) ....................................................................................................14

*U.S. Dep't of Lab. v. Wolf Run Mining Co.,*
   452 F.3d 275 (4th Cir. 2006) ......................................................................................................14

*United States v. Riverside Bayview Homes, Inc.,*
   474 U.S. 121 (1985) ....................................................................................................................17

*United States v. Salerno,* 481 U.S. 739, 745 (1987) ......................................................................7

*United States v. Sparks,*
   265 F.3d 825 (9th Cir. 2001) ......................................................................................................16

*Young Conservatives of Texas Foundation v. Smatresk,*
   73 F.4th 304 (5th Cir. 2023) ........................................................................................................5

**Statutes**

5 U.S.C. § 611 ..................................................................................................................................20

28 U.S.C. § 1391(e)(1)........................................................................................................................6

28 U.S.C. § 1406(a) ...........................................................................................................................6

29 U.S.C. § 159(a) ..............................................................................................................10, 12, 13

29 U.S.C. § 657(e) .....................................................................................................................*passim*

29 U.S.C. § 661(i)............................................................................................................................12

30 U.S.C. § 813(f)............................................................................................................................14

**Regulations**

29 C.F.R. § 1903.4(a) ...................................................................................................................3, 15

29 C.F.R. § 1903.8(a) ................................................................................................... 8, 10, 13, 19

29 C.F.R. § 1903.8(c) ................................................................................................... 8, 10, 15, 18

29 C.F.R. § 1904.35(b)................................................................................................................ 12, 18

89 Fed. Reg. 22,558 (Apr. 1, 2024).............................................................................................*passim*

**Other Authorities**

14D Wright & Miller, Federal Practice & Procedure § 3826 (4th ed.).......................................6

Fed. R. Civ. P. 12(b)(3)....................................................................................................................6

Fed. R. Civ. P. 41(b) ........................................................................................................................6

OSHA Memorandum, Rescission of February 21, 2013 Letter (April 25, 2017),
    https://perma.cc/NC9Y-5QDT .................................................................................................18

Staff of Subcomm. on Labor, S. Comm. on Labor and Public Welfare, 92d Cong.,
    Legislative History of the Occupational Safety and Health Act of 1970
    (Comm. Print 1971) ............................................................................................................... 13, 14

# INTRODUCTION

Consistent with the Occupational Safety and Health (OSH) Act, the Occupational Safety and Health Administration (OSHA) has long permitted third-party authorized employee representatives to accompany OSHA compliance safety and health officers (CSHOs) on walkaround inspections— so long as the CSHOs determine that their accompaniment would be reasonably necessary to a thorough and effective inspection. After a district court found OSHA's policy consistent with section 8(e) of the OSH Act, 29 U.S.C. § 657(e), but inconsistent with OSHA's previous regulation, OSHA promulgated the Walkaround Rule, 89 Fed. Reg. 22,558, to clarify its longstanding policy.

The Walkaround Rule does not cause any identified members of the Plaintiff associations an injury in fact traceable to the Rule. Plaintiffs provide no counter to Defendants' thorough explanation of the lengthy chain of speculation required to connect the Rule with *any* particular employer one day being faced with purported harm. And Plaintiffs offer no specific facts regarding their alleged compliance costs—because the Rule imposes no compliance obligations on employers whatsoever. Plaintiffs therefore lack standing. If, however, this Court were to adopt the district court's reasoning in *NFIB v. Dougherty*, 2017 WL 1194666 (N.D. Tex. Feb. 3, 2017), to conclude that the National Federation of Independent Businesses (NFIB) and up to two other Plaintiffs with similar allegations have standing, then this case should be dismissed for improper venue.

Even if Plaintiffs could establish standing, their facial challenges cannot get past the threshold. To proceed with a facial challenge, they must show that no set of circumstances exists under which the Rule would be valid. But Plaintiffs have conceded that the Rule would be valid in its application, for example, in circumstances where unionized employees choose to have their collective bargaining agent serve as their walkaround representative and the CSHO approves their accompaniment. Moreover, the "discretion afforded to" CSHOs under the Rule to accept or decline the accompaniment of any authorized third-party representative "effectively precludes" any facial

challenge to the Rule. *Assoc. Builders & Contractors of Tex. v. NLRB*, 826 F.3d 215, 227 (5th Cir. 2016).

In any event, Plaintiffs' claims fail on their merits. On OSHA's statutory authority, Plaintiffs complain that the Rule (1) does not numerically limit representatives, and (2) allows some third-party authorized employee representatives. The first is addressed in a different regulation, not the Walkaround Rule. As to the second, OSHA's policy is a "persuasive and valid construction" of section 8(e). *NFIB*, 2017 WL 1194666, at *12. Plaintiffs attempt to undermine OSHA's sound statutory interpretation by inventing a purported link between section 8(e) and the National Labor Relations Act (NLRA), but they provide no textual or purposive basis for that link.

Plaintiffs fare no better on their Fifth Amendment takings claim. All OSHA inspections consistent with the Walkaround Rule are conducted lawfully under the Fourth Amendment and thus pose no Fifth Amendment problem under *Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021).

Finally, the Rule easily satisfies the highly deferential standard of review for determining whether an agency action is arbitrary and capricious. OSHA thoroughly explained its decisions in the Walkaround Rule and addressed in detail every concern that Plaintiffs reprise here. And Plaintiffs' thin response, in a brief footnote, to Defendants' arguments that the Court lacks jurisdiction over the Regulatory Flexibility Act (RFA) claim falls far short, and the RFA claim is meritless.

## ARGUMENT

### I.  The Court Should Dismiss This Case for Lack of Jurisdiction

#### A.  Plaintiffs lack standing to challenge the Walkaround Rule

As Defendants have explained, Plaintiffs *at most* demonstrate a "statistical probability" that some of their (unknown or unidentified) members may one day be "threatened with concrete injury" resulting from a highly speculative and attenuated chain of causation. *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009); *see* Defs.' Mot. at 6–11. That is not enough to satisfy Article III standing requirements. "Standing is not an ingenious academic exercise in the conceivable, but" it "requires,

at the summary judgment stage, a factual showing of perceptible harm." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 566 (1992) (quotation marks omitted). In place of a factual showing, Plaintiffs rest their standing arguments on the incorrect premise that the Rule "compels employers to permit third-party employee representatives to access their property during" OSHA inspections. Pls.' Opp'n at 2; *see id.* at 3–4. Even if this premise were true, Plaintiffs have not made the required factual showing.

Plaintiffs entirely fail to counter Defendants' explanation of the long chain of events that would necessarily precede any employer hypothetically being "compel[led]" to grant access to a workplace to anyone—and any compulsion would stem not from the Rule but from a lawfully obtained warrant. *See* 29 C.F.R. § 1903.4(a); *Marshall v. Barlow's, Inc.*, 436 U.S. 307 (1978); Defs.' Mot. at 9–10.[1] They insist that there is nothing "'speculative' about the Rule's impact on property rights," Pls.' Opp'n at 4, but broadly challenging the perceived "impact" of a rulemaking is merely a "general complaint[] about the way in which the government goes about its business," *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024). Plaintiffs' illusory choice between "ceding [a] right of access" and facing "contempt of court," Pls.' Opp'n at 4, does not demonstrate that any Plaintiff has an identified member who has the requisite "personal stake in the dispute," *Alliance*, 602 U.S. at 379.[2]

Unable to substantiate their general assertions of speculative harm, Plaintiffs point to another court's decision that found that one of the Plaintiffs suing again here, NFIB, had standing to challenge the Sallman Letter. *See NFIB*, 2017 WL 1194666, at *6; Defs.' Mot. at 4–5. Defendants disagree with that decision's standing analysis,[3] but even if this Court agrees with its reasoning, that

---

[1] Any fear of a lawful warrant stems not from the Rule but from 29 C.F.R. § 1903.4, which sets out OSHA's procedure, including any compulsory process, upon an employer's "refusal to permit the [CSHO], in exercise of his official duties, to enter" a workplace for inspection, *id.* § 1903.4(a).

[2] Plaintiffs do not dispute that both the International Franchise Association and the National Retail Federation fail to identify even a single member—much less attempt to remedy that failure. Again, this alone plainly requires dismissal of these Plaintiffs. *See* Defs.' Mot. at 8 n.2.

[3] Defendants maintain that NFIB's assertions of harm in 2017 suffered the same defects as Plaintiffs' assertions of harm here, for the reasons explained in Defendants' cross-motion (at 6–11).

reasoning does not extend to the other Plaintiffs here. The *NFIB* court found injury in fact based, at least in part, on NFIB's assertions of "past injury in the form of the presence of non-employee third parties on the property of one of its members," Professional Janitorial Services, Inc. (PJS). *Id.* at *5.

Here, PJS is one of only two members of any Plaintiff association to allege "the presence of non-employee third parties," *id.*, during a previous walkaround inspection. *See* App. at A058–59 (National Association of Manufacturers (NAM) member PJS), A070 (NFIB member, again PJS), A015 (Longview Chamber member LeBus International). And *NFIB*'s reasoning would not extend to LeBus because LeBus has not provided "*specific facts* demonstrating" the purported harm, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412 (2013) (emphasis added), including when the OSHA inspection occurred and whether LeBus objected to the third-party employee-authorized representative. *See* App. at A009, ¶ 15. No other Plaintiff has a member who alleges a similar past occurrence—again underscoring the speculative nature of any perceived future harm.[4] Thus, even if this Court adopts the *NFIB* court's reasoning, that still requires the dismissal of all but two Plaintiffs here. *See* Defs.' Mot. at 10–11. And because neither of those Plaintiffs have any connection to the Western District of Texas, the Court should still dismiss this case for improper venue. *See infra* section I.B.

Plaintiffs' vague allegations of costs undertaken in response to the Rule, Pls.' Opp'n at 4, also do not satisfy the requirements of Article III. Plaintiffs do not dispute that, in the Fifth Circuit, pre-enforcement review of a regulation is allowed "only after finding that the regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance." *Tex. Indep. Producers & Royalty Owners Ass'n v. EPA*, 413 F.3d 479, 482 (5th Cir. 2005) (quotation marks omitted).[5] In no way does the Walkaround Rule—which addresses

---

[4] The *NFIB* court also relied on the asserted past injury in assessing the likelihood of any such future injury, emphasizing that the identified member "has in the past objected to the presence of non-employee representatives on walkarounds." 2017 WL 1194666, at *5.

[5] In *Texas Independent Producers*, 413 F.3d at 482, the court was addressing ripeness. "[S]tanding is concerned with whether a proper party is bringing suit, while ripeness is concerned with whether the

the scope of employees' rights and does not create or alter any legal requirements for employers—require any immediate or significant change in employers' conduct of their affairs. *Id.*; *see* Defs.' Mot. at 7–8. Plaintiffs cannot show that they face any "increased regulatory burden," which occurs where a "new rule require[s] . . . "compl[iance]" in some way on the part of the plaintiff. *Contender Farms, LLP v. U.S. Dep't of Agric.*, 779 F.3d 258, 266 (5th Cir. 2015). And Plaintiffs do not allege, as they must, that the Rule in fact requires compliance in some specific way on the part of their members. Instead, they assert generally an unexplained "need to 'update handbooks, policies, and other practices and processes' regarding access to their facilities." Pls.' Opp'n at 3 (quoting App. at A073). In the absence of any specific factual allegations relating to compliance requirements, or other legal obligations, under the Rule, these vague allegations do not confer Article III standing.[6]

**B. Even if the Court were to find that some plaintiffs have standing based on the *NFIB* court's reasoning, this venue would be improper**

Even if the Court were to agree with the *NFIB* court's reasoning as to standing, it would extend *at most* to NFIB and NAM. The remaining ten Plaintiffs should still be dismissed. In that event, the Court should dismiss the entire case for improper venue. *See* Defs.' Mot. at 11.

Federal Rule of Civil Procedure 12(b)(3) calls for dismissal of an action if venue is "improper." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). And where, as here, the case is brought against "an agency of the United States," venue is proper only in

---

suit is being brought at the proper time," but "the doctrines often overlap in practice, particularly in an examination of whether a plaintiff has suffered a concrete injury." *Texas v. United States*, 497 F.3d 491, 496 (5th Cir. 2007). "[A] case or controversy is ripe for judicial review when an administrative decision['s] . . . effects [are] felt in a concrete way by the challenging parties." *Tex. Indep. Producers*, 413 at 483 (quotation marks omitted). There may *one day* be a member of a Plaintiff association who feels "concrete" effects of the Rule to confer Article III standing. *Id.* But that has not occurred: Plaintiffs today lack standing, and their facial challenge is at best premature, *see also infra* section II.A.

[6] In *Young Conservatives of Texas Foundation v. Smatresk*, a Texas statute caused out-of-state student plaintiffs to "pay[] nine times more than in-state residents" in tuition—a clear economic disparity establishing injury in fact. 73 F.4th 304, 309 (5th Cir. 2023). In contrast here, any costs undertaken in response to the Rule's promulgation are voluntary and therefore self-inflicted. *See* Defs.' Mot. at 11.

a "judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (C) the plaintiff resides." 28 U.S.C. § 1391(e)(1). On a motion to dismiss, the plaintiff bears the burden of proving that venue is proper. 14D Wright & Miller, Federal Practice & Procedure § 3826 (4th ed.).

Plaintiffs assert that venue is proper here under 28 U.S.C. § 1391(e)(1)(c) because the Greater Waco Chamber of Commerce resides in the Waco Division of this district. *See* Pls.' Opp'n at 4 n.1; Compl. ¶ 17, ECF No. 1. They do not allege that any other Plaintiff has any connection to this district, and they do not dispute that NAM and NFIB lack any connection to this district. *See* Defs.' Mot. at 11 n.5. Therefore, without the Greater Waco Chamber, venue is improper.

Where venue is improper, a district court, in its discretion, "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *see In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 629 (5th Cir. 2022). Here, "the interest[s] of justice" favor dismissal. 28 U.S.C. § 1406(a). Plaintiffs have suggested no other district in which they believe venue would be proper. *See* Pls.' Opp'n at 4 n.1. If this case is dismissed, Plaintiffs can refile in another district where venue is proper. *See* Fed. R. Civ. P. 41(b).

Therefore, even if the Court were to adopt the *NFIB* court's reasoning and conclude that up to two Plaintiffs have adequately alleged standing, this lawsuit should nonetheless be dismissed for lack of venue under Federal Rule of Civil Procedure 12(b)(3). In the alternative, the court should transfer this case to the U.S. District Court for the District of Columbia, where the events giving rise to Plaintiffs' claims occurred and where Defendants reside. *See* 28 U.S.C. § 1391(e)(1)(A), (B).

## II.  Defendants Are Entitled to Summary Judgment on Plaintiffs' Claims

### A.  Plaintiffs' facial challenges fail

Plaintiffs cannot succeed on their facial statutory-authority or Fifth Amendment claims because they cannot establish "that no set of circumstances exists under which the [Rule] would be

valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *accord Assoc. Builders*, 826 F.3d at 220. Plaintiffs again concede that the Rule would be valid in its application, for example, where unionized employees choose to have their collective bargaining agent serve as their walkaround representative and the CSHO determines the accompaniment of that representative to be reasonably necessary. Pls.' Opp'n at 13. Further, the Rule gives CSHOs discretion to accept or decline the accompaniment of any authorized third-party representative, which "effectively precludes" a facial challenge. *Assoc. Builders*, 826 F.3d at 227. Plaintiffs therefore cannot succeed on their facial challenges.

In their attempt to salvage their facial claims, Plaintiffs rely on a since-repudiated 1998 D.C. Circuit case that applied a narrower standard than the general rule. *See* Pls.' Opp'n at 12 (citing *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1407 (D.C. Cir. 1998)). But the D.C. Circuit itself has rejected the *National Mining* standard as "mistaken" and made clear that, "[t]o prevail in their challenge to the [regulation] on [its] face the plaintiffs 'must establish that no set of circumstances exists under which the [regulation] would be valid.'" *Sherley v. Sebelius*, 644 F.3d 388, 397 & n.** (D.C. Cir. 2011) (quoting *Reno v. Flores*, 507 U.S. 292, 301 (1993)).[7]

Plaintiffs contend that circumstances in which a CSHO exercises their discretion to exclude a third-party representative do not "defeat[]" their facial challenge—even though this would be a lawful circumstance in their view—because CSHOs were given the same discretion in OSHA's previous rule. Pls.' Opp'n at 13. That such lawful applications of the Rule (and exercise of the CSHO's discretion) are possible dooms Plaintiffs' claims. *See Assoc. Builders*, 826 F.3d at 227. And, contrary to Plaintiffs' assertion that the Rule "*only* comes into play when OSHA inspectors include

---

[7] Even if *National Mining* were good law and its narrower rule did not conflict with Fifth Circuit precedent, that decision rejected the general rule only as to *statutory* challenges to regulations, so it would be no help at all to Plaintiffs' Fifth Amendment claim. *See* 145 F.3d at 1406–07. Nor would Plaintiffs' statutory claim prevail under the *National Mining* standard: where the CSHO determines, for example, that a non-technical expert representative (who Plaintiffs believe would not be allowed under the prior rule) is not reasonably necessary, Plaintiffs would agree that outcome is valid.

third-party outsiders in inspections," Pls.' Opp'n at 19, the Rule "comes into play" every time employees exercise their right to authorized representatives for inspections, and the CSHO's determination of a reasonably necessary accompaniment "comes into play" whenever the authorized representative is a third party. *See* 29 C.F.R. § 1903.8(c); *see generally, e.g.*, 89 Fed. Reg. at 22,590. And, again, where a CSHO determines that an authorized representative is *not* reasonably necessary to the inspection, Plaintiffs would view the Rule's operation as lawful. *See Assoc. Builders*, 826 F.3d at 227 (the exercise of discretion "effectively precludes" a facial challenge).[8]

Plaintiffs' statutory-authority and Fifth Amendment takings claims therefore fail.

## B.  The Walkaround Rule is consistent with OSHA's statutory authority in any event

In any event, the Walkaround Rule is consistent with the OSH Act. First, Plaintiffs' arguments regarding the number of representatives concern a different regulation, unaffected by the Rule, that Plaintiffs do not challenge here. *See* 29 C.F.R. § 1903.8(a). Second, OSHA's longstanding interpretation of section 8(e) to allow third-party authorized employee representatives is consistent with the statute. Third, there is no basis for Plaintiffs' attempt to link section 8(e) with the NLRA.

**1.** Plaintiffs' complaint that the Rule does not set a numerical limit on the number of employee representatives that may accompany a CSHO, *see, e.g.*, Pls.' Opp'n at 5, 15, seeks relief with respect to the wrong regulation. The Walkaround Rule does not speak to the *number* of representatives at all. Rather, a different regulation, 29 C.F.R. § 1903.8(a), allows CSHO to permit "additional representatives authorized by employees" where the CSHO "determines that such additional representatives will further aid the inspection." *See* Defs.' Mot. at 21–22. Plaintiffs do not challenge section 1903.8(a), which is outside the scope of the Rule. Thus, even if the Court were to

---

[8] Plaintiffs' citation to *Chamber of Commerce of the U.S. v. U.S. Department of Labor*, 885 F.3d 360 (5th Cir. 2018), cannot save their claims. *See* Pls.' Opp'n at 14. That case did not involve any discussion of facial versus as-applied challenges, and it does not undermine the standard that this Court must apply to facial challenges under binding precedent.

find the Rule unlawful, that would not provide Plaintiffs with the relief they purport to seek with respect to the number of representatives authorized by employees that may accompany a CSHO.[9]

**2.** OSHA's interpretation of section 8(e) follows from the plain text of the statute. Congress provided that, "[s]ubject to regulations[,] . . . a representative authorized by [the] employees shall be given an opportunity to accompany the Secretary or his authorized representative during the physical inspection of any workplace . . . for the purpose of aiding such inspection." 29 U.S.C. § 657(e). And "[w]here there is no authorized employee representative, the [inspector] shall consult with a reasonable number of employees." *Id.* The only limitations that this text places on an employee representative is that they be "authorized by [the] employees" and "aid[] such inspection." *Id.* OSHA's interpretation of section 8(e) as permitting employees to authorize any individual of their choosing as their representative for walkaround inspections—including third parties who the CSHO determines would be reasonably necessary to the inspection—is therefore "a persuasive and valid construction of the [OSH] Act," *NFIB*, 2017 WL 1194666, at *12, and a valid exercise of OSHA's discretionary authority, *see generally Mayfield v. U.S. Dep't of Labor*, — F.4th —, 2024 WL 4142760, *4 (5th Cir. 2024) (where "there is an uncontroverted, explicit delegation of authority, the question is whether the Rule is within the outer boundaries of that delegation" (citing *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2268 (2024)); *see also* Defs.' Mot. at 3, 13.

Plaintiffs' scattershot arguments in opposition are unpersuasive and already addressed in Defendants' cross-motion, *see* Defs.' Mot. at 12–21. *First*, Plaintiffs wrongly contend that Defendants "equate" the terms "authorized" and "aid." Pls.' Opp'n at 6. But Defendants discussed each of those terms separately and at length. As explained, "'authorize' simply means '[t]o empower' or 'to give a right or authority to act,' and does not imply a specific process." Defs.' Mot. at 15

---

[9] In any event, as explained, the number of authorized employee representatives that may accompany a CSHO is necessarily limited by their purpose of "aid[ing] the inspection," in the CSHO's discretion. 29 C.F.R. § 1903.8(a).

(quoting Pls.' Mot. at 9). Congress thus limited representatives to those who are "authorized" by employees *and* whose accompaniment will "aid[]" inspections. *See id.* at 13. Plaintiffs baselessly assert that Congress used the term "authorized" to "distinguish between union . . . and non-union workplaces." Pls.' Opp'n at 5–6. But Congress did not use the term "authorized" in the section of the NLRA that Plaintiffs claim is related. *See* 29 U.S.C. § 159(a). And Plaintiffs' assertion directly conflicts with the guarantee in 29 C.F.R. § 1903.8(a) that employees at *all* workplaces (unionized or not) have the opportunity to authorize representatives to accompany CSHOs on walkaround inspections. That preexisting provision—which Plaintiffs do not challenge, *see* Compl. ¶¶ 85–118— is untouched by the Rule, which addresses section 1903.8(c). Thus, Plaintiffs' argument that Congress provided only unionized employees the right to a walkaround representative under section 8(e) is flatly wrong, and their indirect challenge to 29 C.F.R. § 1903.8(a) is outside the scope of the Court's jurisdiction in this challenge to the Walkaround Rule. *See* Defs.' Mot. at 22.

*Second*, OSHA's adoption of the plain meaning of the term "authorized" does not remove "meaningful purpose" from the statute's secondary provision that, in the absence of an authorized employee representative, the CSHO "shall consult with a reasonable number of employees." Pls.' Opp'n at 6 (quoting 29 U.S.C. § 657(e)). The statute simply provides that, if employees do not, for whatever reason, authorize their own representative for the purpose of a walkaround inspection, then the CSHO must still take the employees' views and knowledge into account by "consult[ing] with a reasonable number" of them. 29 U.S.C. § 657(e). That is a meaningful purpose.

*Third*, Plaintiffs again invoke a separate statutory provision authorizing OSHA to "employ experts and consultants" as needed to "carry[] out [its] responsibilities" under the OSH Act. *Id.* § 656(c). This more general provision does not affect whom employees may authorize under section 8(e). *Id.* § 657(e). And OSHA's authority to hire experts or consultants cannot supplant *employees'* right under section 8(e) to authorize their own representatives. *See* Defs.' Mot. at 31. Plaintiffs also

fail to explain how an OSHA-hired expert could aid an inspection in the same way as an authorized employee representative. *See id.*; *see also*, *e.g.*, 89 Fed. Reg. at 22,569–70 (employees are more likely to "trust" an employee-designated interpreter more than "bilingual CSHOs" or "hire[d] outside interpreters" and will, "as a result, be more willing to provide information").

*Fourth*, Plaintiffs reiterate their purported concern regarding "confidential information," Pls.' Opp'n at 7, but they do not acknowledge the regulatory protections in place that Defendants described, Defs.' Mot. at 18 n.8, much less explain whether (and why) they believe those protections to be inadequate in the event that employees authorize third-party walkaround representatives. And Plaintiffs' assertion that a third party must have "some formal relationship with the government" to attend an inspection, Pls.' Opp'n at 7, is wholly unsupported.

*Fifth*, that Defendants have sometimes referred to employees' representatives in the plural (where appropriate) is not pertinent to the validity of the interpretation clarified in the Rule. *Contra* Pls.' Opp'n at 7, 10. Rather, it reflects that additional representatives may be authorized in certain circumstances under a regulation that it beyond the scope of this litigation. *See supra* section II.B.1.

*Sixth*, Plaintiffs mischaracterize the explicit delegation in section 8(e) as "general rulemaking authority" and urge this Court to adopt their preferred reading of section 8(e) as the "best reading" of the statute. Pls.' Opp'n at 7 (quoting *Loper Bright*, 144 S. Ct. at 2266). But Plaintiffs' contention that section 8(e), based on an imagined link to the NLRA, permits only that employees at unionized workplaces may be represented by a collective bargaining agent during OSHA inspections is not even a *reasonable* reading of the statute. Moreover, where, as here, Congress "expressly delegate[s]" "discretionary authority to an agency" to "give meaning to a particular statutory term" or "fill up the details of a statutory scheme," the court's role is to both "respect the delegation" and "police the outer statutory boundaries" of that delegation. *Loper Bright*, 144 S. Ct. at 2263, 2268, 2273. The Rule falls comfortably within the outer boundaries of OSHA's statutory authority under section 8(e).

**3.** Plaintiffs also fail in their further attempts to establish any "conflict" between the NLRA and OSHA's interpretation of 29 U.S.C. § 657(e). Pls.' Opp'n at 8. The Rule acknowledged the NLRA and OSH Act's shared general goal of "protecting employees' right to voice concerns to management about unsafe or unhealthful working conditions," 89 Fed. Reg. at 22,583, but it identified no overlap between the NLRA and the provisions of section 8(e), because there is none. And "there is no conflict between the two statutes," including "when employees authorize a third-party affiliated with a union to accompany a CSHO on an inspection of a non-union workplace." *Id.* (referring also to longstanding "cooperative efforts and interagency coordination" between OSHA and the NLRB). Plaintiffs cite nothing for the proposition that, if two statutes share some goals, then unrelated statutory provisions in those different statutes are impliedly "link[ed]" and have overlapping meaning, Pls.' Opp'n at 8—even when those statutory provisions use *different terms*.

Plaintiffs have "no textual or structural hook," *id.* at 10, on which to equate "authorized employee representative . . . for the purpose of aiding [walkaround] inspections," 29 U.S.C. § 657(e), with "exclusive representatives of all the employees . . . for the purposes of collective bargaining," 29 U.S.C. § 159(a). Indeed, the contrasts between the text and explicit purposes of these statutory provisions could not be starker. Moreover, "[w]here Congress wanted to provide for" a link between the OSH Act and the NLRA, "it did so explicitly, as demonstrated by other sections in the Act." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452–53 (2002); *see* Defs.' Mot. at 15 (citing 29 U.S.C. § 661(i)).[10]

---

[10] Plaintiffs again point to OSHA's recordkeeping regulations, in which OSHA narrowly defined the term "authorized employee representative," as used within those regulations, as "an authorized collective bargaining agent of employees." 29 C.F.R. § 1904.35(b)(2)(i); *see* Pls.' Opp'n at 8. But they fail to rebut Defendants' point that OSHA's definition of that term (in a different regulation serving different purposes and implementing a different statutory provision) is irrelevant to what *Congress* meant by "a representative authorized by his employees" in section 8(e). *See* Defs.' Mot. at 19–20. Nor do Plaintiffs engage with OSHA's explanation for why it appropriately adopted a narrower definition of the term "authorized employee representative" in its recordkeeping regulations than in the Walkaround Rule. *See id.* (citing 89 Fed. Reg. at 22,588).

Plaintiffs try to brush aside that their interpretation would deprive the vast majority of employees of a right that Congress conferred broadly, and which OSHA and regulated parties have long understood to apply to employees at *all* workplaces. *See* 29 C.F.R. § 1903.8(a). They invoke the secondary instruction to inspectors to consult with a "reasonable number of employees" where there is no authorized employee representative, Pls.' Opp'n at 9 (quoting 29 U.S.C. § 657(e))—but they do not address the fact that their interpretation would strip *employees* of their statutory right to authorize a walkaround representative merely because they lack a representative, under a different statute, for the unrelated "purposes of collective bargaining," 29 U.S.C. § 159(a). As to unionized employees, it creates no conflict for employees to choose representatives who may be better suited for the limited and temporary purpose of "aiding" a walkaround inspection, 29 U.S.C. § 657(e), than for engaging in collective bargaining. *See also* Defs.' Mot. at 21 n.12 (citing 89 Fed. Reg. at 22,582). Plaintiffs highlight their misunderstanding of the statute and the Rule by imagining a situation in which an employer at a unionized workplace is confronted with an "OSHA-designated representative." Pls.' Opp'n at 9. *Employees*—not OSHA—designate their own walkaround representatives.

Plaintiffs offer nothing in the legislative history that supports their radical interpretation. To the contrary, their chosen quotations support OSHA's longstanding interpretation. *See* Pls.' Opp'n at 10. For example, Senator Scherle's statement—which Defendants quoted in full, *contra id.*; *see* Defs.' Mot. at 19 n.9—that the statute "provides that union representatives or any employee representative be allowed to accompany inspectors on their plant tours" directly undermines Plaintiffs' restrictive interpretation that *only* union representatives be allowed. Pls.' Opp'n at 10 (quoting Staff of Subcomm. on Labor, S. Comm. on Labor and Public Welfare, 92d Cong., Legislative History of the Occupational Safety and Health Act of 1970, at 1224 (Comm. Print 1971)). And Defendants agree with Plaintiffs that section 8(e) "does not confer authority on the secretary to prescribe regulations with respect to representation questions in a collective bargaining context," Pls.' Opp'n at 10

(quoting Subcomm. Rep. at 1190)—because the collective bargaining context is governed by the NLRA, an entirely separate statutory scheme that has no bearing on section 8(e) of the OSH Act.

Nor do Plaintiffs point to a single judicial authority that offers any support for their reading of section 8(e). Contrary to Plaintiffs' assertion, Pls.' Opp'n at 11, the court in *In re Establishment Inspection of Caterpillar Inc.* observed that "the plain language of § 8(e) permits private parties to accompany OSHA inspectors." 55 F.3d 334, 338 (7th Cir. 1995); *see also id.* at 337 & n.2 (noting that "the Act's text and implementing regulations permit employees to accompany OSHA officers on inspections," and "[a]dditionally, a third party who is not an employee may accompany the [CSHO] when such a party is reasonably necessary to conduct an effective and thorough physical inspection"). And Plaintiffs' attempt to brush aside the cases interpreting the Mine Act as having "no relevance here" is unpersuasive. Pls.' Opp'n at 11. It is true that the parallel provision of the Mine Act contains additional language specifying that the Secretary may permit "more than one representative from each party," 30 U.S.C. § 813(f)—a question addressed in a different regulation with respect to section 8(e), *see supra* at 8–9. But the relevant language regarding "a representative authorized by his miners" and "authorized miner representative" in the first two sentences exactly parallels the language of section 8(e). *Compare* 30 U.S.C. § 813(f) *with* 29 U.S.C. § 657(e). Plaintiffs cannot so easily evade the sound statutory interpretation of those decisions examining the same language in the Mine Act that appears in section 8(e) of the OSH Act. *See, e.g.*, *U.S. Dep't of Lab. v. Wolf Run Mining Co.*, 452 F.3d 275, 288 (4th Cir. 2006); *Kerr-McGee Coal Corp. v. FMSHRC*, 40 F.3d 1257, 1260 (D.C. Cir. 1994); *Thunder Basin Coal Co. v. FMSHRC*, 56 F.3d 1275, 1280 (10th Cir. 1995).

Plaintiffs fail to show that the text, structure, or history of section 8(e) has any connection to the NLRA, or that it in any way distinguishes between authorized employee representatives at unionized workplaces and those at nonunionized workplaces. While Plaintiffs may disagree with OSHA's policy choices, that does not render the Walkaround Rule unlawful.

**C.  The Walkaround Rule does not effect any taking of private property**

Plaintiffs' Fifth Amendment claim is also meritless. The parties agree that, under *Cedar Point*, no unconstitutional taking occurs as a result of "government searches that are consistent with the Fourth Amendment and state law." 594 U.S. at 161. But Plaintiffs insist that the Rule's application would nevertheless run afoul of the Fifth Amendment where the CSHO seeks and obtains a lawful warrant to proceed with an inspection, in accordance with 29 C.F.R. § 1903.4(a), following the employer's objection to the presence of a third-party representative whom employees authorized and the CSHO determined to be reasonably necessary to the inspection. *See* Pls.' Opp'n at 16–17.

In doing so, Plaintiffs wrongly assume that *Cedar Point* distinguished between takings by the government and government-authorized takings by particular third parties. In fact, the Supreme Court plainly stated there that the Takings Clause is implicated when the government "appropriat[es] private property *for itself or a third party*" for a public use. *Cedar Point*, 594 U.S. at 147–48 (emphasis added). More specifically, Plaintiffs point to nothing in *Cedar Point* that can be construed as impliedly overruling the precedents holding that the presence of a third party to aid a government search does not render a search unreasonable under the Fourth Amendment, where the third party provides necessary assistance and does not exceed the scope of law enforcement authority. *See* Defs.' Mot. at 25–26 (collecting cases). *Contra* Pls.' Opp'n at 16 (citing nothing). As Defendants have explained, the Rule's application to circumstances where employees authorize third-party representatives falls comfortably within this "historically-grounded exception," Pls.' Opp'n at 17. *Contra id.* at 17–18.

In attempting to avoid this conclusion, Plaintiffs mischaracterize the Rule as including "no . . . limitation," *id.* at 17, on third-party representatives. That contention is incompatible with the regulation on its face. *See* 29 C.F.R. § 1903.8(c); *see also* 89 Fed. Reg. at 22,575 ("an authorized employee representative may accompany the CSHO *only* for the purpose of aiding the inspection" (emphasis added)). Moreover, Plaintiffs entirely ignore the regulatory safeguards in place to ensure

that authorized employee representatives are permitted only where they are reasonably necessary and that they do not stray from their lawful role. *See* Defs.' Mot. at 24–25 (citing several regulatory safeguards). *Contra* Pls.' Opp'n at 17 (erroneously stating "nothing in the Rule prevents third-party outsiders from using [the accompaniment] for their own purposes" (quotation marks omitted)).

Plaintiffs also obscure the relevant caselaw. For example, they state that it "is a precondition to including a third-party outsider[] in government searches" that the government agents "'cannot [themselves] conduct' the inspection." Pls.' Opp'n at 18–19 (quoting *United States v. Sparks*, 265 F.3d 825, 832 (9th Cir. 2001)). But in *Sparks*, a civilian alone searched the defendant's vehicle while a law enforcement officer separately searched the individual. 265 F.3d at 829. The court described the "test whether a warrantless search by a civilian aiding the police comports with the Fourth Amendment": "[f]irst, the civilian's role must be to aid the efforts of the police," not "simply to further their own goals"; "[s]econd, the officer must be in need of assistance" and not simply "invite civilians to perform searches on a whim"; and "[t]hird, the civilians must be limited to doing what the police had authority to do." *Id.* at 831–32. As Defendants have explained, OSHA regulations ensure (1) that an employee representative's role is to "aid the efforts" of the CSHO, (2) that any representatives are reasonably necessary to the inspection, (3) and that representatives have no role *other* than aiding the CSHO (and do not, under any circumstances, conduct inspections themselves), thereby wielding less authority than the inspector. The Rule is therefore consistent with the Fourth Amendment in all its applications and in no way effects a taking of any private property.[11]

---

[11] Plaintiffs also grossly misrepresent the amici brief of worker advocacy groups, suggesting that it states that unions wish to "impart 'the benefits of union education and support,' and . . . union advocates." Pls.' Opp'n at 17 (quoting Br. of Amici Curiae at 2, 9, ECF No. 40-1). The brief states no such thing; rather, amici merely explain that "[n]on-union workers"—who would have no opportunity to authorize their own walkaround representative under Plaintiffs' reading of section 8(e)—generally "lack the benefits of union education and support which enable workers to understand the inspection process and better assist OSHA." Br. of Amici Curiae at 2; *see also id.* at 9 (explaining concerns regarding "the possibility of retaliation . . . are even more prevalent for non-unionized workers that lack the benefits of union advocates and established grievance procedures").

To the extent that Plaintiffs ask the Court to construe the statute narrowly to exclude some hypothetical future applications of the Walkaround Rule, Plaintiffs ask the Court for nothing more than an advisory opinion. *See* Pls.' Opp'n at 20–21. Specifically, Plaintiffs ask the Court to construe section 8(e) to preclude the application of the Rule in an "identifiable class of cases." *Id.* at 20 (quoting *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 128 n.5 (1985) (rejecting request to narrowly construe Clean Water Act in as-applied challenge to Army Corps of Engineers regulation)). This request only underscores the inappropriate nature of this *facial* challenge, where Plaintiffs take issue only with certain hypothetical applications of the Rule as they construe it. *See supra* sections I.A, II.A. The Court does not have jurisdiction to issue an opinion advising the parties of which hypothetical applications of the Rule may or may not be constitutional in its view. *See Nat'l Env't Dev. Assoc.'s Clean Air Project v. EPA*, 752 F.3d 999, 1007 (D.C. Cir. 2014) ("[T]he Article III case or controversy requirement . . . prohibits courts from issuing advisory opinions on speculative claims."). If the Rule is ever applied in a way that legally injures some party, that party may then bring suit. That has not happened, and Plaintiffs have no live case or controversy before this Court.

Accordingly, Defendants are entitled to summary judgment on the Fifth Amendment claim.

### D.  The Walkaround Rule is not arbitrary or capricious

Plaintiffs again fail to show that the Walkaround Rule is arbitrary and capricious. As is clear on the face of the Rule, and reiterated in Defendants' cross-motion (at 27–35), OSHA "has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).

**1.** Despite Plaintiffs' protestations that the Rule represents a "policy change," Pls.' Opp'n at 21, OSHA has long had a policy of allowing third-party walkaround representatives, *see, e.g.*, 89 Fed. Reg. at 22,589. The prior regulation expressly permitted "a third party who is not an employee" to serve as a walkaround representative if the CSHO determined that their accompaniment was

reasonably necessary. Defs.' Mot. at 4. Indeed, that policy was the very impetus for the 2017

litigation. *See NFIB*, 2017 WL 1194666, at *11 (concluding that, in the court's view, OSHA's policy

was inconsistent with the text of the regulation). The Walkaround Rule, in responding to the court's

decision in *NFIB*, revised the *language* of the regulation for the express purpose of ensuring its

consistency with OSHA's underlying *policy*. *See* 89 Fed. Reg. at 22,559.

Plaintiffs misleadingly state that OSHA "reject[ed] expanded third-party walkaround rights"

in the 2017 rescission of the Sallman Letter. Pls.' Opp'n at 21. OSHA rescinded the Sallman Letter

following the *NFIB* decision "as unnecessary" in light of the "express guidance in the statute and the

applicable regulation." OSHA Memorandum, Rescission of February 21, 2013 Letter (April 25,

2017), https://perma.cc/NC9Y-5QDT. The rescission thus further supports that the agency has

consistently read section 8(e) as permitting third-party representatives. The Walkaround Rule

comports with that reading. And, as explained in Defendants' cross-motion (at 28)—and as ignored

by Plaintiffs, *see* Pls.' Opp'n at 22—the Rule also creates no conflict and reflects no change with

respect to OSHA's recordkeeping regulation, which serves a different purpose and implicates

different interests, *see* 89 Fed. Reg. at 22,588 (discussing 29 C.F.R. § 1904.35(b)(2)(i)).

Further, the additional guidance that the Rule provides regarding a CSHO's determination

whether an authorized representative may "aid[]" an inspection is just that: additional guidance as to

when a representative is "reasonably necessary to the conduct of a thorough and effective

inspection," 29 C.F.R. § 1903.8(c)—language that appeared in the previous regulation. *Contra* Pls.'

Opp'n at 22. Specifically, the Rule clarified that "third-party representatives are reasonably necessary

if they will make a positive contribution," by virtue of, for example, relevant "knowledge, skills, and

experience." 89 Fed. Reg. at 22,589.

**2.** Plaintiffs again assert that OSHA "ignored . . . alternatives" by not adopting Plaintiffs'

preferred use of (1) OSHA's general statutory authority to "employ experts and consultants," 29

U.S.C. § 656(c), or (2) OSHA's mandate to "consult with a reasonable number of employees" in the absence of an authorized representative, 29 U.S.C. § 657(e); Pls.' Opp'n at 23. But Plaintiffs neglect the rule in which their complaint is grounded, which holds that "when an agency *rescinds a prior policy* its reasoned analysis must consider the 'alternative[s]' that are 'within the ambit of the existing [policy].'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) (quoting *State Farm*, 463 U.S. at 51). Even if OSHA had changed its underlying policy, Plaintiffs' purported "alternatives" are not "within the ambit of the existing" policy in any event. *Id.*; *see* Defs.' Mot. at 30–31.

**3.** Plaintiffs cannot dispute that OSHA addressed the various "aspect[s] of the problem" they have raised; Plaintiffs merely take issue with the decision OSHA made to allow CSHOs "discretion" and are unpersuaded by "OSHA's explanations" for why it made the decisions it made in the rulemaking. Pls.' Opp'n at 24 (quotation marks omitted). Plaintiffs' disagreement with an agency's decisionmaking does not render it unreasoned under the APA. *Contra id.*

With respect to their concern regarding "confidential business information," *id.* at 24, Plaintiffs do not explain why the Rule's discussion of this concern falls short or why the protections enumerated in the Rule would not be sufficient for any particular kind of information. *See* Defs.' Mot. at 29 (citing, e.g., 89 Fed. Reg. at 22,571). Plaintiffs vaguely suggest a distinction between trade secrets and other kinds of confidential business information, but they do not explain why any such distinction would render the existing regulatory safeguards ineffective. *See* Pls.' Opp'n at 24 (failing to cite anything specific to substantiate this apparent concern).

Plaintiffs repeat various other complaints, charging that the agency "ignore[d]" them in the Rule, Pls.' Opp'n at 24–25, but their assertions are belied by the face of the Rule and Defendants' clear explanations with citations, *see* Defs.' Mot. at 29–30. Specifically, in the Rule, (1) OSHA addressed concerns regarding the number of employee-authorized representatives, *see* 89 Fed. Reg. at 22,590–91—which, again, is within the scope of a different regulation, *see* 29 C.F.R. § 1903.8(a)—

19

(2) OSHA explained at length why "concerns about the CSHOs' ability to address potential interference or disruptions to the workplace are unfounded" and, "to the extent specific issues arise," it would be appropriate for OSHA to "issue further guidance" at that time, 89 Fed. Reg. at 22,592; and (3) OSHA explained why it declined to adopt a "rigid designation process" for employee walkaround representatives, based on both policy and experience, *id.* at 22,590.

**4.** Finally, Plaintiffs assert that OSHA "write[s] off" the Rule's costs, but they do not even attempt to engage with OSHA's reasoning in the Rule—summarized in Defendants' cross-motion (at 31–33)—nor do they include a single citation in support of their conclusory assertions. Pls.' Opp'n at 25; *see* 89 Fed. Reg. 22,593–97 (discussing costs).

## III. The Court Lacks Jurisdiction over Plaintiffs' RFA Claim

Plaintiffs offer only a two-sentence footnote in response to Defendants' arguments that the Court lacks jurisdiction over their RFA claim and that the claim fails on the merits in any event. They state merely that "Plaintiffs identified at least one small business member." Pls.' Opp'n at 25 n.4. This "undeveloped and unsupported argument in a footnote" at the end of their brief does not "provide the Court with a sufficient basis upon which to rule for" Plaintiffs at summary judgment. *Balderas v. Frontier Enterprises, Inc.*, No. 5-16-cv-479, 2018 WL 835207, at *7 (W.D. Tex. Feb. 12, 2018) In any event, Plaintiffs have not identified a single small business member who is actually aggrieved by the Rule, as required to bring an RFA claim. 5 U.S.C. § 611. For this reason, and the other reasons discussed in Defendants cross-motion (at 33–35), the Court should dismiss Plaintiffs' RFA claim or enter summary judgment in Defendants' favor.

## CONCLUSION

The Court should dismiss Plaintiffs' complaint or, in the alternative, grant Defendants' cross-motion for summary judgment on all claims.

October 2, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JULIE STRAUS HARRIS
Assistant Director

*/s/ Christine L. Coogle*
Christine L. Coogle
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
202-880-0282
christine.l.coogle@usdoj.gov

*Counsel for Defendants*