# UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF TEXAS

# WACO DIVISION

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, *et al.*, <br><br> *Defendants*. | Case No. 6:24-cv-00271 <br><br> **BRIEF OF *AMICI CURIAE* WORKER ADVOCACY GROUPS IN SUPPORT OF DEFENDANTS' CROSS–MOTION FOR SUMMARY JUDGMENT** <br><br> Judge: Honorable Chris Wolfe <br><br> No hearing has yet been scheduled |

**TABLE OF CONTENTS**

I.    Interest of Amici Curiae.......................................................................................... 1

II.   Introduction and Summary of Argument.................................................................. 1

III.   Argument ................................................................................................................. 2

   A.   The OSH Act permits all employees to select a walkaround representative that will aid the inspection........................................................................................................ 2

   B.   Plaintiffs overlook the substantial record demonstrating how non-union third parties can aid OSHA's inspections at non-unionized workplaces. ............................................ 8

   C.   Plaintiffs' facial challenge is inappropriate given the array of third-party representatives that can lawfully aid inspections. ...................................................................... 14

IV.   Conclusion ............................................................................................................. 15

### I.    Interest of Amici Curiae

*Amici*, listed fully in Appendix A, are six groups that provide free or low-cost legal services and education to vulnerable workers, particularly those in non-unionized workplaces. *Amici* have supported workers in exercising their labor rights including designation of a walkaround representative and participation in inspections. *Amici* have consulted with both workers and the Occupational Safety and Health Administration's ("OSHA") Compliance Safety and Health Officers ("CSHO") on issues related to prior walkaround inspections. Accordingly, *Amici* have first-hand knowledge of how the *Worker Walkaround Representative Designation Process*, 89 Fed. Reg. 22,558 (Apr. 1, 2024) ("Final Walkaround Rule" or "Rule"), can fill a gap in non-union worker representation during walkarounds and ensure the CSHO is best equipped to uncover complete and accurate information about safety hazards in furtherance of the Occupational Safety and Health Act ("OSH Act").

### II.    Introduction and Summary of Argument

Plaintiffs both misread the OSH Act and misunderstand the problem driving the Final Walkaround Rule. The OSH Act's plain language permits all employees to select a walkaround representative that will aid the inspection. Yet Plaintiffs' interpretation would limit the Rule's benefits to a tiny minority of workers who have designated a union representative under the National Labor Relations Act ("NLRA"). Pls.' Mot. for Summ. J. at 8–9, 13. Not only does Plaintiffs' artificial divide between union and non-union workplaces ignore the OSH Act's plain language, it also (i) relies on terms and definitions from different statutes and regulations that are meaningfully distinct from the OSH Act's walkaround provision, and (ii) creates internal inconsistencies which Plaintiffs do not attempt to resolve.

Brief of Amici Curiae<br>Case No. 6:24-cv-00271

Further, Plaintiffs' flawed legal theory overlooks the demonstrated need for more thorough inspections at non-unionized facilities, where employees suffer injuries and deaths at higher rates, disproportionately face language and literacy barriers, and are vulnerable to retaliation based on factors like race and immigration status. Non-union workers also lack the benefits of union education and support which enable workers to understand the inspection process and better assist OSHA. The record shows that non-union third-party representatives aid OSHA in overcoming these hurdles and can also contribute technical skills and knowledge.

Because Plaintiffs disregard this record supporting the Rule, they wrongfully assume that third-party walkaround representatives such as union organizers will use the Rule for inappropriate reasons—for instance, to "proselytize employees"—which, in Plaintiffs' view, would effect a Fifth Amendment taking. Pls.' Mot. for Summ. J. at 20–21. But Plaintiffs' predications lack support. If Plaintiffs' hypothetical concerns were to occur, employers have redress. There is no reason to enjoin the Rule now based on pure speculation.

## III.   Argument

### A.  The OSH Act permits all employees to select a walkaround representative that will aid the inspection.

The OSH Act unambiguously authorizes employees' representatives to accompany the CSHO where it will "aid" the inspection, whether or not that inspection is occurring at a unionized facility. 29 U.S.C. § 657(e). Absent clear legislative intent to the contrary, which Plaintiffs do not attempt to provide, the OSH Act's plain language is conclusive. *Bostock v. Clayton Cnty.,* 590 U.S. 644, 673–74 (2020).

Specifically, the Act's subsection 8(e) states that "a representative of the employer and a representative authorized by his employees shall be given an opportunity to accompany the Secretary or his authorized representative during the physical inspection of any workplace under

Brief of Amici Curiae
Case No. 6:24-cv-00271

subsection (a) for the purpose of aiding such inspection." 29 U.S.C. § 657(e). Thus, the only limitation is the representative must aid the inspection. Another court in the Fifth Circuit agreed with this conclusion. *Nat'l Fed'n of Indep. Bus. v. Dougherty,* No. 3:16-CV-2568-D, 2017 WL 1194666, at *12 (N.D. Tex. Feb. 3, 2017). OSHA previously issued a Standard Interpretation Letter finding that nonemployees, including organizations other than recognized unions, could serve as employee representatives under subsection 8(e) of the OSH Act (29 U.S.C. § 657(e)) and the prior walkaround rule, 29 C.F.R. § 1903.8 (1971). *Id*. at *2. While the court held OSHA's Letter unenforceable on procedural grounds, the court explained that OSHA's interpretation was a "persuasive and valid construction of the Act"—consistent with its text and purpose. *Id*. at *12.

Plaintiffs' contrary interpretation that only unions designated under the NLRA may serve as an employee representative on walkarounds and in non-union workplaces workers may not designate *any* representative is unsustainable for three reasons. Pls.' Mot. for Summ. J. at 8–9, 14.

1.     Plaintiffs would have the Court hold Congress extended the right to select a representative to aid OSHA's inspection but only to a fraction of workers and those least in need. The vast majority of workers covered by the OSH Act are not unionized. Many, including agricultural workers, are also excluded from the NLRA's reach. As a result, under Plaintiffs' construction around 95 percent of workers would be denied the opportunity to designate a walkaround representative when the text makes plain that Congress thought that would be useful to OSHA in fulfilling its mission. And even worse, these are the workers that need representation the most due to their vulnerabilities and greater exposure to workplace hazards. *See* section III.B, *infra*. Indeed,

poor safety and health outcomes in these very worker populations is what partly motivated the OSH Act's passage.[1]

2.      Plaintiffs' position improperly imports into the OSH Act concepts and terms from distinct statutes and regulations. Plaintiffs contend an employee representative in the OSH Act's walkaround provision must mean a union representative selected under the NLRA based on: (i) the NLRA's concept of an exclusive representative for collective bargaining purposes, (ii) the word "authorized" in subsection 8(e) which Plaintiffs assert by its very nature must refer to a representative formally designated via the NLRA, and (iii) the definition of "authorized employee representative" as "authorized collective bargaining agent of employees" in an unrelated OSHA regulation. 29 C.F.R. § 1904.35(b)(2)(i). Pls.' Mot. for Summ. J. at 1, 9–10, 13.

The distinctions between the NLRA and section 8(e) begin with their text. Section 8(e) uses the term "representative authorized by his employees" while the NLRA states, "[r]epresentatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes." 29 U.S.C. § 159(a). The NLRA builds into the text a narrow meaning of representative notably absent from section 8(e)—as one to negotiate or bargain with the employer.[2] A walkaround representative's function under section 8(e) is solely to aid inspections, something that does not require ongoing negotiation over

---

[1] S. COMM. REP. NO. 91-1282, at 3–4 (1970), *as reprinted in* S. COMM. ON LABOR & PUB. WELFARE, 92D CONG., LEGISLATIVE HISTORY OF THE OCCUPATIONAL SAFETY AND HEALTH ACT OF 1970 143–144 (Comm. Print 1971), https://archive.org/details/legislativehisto0000unit_u2u4/page/1224/mode/2up.

[2] *See also* Nat'l Labor Relations Bd. Office of the Gen. Counsel, Advice Memorandum re *Restaurant Opportunities Center of New York*, Case No. 2-CP-1067 at 2–4 (Nov. 30, 2006), https://onlabor.org/wp-content/uploads/2017/05/roc-ny-memo.pdf (describing entities that engage in collective bargaining, such as unions, as those which "deal" with an employer through a "pattern or practice" of exchanging proposals "over time").

workplace conditions or unrelated NLRA matters like "pay, wages, [and] hours." *Id*. [3]

Plaintiffs' own case law does not support their argument in the alternative that "authorized" innately means a union representative. As the Court in *Washington County. v. Gunther*, 452 U.S. 161, 169 (1981) pointed out, the term "authorize" is situational. It does not categorically require formal enabling action like a union election and sometimes simply means "to permit." *Id.* [4] Because "authorized" is not a term of art with universal meaning, its appearance in the OSH Act's section 8(e) is not dispositive, particularly where Congress did not define or qualify the term in the way Plaintiffs suggest. Moreover, even if "authorized" does mean a formal delegation of authority, Plaintiffs do not explain how the NLRA's process for designating a labor union that can bind employees and set their terms of employment through collective bargaining is the sole mechanism for employees to delegate power in the completely separate context of walkaround inspections.

As for Plaintiffs' cited OSHA regulation, its text, like the NLRA, does not directly overlap with that in the OSH Act's section 8(e). *See* 29 C.F.R. § 1904.35(b)(2)(i). The regulation also concerns access to employees' injury and illness records, which almost always contain sensitive personal information such that OSHA's limiting of "authorized employee representative" to unions in that regulation makes sense. In contrast, the goal of the Final Walkaround Rule is to facilitate

---

[3] These distinctions lead to the logical conclusion that even where there is an "exclusive" collective bargaining agent, employees may choose a representative to protect their interests for a different purpose or in a different capacity. For example, employees can designate a union representative to bargain with their employer over substandard wages and another representative to accompany a CSHO to inspect their workplace for unsafe conditions. Nothing in the NLRA prevents such arrangement. *NLRB v. Loc. Union No. 103, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, AFL-CIO*, 434 U.S. 335, 344 (1978).

[4] The Court in *Anderson v. U.S. Department of Labor*, 422 F.3d 1155, 1181 (10th Cir. 2005) likewise recognized that "authorized" can reasonably mean different things. As a result, the *Anderson* Court did not consider the word "authorized" dispositive; rather, the court held the term ambiguous and deferred to the defendant's interpretation under *Chevron*. *Id*.

better detection of workplace safety hazards—information that is not personal. The CSHO's discretion provided in the Rule to decide whether "good cause" exists for accompaniment—a mechanism absent from the NLRA and OSHA regulation—also supports a broader reading of "representative authorized by his employees" in the OSH Act.

At bottom, Plaintiffs' analogy to other statutes and regulations actually disproves their point because it shows that Congress knew how to adopt a specific and narrow interpretation of "representative" but did otherwise in subsection 8(e). In both subsection 8(e) and the OSH Act's separate definitions section, Congress left the term undefined and unqualified. 29 U.S.C. §§ 652, 657(e). Plaintiffs effectively ask the Court to read in qualifying language that Congress chose to omit, which is improper. *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019); *Badgerow v. Walters*, 596 U.S. 1, 11 (2022); *Duarte v. Mayorkas*, 27 F.4th 1044, 1063 n.17 (5th Cir. 2022).

3.    Plaintiffs' insistence that subsection 8(e) limits walkaround representation to unions creates inconsistencies. For example, Plaintiffs argue subsection 8(e) limits employees to a single representative, but under the NLRA, there can be multiple representatives of employees in a single workplace. In a hospital, for example, the National Labor Relations Board has designated eight groups of workers, each of which can "designate or select" a representative under the NLRA. 29 C.F.R. § 103.30(a). Yet, despite claiming the OSH Act imports the NLRA's concepts, Plaintiffs argue those employees are entitled to "designate" only one representative to accompany an OSHA inspector. Pls.' Mot. for Summ. J. at 16.

Plaintiffs' assertion that non-union representatives raise unanticipated confidentiality concerns reveals further contradictions in their argument. Plaintiffs claim if Congress intended for non-union representatives to aid inspections it would have addressed their exposure to confidential business information in 29 U.S.C. § 664. At the same time, Plaintiffs suggest that OSHA can

Brief of Amici Curiae
Case No. 6:24-cv-00271

simply hire third-party experts and consultants to fill in gaps in expertise during walkarounds under

29 U.S.C. § 656(c)(2). But section 664 does not address confidentiality with regard to those non-

union experts, consultants, and government agents paid by OSHA. They too could be exposed to

confidential information under Plaintiffs' theory, yet they are not addressed in the statute.

It is also perfectly sensible that section 664 does not expressly mention walkaround

representatives' access to confidential or trade secret information since walkarounds involve a

visual survey of the facility and representatives are not involved in the information-gathering

portion of OSHA's inspection. Representatives can attend walkarounds and opening and closing

conferences. However, walkaround representatives that have been approved by the CSHO can only

sit in on formal interviews where specifically requested by employees, and importantly, they are

not present for the purpose of collecting and reviewing documentation—an activity more likely to

implicate confidentiality.[5]

Walkarounds, and inspections more generally, are also subject to strict protocols that

protect confidentiality and other legitimate employer interests. For instance, inspections must be

reasonably limited in scope. 29 U.S.C. § 657(a). Representatives may be present only where the

CSHO deems their involvement reasonably necessary and where it does not interfere with a fair

and orderly inspection. 29 C.F.R. §§ 1903.8(c), 1903.7(d). Employers can also prohibit

representatives from accessing areas containing trade secret information. 29 C.F.R. §§ 1903.8(d),

1903.9(d). And in the unlikely event that walkaround representatives are exposed to confidential

---

[5] Occupational Safety and Health Admin., *Frequently Asked Questions: Worker Walkaround Designation Process (Walkaround) Rule*, https://www.osha.gov/worker-walkaround/final-rule/faq (last visited July 2, 2024).

Brief of Amici Curiae
                                                          Case No. 6:24-cv-00271

information, employers can require them to sign a reasonable confidentiality agreement on the same terms as the employer requires of other visitors.[6]

In sum, Plaintiffs' unduly restrictive interpretation of the phrase "representative authorized by his employees" in subsection 8(e) would significantly undermine OSHA's ability to protect non-union workers and does not logically follow from the text or purpose of the Act.

### B. Plaintiffs overlook the substantial record demonstrating how non-union third parties can aid OSHA's inspections at non-unionized workplaces.

Plaintiffs' claim that the OSH Act denies non-union workers an ability to designate a walkaround representative is not only legally incorrect but also inconsistent with the administrative record and prior OSHA practice. Plaintiffs ignore myriad ways that non-employee, non-union third parties have and will continue to aid inspections and why their assistance is so valuable. Indeed, as amici know and the record illustrates, non-union laborers work in more dangerous conditions with more injuries and fatalities, and non-unionized workplaces generally have worse health and safety practices.[7] Since non-union workers make up nearly all of the workforce, OSHA's aim to strengthen inspections at non-unionized workplaces is particularly sensible.

The Final Walkaround Rule will strengthen inspections at non-unionized workplaces by allowing workers to designate a representative who can (i) build trust between workers and the CSHO and (ii) facilitate effective communication.[8] In both cases, a representative's presence

---

[6] *Id*.

[7] U.S. Dep't of Labor, *How Unions and Unionized Workplaces Advance the Mission of the Department of Labor*, at 1–2, WORK-fs-DOL-Unions-v6.pdf (last visited June 21, 2024); Nebraska Appleseed, Comment Letter on Proposed Worker Walkaround Rule at 2 (Nov. 7, 2023), https://www.regulations.gov/comment/OSHA-2023-0008-1766.

[8] Farmworker Justice, Comment Letter on Proposed Worker Walkaround Rule at 2 (Nov. 12, 2023), https://www.regulations.gov/comment/OSHA-2023-0008-1763.

Brief of Amici Curiae
                                                        Case No. 6:24-cv-00271

enables the CSHO to collect complete and accurate information about a facility and better enforce health and safety rules.

Indeed, workers' trust in the CSHO and the enforcement process more generally is foundational to any workplace inspection. Yet the record reflects a widespread lack of trust.

For example, many commentors emphasized how the possibility of retaliation makes employees reluctant to participate in OSHA walkaround inspections and to provide information to the CSHO.[9] Justice at Work Pennsylvania's comments identified an incident where its client, like all other workers at the facility, had refused to point out safety hazards during an OSHA inspection because the employer had called U.S. Immigration and Customs Enforcement on an immigrant worker who came forward.[10]

Retaliation concerns are even more prevalent for non-unionized workers that lack the benefits of union advocates and established grievance procedures.[11] Certain non-unionized sectors, including agriculture, also have high proportions of workers who encounter racism, discrimination, and violence in the labor market and are susceptible to intimidation because of immigration status, age, or economic need, making them less likely to report safety issues.[12]

Many commentors explained that the mere presence of known and trusted third parties, such as worker advocates belonging to community-based organizations, workers' centers, and legal services organizations, can alleviate these retaliation concerns through their established

---

[9] *Id*.

[10] Justice at Work Pennsylvania, Comment Letter on Proposed Worker Walkaround Rule at 3 (Oct. 30, 2023), https://www.regulations.gov/comment/OSHA-2023-0008-0526.

[11] David Weil & Amanda Pyles, *Why Complain? Complaints, Compliance, and the Problem of Enforcement in the U.S. Workplace*, 27 COMP. LAB. L. & POL'Y J., 59, 91 (2006), https://projects.iq.harvard.edu/files/hctar/files/hr08.pdf.

[12] *Id.* at 83 n.19; Farmworker Justice, *supra* note 8, at 2–3; National Black Worker Center, Comment Letter on Proposed Worker Walkaround Rule at 3 (Nov. 9, 2023), https://www.regulations.gov/comment/OSHA-2023-0008-1767.

Brief of Amici Curiae
                    Case No. 6:24-cv-00271

relationships with the communities they serve.[13] Representatives that empower workers to communicate with the CSHO are particularly important considering some employers' affirmative efforts to limit the scope of inspections and actively conceal safety issues from the CSHO.[14]

Separately, the record shows that language barriers and employees' lack of familiarity with OSHA enforcement can stifle effective communication—a core part of the inspection process.

Translators, including non-union bilingual staff members of community-based organizations, workers' centers, and legal services organizations, can facilitate effective communication by breaking down language barriers. Translators are particularly well-equipped to aid the CSHO during inspections in industries with high proportions of immigrant workers that have limited or no English proficiency.[15]

Consistent with this, in its comments to OSHA, Massachusetts Coalition for Occupational Safety and Health (MassCOSH) recounted how OSHA inspected a lead recycling plant when several Central American Spanish-speaking workers experienced lead poisoning. Because the OSHA inspector could not communicate with the workers, the inspector failed to discover two different areas of the facility with lead contamination. MassCOSH spoke with the workers and contacted OSHA to relay their concerns. A MassCOSH staff member accompanied OSHA on a follow-up inspection, where OSHA successfully identified and documented the overlooked

---

[13] Nebraska Appleseed, *supra* note 7, at 3; National Black Worker Center, *supra* note 12, at 2–3; National Employment Law Project, Comment Letter on Proposed Worker Walkaround Rule at 4–5 (Nov. 13, 2023), https://www.regulations.gov/comment/OSHA-2023-0008-1972.

[14] See, e.g., Sur Legal Collaborative, Comment Letter on Proposed Worker Walkaround Rule (Nov. 12, 2023), https://www.regulations.gov/comment/OSHA-2023-0008-11231; Justice at Work Pennsylvania, *supra* note 10, at 2.

[15] Farmworker Justice, *supra* note 8, at 2.

Brief of Amici Curiae
                                                Case No. 6:24-cv-00271

sources of contamination.[16]

And contrary to Plaintiffs' assertion that in non-union workplaces OSHA can simply fill in expertise gaps through paid consultants or by using services of other state or federal agencies, Pls.' Mot. for Summ. J. at 12 (citing 29 U.S.C. § 656(c)(2)), it is the workers' ability to designate a representative of their choosing that often makes the difference between an effective and ineffective inspection.[17] This is certainly the case with translators. For instance, in the past, English-speaking employers have relied on bilingual middle managers or supervisors for ad-hoc interpretation, and Justice at Work Pennsylvania "has heard time and again from workers that these situations result in flawed interpretations at best, and full fabrications at worst."[18] Not only do such translators lack the cultural competence, community knowledge, and existing relationships with workers that are foundational for facilitating effective communication, but their presence is not a guarantee. These individuals may be unavailable for ad-hoc interpretation, and Plaintiffs overlook both OSHA's discretion and its resource constraints in assuming that OSHA will consistently exercise its authority under § 656(c)(2) to hire outside translators.

Third-party representatives can likewise facilitate effective communication by counteracting non-union workers' lack of familiarly with and understanding of the OSHA enforcement process. Indeed, these worker populations tend to have low rates of educational

---

[16] Massachusetts Coalition for Occupational Safety and Health, Comment Letter on Proposed Worker Walkaround Rule at 3 (Nov. 8, 2023), https://www.regulations.gov/comment/OSHA-2023-0008-1750.

[17] Heartland Center for Jobs and Freedom, Comment Letter on Proposed Rule for Proposed Worker Walkaround Rule at 4 (Nov. 13, 2023), https://www.regulations.gov/comment/OSHA-2023-0008-1959.

[18] Justice at Work Pennsylvania, *supra* note 10, at 2.

Brief of Amici Curiae
                                                    Case No. 6:24-cv-00271

attainment, unfamiliarity with basic workplace rights, and little-to-no experience interacting with government officials.[19]

This is true for farmworkers, who often arrive in the U.S. with limited levels of schooling and face significant barriers in obtaining further education in the United States.[20] Farmworkers also have one of the lowest unionization rates of any sector and thus lack the benefit of union education and support.[21] As a result, they do not necessarily know when to speak up during the enforcement process and feel less equipped in doing so. This is particularly so for the large percentage of child farmworkers under the age of eighteen.[22]

Third-party representation counteracts such lack of familiarity with OSHA and the resulting power imbalances in non-unionized workplaces. For instance, Worksafe provided an example where OSHA investigated a non-unionized facility in response to complaints from several janitorial employees. Employees had no representation during on-site interviews and the walkaround. During the walkaround, the employer actively concealed areas where employees were exposed to bloodborne pathogens and failed to inform the inspector that the facility's garbage compactor recently underwent mechanical failure, presenting a serious safety hazard.

Worksafe aided OSHA by meeting with the workers to provide context about OSHA enforcement, including the general types of conditions that inspectors are authorized to cite employers for—a similar role to what Worksafe could play as an authorized representative under

---

[19] David Weil et al., *supra* note 11, at 83, 83 n.17; Worksafe, Comment Letter on Proposed Worker Walkaround Rule at 3 (Nov. 13, 2023), https://www.regulations.gov/comment/OSHA-2023-0008-1934.

[20] Farmworker Justice, *supra* note 8, at 2.

[21] U.S. Bureau of Labor Statistics, *Union affiliation of employed wage and salary workers by occupation and industry*, https://www.bls.gov/news.release/union2.t03.htm (last updated Jan. 23, 2024).

[22] Farmworker Justice, *supra* note 8, at 3.

the Final Walkaround Rule. This prompted the employees to inform OSHA in a follow-up conversation of the bloodborne pathogens and defective garbage compactor—something that employees did not know to raise, or did not feel comfortable raising, with the CSHO initially. OSHA then identified and documented the hazards and cited the employer.[23]

In addition to representatives that build trust and facilitate effective communication, the record details a wide array of third-party professionals that aid inspections through their technical skills and expertise. These include ergonomists, environmental auditors, fire safety inspectors, electrical inspectors, industrial hygienists, industrial engineers, hazmat specialists, health inspectors, building code inspectors, radiation safety experts, heat safety specialists, public health specialists, and attorneys, just to name a few.[24] Some of these professionals even have knowledge of industry or facility-specific job tasks, procedures, regulations, standards, and equipment, enabling the CSHO to uncover complete and accurate information and better enforce the OSH Act.[25] Importantly, these professionals are not only housed within unions.

Plaintiffs point to OSHA's ability to "consult with a reasonable number of employees" where there is no designated employee walkaround representative. 29 U.S.C. § 657(e). Plaintiffs erroneously argue this provision is a substitute for walkaround representation in all non-union workplaces. Pls.' Mot. for Summ. J. at 3. It is not. Employees often lack the skills and knowledge that representatives are uniquely equipped to contribute, and many employees are hesitant to identify hazards that could result in sanctions against their employer—an issue counteracted by third-party representation. In addition, the CSHO already has general authority to interview

---

[23] Worksafe, *supra* note 19, at 3–4.
[24] United Food and Commercial Workers International Union, Comment Letter on Proposed Worker Walkaround Rule at 6–7 (Nov. 2, 2023), https://www.regulations.gov/comment/OSHA-2023-0008-1023.
[25] *Id*. at 3.

Brief of Amici Curiae
                                                Case No. 6:24-cv-00271

workers during inspections, 29 C.F.R. § 1903.3(a), so this provision in no way establishes an additional "walkaround right" for non-union employees. Pls.' Mot. for Summ. J. at 3.

Overall, Plaintiffs' position overlooks the substantial record demonstrating how non-union third parties can valuably assist the CSHO during inspections, making the Rule not only textually grounded, but substantially supported.

### C. Plaintiffs' facial challenge is inappropriate given the array of third-party representatives that can lawfully aid inspections.

Even if some of Plaintiffs' legal arguments had merit, they can and should be addressed through an as-applied challenge. Plaintiffs cannot sustain a facial challenge because the Final Walkaround Rule is capable of lawful application. *United States v. Hansen*, 599 U.S. 762, 769 (2023); *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (U.S. July 1, 2024). Plaintiffs appear to concede several valid applications of the Rule, including (i) accompaniment in unionized workplaces by a NLRA-designated union representative, and (ii) accompaniment by third-party technical experts like safety engineers and industrial hygienists who can fill a gap in OSHA expertise or resources and who are hired directly by OSHA or authorized by warrant to enter for purposes of aiding the inspection. Pls.' Mot. for Summ. J. at 6–7, 14, 21–22, 22 n.1. In section III.B, *supra*, amici identify a host of other valid applications of the Rule as well.

Plaintiffs speculate about invalid applications, such as third parties' exploitation of the Rule to advance ends such as union organizing or lawsuit development. Pls.' Mot. for Summ. J. at 20–21. As was the case in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 216–17 (1994), Plaintiffs' concerns lack record support and the potential for abuse of the walkaround representative position is minuscule as the Rule does not convey an uncontrolled access right to employers' property and representatives must be vetted by the CSHO. Regardless, employers who oppose accompaniment

have adequate redress, undercutting the current need for an injunction.[26] Plaintiffs' concerns can "be remedied on an individual basis." *Thunder Basin Coal Co.*, 510 U.S. at 217.

Plaintiffs' takings claim highlights the absurdity of their facial challenge. Plaintiffs' concessions above, coupled with their recognition that no takings occurs when a third party is lawfully present on an employer's property to further a governmental inspection, *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 161–62 (2021), leave Plaintiffs hypothesizing about union organizing and lawsuit development, which they see as a taking. In the unlikely event a taking did occur, Plaintiffs have remedies at their disposal besides a universal injunction. In fact, takings law would require Plaintiffs pursue monetary compensation before obtaining equitable relief. *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 189–90, 201 (2019); *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 740–41 (2010).

If allowed, Plaintiffs' facial attack would also open the door to Fifth Amendment challenges to other regulatory schemes with non-employee third-party access provisions that are critical to ensure employers' compliance with worker safety and public health rules. *See* 30 U.S.C. § 813(f), 30 C.F.R. § 40.1 (authorizing third-party representation during inspections in mines); 7 U.S.C. § 1624(a) (authorizing the Secretary of Agriculture to partner with private firms, institutions, and individuals in carrying out food safety inspections). If the mere theoretical potential a rule will be abused is enough to enjoin it, all of these rules would be subject to challenge despite their obvious need and benefits—as is true with the Final Walkaround Rule.

## IV. Conclusion

---

[26] Employers have multiple opportunities to object to a representative's presence at a facility. For instance, employers can initially require OSHA to seek a warrant before authorizing access. 29 C.F.R. § 1903.4(a); OSHA Field Operations Manual, CPL-02-00-164, Chapter 3, Part IV.C.

Brief of Amici Curiae
Case No. 6:24-cv-00271

This court should grant OSHA's Cross-Motion for Summary Judgment, upholding the Final Walkaround Rule.

Brief of Amici Curiae
Case No. 6:24-cv-00271

Respectfully submitted.

/s/ John E. Wall Jr.

JOHN E. WALL, JR. (TX Bar No. 20756750)
Law Office of John E. Wall, Jr.
P.O. Box 255
Copeville, TX 75121
(p) 214-533-3425
jwall@jwall-law.com

DAVID MURASKIN
SKYE WALKER
*Pro Hac Vice Pending*
FarmSTAND
712 H Street NE Suite 2534
Washington, DC 20002
(p) 202-630-3095 / (f) +1 978-845-2282
david@farmstand.org
skye@farmstand.org

**APPENDIX A: LIST OF PROPOSED *AMICI CURIAE***

*Amici Curiae* include Sur Legal Collaborative, Worksafe, Justice at Work Pennsylvania, National Black Worker Center, National Employment Law Project, and Massachusetts Coalition for Occupational Safety and Health.

Amicus Curiae **Sur Legal Collaborative** ("Sur Legal") seeks to empower workers, disrupt the labor abuse to deportation pipeline, and expose abusive employers, industries, and systems of oppression by providing education, training, technical assistance, and legal representation to vulnerable non-unionized workers throughout Georgia, a state that is 96% non-union, and the Deep South. In furtherance of this goal, Sur Legal provides workers with the knowledge and tools needed to exercise workplace safety and health rights and meaningfully participate in administrative processes including complaint initiation, OSHA-led interviews, and walkaround inspections.

Amicus Curiae **Worksafe** advocates for protective worker health and safety laws and effective remedies for injured workers through the legislature and courts. Worksafe is also a Legal Support Center funded by the California State Bar Legal Services Trust Fund Program to provide advocacy, technical and legal assistance, and training to the legal services projects that directly serve California's most vulnerable low-wage workers, who often toil long hours in harsh and hazardous work environments and face employment and labor violations. Worksafe has an interest in ensuring effective workplace inspections and justice for all workers.

Amicus Curiae **Justice at Work Pennsylvania** ("JAW"), formerly Friends of Farmworkers, is a legal aid program representing low-wage Pennsylvania workers as they pursue economic and social justice. For over forty-five years JAW has provided direct legal assistance to thousands of workers through litigation, education and administrative advocacy at the state and federal level. Many of those workers have experienced unsafe work environments but encounter

Brief of Amici Curiae
Case No. 6:24-cv-00271

barriers in exercising their health and safety rights. JAW has an interest in ensuring that limited English proficient workers, immigrant workers, and otherwise vulnerable workers—often those most at risk of harm in unsafe workplaces—can meaningfully participate in all stages of the OSHA complaint process, including and especially walkaround inspections.

Amicus Curiae **National Black Worker Center** ("NBWC") provides insight into the discrimination that Black workers face and the solutions sought to end anti-Blackness in the workplace. NBWC launched in response to the two-dimensional job crisis that Black workers face: the crisis of unemployment and the crisis of low-wage and low-quality work. NBWC promotes workplace equity, fair wages, and improved working conditions for Black people. As stated in comments submitted to support OSHA's proposed rulemaking in this case, the NBWC believes that government programs and policies should promote access to good jobs and should allow for workers to actively engage in matters that impact their lives and livelihoods.

Amicus Curiae **National Employment Law Project** ("NELP") is a non-profit legal organization with over fifty-five years of experience advocating for the employment and labor rights of low-wage and unemployed workers. NELP seeks to ensure that all employees, and especially the most vulnerable ones, receive the full protection of employment laws, including health and safety protections. To accomplish these ends, NELP promotes worker participation and expert support to prevent retaliation and to promote workplace protections so that workers can come forward without fear to report workplace concerns and ensure employer compliance. NELP has testified in Congress and before state and city legislators and participated in litigation to promote the enforcement of health and safety and other labor protections for all workers.

Amicus Curiae **Massachusetts Coalition for Occupational Safety and Health** ("MassCOSH") strives to ensure that all workers earn their living and return home alive and well.

Brief of Amici Curiae<br>Case No. 6:24-cv-00271

By providing training and technical assistance and building alliances among workers, unions, and community groups, MassCOSH mobilizes its members and develops leaders in the movement to end unsafe work conditions. MassCOSH submitted specific comments in response to questions raised in the Final Walkaround Rule, with examples of how the Rule would impact its members.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2026, I electronically filed the foregoing brief, for which leave was previously granted by the Court, with the Clerk of the Court, using the CM/ECF system. Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

/s/ John E Wall Jr.

JOHN E. WALL, JR. (TX Bar No. 20756750)